Gene P. Hamilton, *pro hac vice**
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice**
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice**
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice**
ian.prior@aflegal.org
James K. Rogers, *pro hac vice**
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice**
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice**
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

*Application forthcoming

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842

*Attorneys for Plaintiff Nicholas Shirley*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

NICHOLAS SHIRLEY,

*Plaintiff,*

v.

ROBERT BONTA, in his official capacity as California Attorney General; and SHIRLEY N. WEBER, in her official capacity as California Secretary of State,

*Defendants.*

Case No. ____________________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff Nicholas ("Nick") Shirley ("Mr. Shirley"), by and through his undersigned counsel, brings this action for declaratory and injunctive relief and alleges as follows:

## INTRODUCTION

1. On August 22, 2026, California Governor Gavin Newsom signed into law Assembly Bill 2624 ("AB 2624"). Codified at California Government Code §§ 6218.10–6218.21, the law is most commonly known by its colloquial name, the "Stop Nick Shirley Act." *See, e.g.*, Sofia Williams, *Newsom Signs Immigrant Services Confidentiality Bill, So-Called Stop Nick Shirley Act*, THE SACRAMENTO BEE (Aug. 25, 2026), https://perma.cc/FNW6-4MTJ.

2. The name is no coincidence. Mr. Shirley is a well-known investigative journalist who reports on government spending, fraud, waste, and abuse, as well as immigration matters. His reporting has reached millions of viewers, uncovered large-scale fraud in government-funded programs, and scrutinized organizations that provide immigration-related services in California.

3. The First Amendment does not allow the government to silence truthful reporting because it is controversial, inconvenient, or politically disfavored. *See Texas v. Johnson*, 491 U.S. 397, 414 (1989); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979).

4. Yet that is precisely what AB 2624 threatens to do. The law imposes civil liability for publishing, disclosing, or trading certain personal information concerning providers of immigration-related services—even when that information is lawfully obtained and published as part of reporting on matters of public concern. In practical terms, the law places a target on all the investigative reporting Mr. Shirley conducts.

5. Mr. Shirley, therefore, brings this pre-enforcement action to vindicate his constitutional rights and to prevent California from enforcing AB 2624 against him. Mr. Shirley alleges that AB 2624 is unconstitutional both on its face and as applied to his investigative reporting. He contends that the law imposes content-based and viewpoint-discriminatory restrictions on speech and is unconstitutionally overbroad and vague, and constitutes an ex post facto law, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the United States Constitution. Mr. Shirley seeks declaratory and injunctive relief.

///

///

## PARTIES

6. Mr. Shirley is a well-known investigative journalist who reports extensively on government spending, fraud, immigration, and other matters of public concern.

7. Defendant Robert ("Rob") Bonta is, and at all relevant times was, the Attorney General of the State of California. In that capacity, he is charged by the California Constitution with the duty "to see that the laws of the State are uniformly and adequately enforced." CAL. CONST. art. V, § 13. Defendant Bonta is California's chief law officer and has independent authority to bring civil enforcement actions to redress violations of California statutes affecting the public interest. He routinely represents the State's interest in defending and construing statutes such as AB 2624 in litigation. Defendant Bonta possesses enforcement-related authority and responsibility under the statutory scheme at issue. Defendant Bonta is sued in his official capacity only.

8. Defendant Shirley N. Weber is, and at all relevant times was, the Secretary of State of California. In that capacity, she is responsible for administering key provisions of AB 2624. *See, e.g.*, Cal. Gov't Code § 6218.12(a). Specifically, Defendant Weber is charged with administering the address confidentiality and program-participant certification provisions, which determine who qualifies as a "program participant" entitled to invoke the civil enforcement provisions of Section 6218.19(b). Because an individual may invoke the statute's civil remedies under 6218.19(b) only after being certified as a program participant through Defendant Weber's office, her certification authority is directly and causally connected to the threatened enforcement that Mr. Shirley seeks to prevent. Defendant Weber is sued in her official capacity only.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3), (4) because at least one of Mr. Shirley's claims arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

10. At all relevant times, Defendants acted, and continue to act or threaten to act, under color of state law within the meaning of 42 U.S.C. § 1983.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Mr. Shirley's claims occurred in this District and in the City

and County of Sacramento, California; Defendants reside in this District and in the City and County of Sacramento; and Defendants maintain their official offices in the City and County of Sacramento, California.

## BACKGROUND

***Nick Shirley Is One of America's Most Widely-Respected Investigative Journalists***

12. Mr. Shirley is a well-known investigative journalist and independent publisher. He reports on immigration policy, immigration enforcement, and the political and advocacy activities of organizations that provide immigration-related services, as well as fraud, waste, and abuse in government.

13. Mr. Shirley has approximately 1.99 million subscribers on YouTube. *See* Nick Shirley (@NickShirley), YOUTUBE, https://perma.cc/NE6L-RW55.

14. Mr. Shirley has approximately 1.7 million followers on X. *See* Nick Shirley (@NickShirleyy), X, https://perma.cc/432R-L57E.

15. Mr. Shirley has approximately 3.2 million followers on Instagram. *See* Nick Shirley (@NickShirley), INSTAGRAM, https://perma.cc/D45P-XBUY.

16. Mr. Shirley has approximately 1.6 million followers on TikTok. *See* Nick Shirley (@NickShirleyy), TIKTOK, https://perma.cc/R76J-ABK8.

17. Through these platforms and other channels, Mr. Shirley publishes and distributes investigative reporting, commentary, and other speech concerning matters of public concern to a substantial audience.

18. Mr. Shirley earns income from his reporting and relies on his journalistic work for his livelihood. His ability to investigate, report on, and publish matters of public concern, including matters concerning immigration policy and the activities of immigration-related organizations, is central to both his profession and his livelihood.

19. Mr. Shirley regularly investigates and reports on alleged fraud, government waste, and abuse. For example, his reporting in December of 2025 uncovered more than $100 million in fraud at Somali-run daycare centers in Minnesota. *See* NICK SHIRLEY, *I Investigated Minnesota's Billion Dollar Fraud Scandal* (YouTube, Dec. 26, 2025),

https://www.youtube.com/watch?v=r8AulCA1aOQ.

20. Mr. Shirley has also investigated and reported on alleged fraud at Armenian-run hospices and Somali-run daycares in California. *See* NICK SHIRLEY, *I Investigated California's Billion Dollar Fraud Crisis* (YouTube, Mar. 17, 2026), https://www.youtube.com/watch?v=keg-wwB4RHgA.

21. Mr. Shirley regularly reports on immigration-related issues in California. *See, e.g.*, NICK SHIRLEY, *I Investigated The California Migrant Crisis* (YouTube, Mar. 4, 2026), https://www.youtube.com/watch?v=A2nmXACz-II.

22. Mr. Shirley's reporting about fraud, waste, and abuse has led to the closure or termination of certain taxpayer-funded businesses and programs. *See, e.g.*, Paige Winfield Cunningham & David Ovalle, *Trump Administration Freezes Child Care Payments to Minnesota*, WASH. POST (Dec. 31, 2025), https://perma.cc/2NDB-RLP3.

23. In addition to his journalistic work, Mr. Shirley advocates publicly for investigating and eliminating fraud, waste, and abuse in government-funded programs, including by highlighting the role that immigration may play in contributing to such problems. *See, e.g.*, RIGHT SIDE BROADCASTING NETWORK, *FULL SPEECH: Independent Journalist Nick Shirley Addresses CPAC 2026 – 03/26/26*, (YouTube, Mar. 26, 2026), https://www.youtube.com/watch?v=DCYBF2XN5WU.

***California Enacts AB 2624***

24. Earlier this year, media reports revealed that the Trump administration was considering an anti-fraud task force for California. *See, e.g.*, Jennifer Jacobs, Olivia Rinaldi & Sarah N. Lynch, Trump Anti-Fraud Task Force Targeting California and More States to Be Led by JD Vance, Sources Say, CBS NEWS (Feb. 4, 2026, at 12:09 ET), https://perma.cc/JNX2-A6XZ.

25. On January 31, 2026, Mr. Shirley, continuing his work exposing fraud in public programs, posted an image of himself in California with the caption: "Hello California I've arrived." Nick Shirley (@NickShirleyy), X (Jan. 31, 2026, at 4:03 PM), https://perma.cc/BK6Q-DJMW.

26. On February 2, 2026, two days after Mr. Shirley announced his presence in California, California Governor Gavin Newsom stated that San Diego's Somali community felt "under

siege" following "the arrival of right-wing provocateurs" who, seeking to replicate the fraud allegations that had sparked unrest in Minnesota, began appearing at Somali-run day care facilities to conduct their own investigations. Sara DiNatale, *Right-Wing Influencers Have Descended on Somali Day Care Centers in This California Community*, S.F. CHRON. (Feb. 2, 2026), https://perma.cc/NT7V-KAPZ.

27. On February 4, 2026, Mr. Shirley posted: "California fraud videos coming soon." Nick Shirley (@NickShirleyy), X (Feb. 4, 2026, at 9:06 PM), https://perma.cc/5KCG-AF3S.

28. On February 5, 2026, Defendant Bonta held a news conference and vehemently denounced the allegations of fraud in California as "reckless," "false," "outrageous," and "ridiculous." Suhauna Hussain & Clara Harter, *Trump Says California Is Full of Fraud. Bonta Says the Claims Are 'Reckless'*, L.A. TIMES (Feb. 5, 2026), https://perma.cc/3LXP-F22G.

29. On February 9, 2026, Mr. Shirley posted: "More to come from California in the coming days, working on the full video." Nick Shirley (@NickShirleyy), X (Feb. 9, 2026, at 5:05 PM), https://perma.cc/Q72U-3W8S.

30. On February 16, 2026, Mr. Shirley posted a 23-minute video about fraud in California. Nick Shirley (@NickShirleyy), X (Feb. 16, 2026, at 6:10 PM), https://perma.cc/5JFR-VMQU.

31. Hours later, Governor Newsom's Press Office rushed to downplay and effectively dismiss Mr. Shirley's video. Governor Newsom Press Office (@GovPressOffice), X (Feb. 16, 2026, at 9:19 PM), https://perma.cc/8355-R2H5.

32. The following day, on February 17, 2026, Governor Newsom's Press Office posted about Nick Shirley again, asking if he only investigates "'blue' states." Governor Newsom Press Office (@GovPressOffice), X (Feb. 17, 2026, at 5:02 PM), https://perma.cc/M27T-EQ4W.

33. Days later, on February 20, 2026, Defendant Bonta's wife, California Assemblywoman Mia Bonta, introduced AB 2624 in the California Assembly.

34. The California Assembly passed AB 2624 on May 26, 2026. The California Senate passed AB 2624, as amended, on August 18, 2026, and the Assembly concurred in the Senate's amendments the following day.

35. On August 22, 2026, Governor Newsom signed into law AB 2624, adding Sections

6218.10 through 6218.21 to the California Government Code.

36. The legislative findings state that AB 2624 is intended to protect individuals who provide "immigration support services" from "anti-immigrant" harassment linked to "the current federal administration's anti-immigration attitude and policies." Cal. Gov't Code § 6218.10(b).

37. AB 2624 defines "[d]esignated immigration support services" broadly as "services provided to the immigrant population, including, but not limited to, legal representation, legal assistance, advocacy, case management, humanitarian relief, immigration resources, referrals, translation services, counseling services, and health care." Cal. Gov't Code § 6218.11(b).

38. AB 2624 defines "[d]esignated immigration support services provider, employee, or volunteer" as "a person who provides, assists in providing, or receives immigration support services at a designated immigration support services facility." Cal. Gov't Code § 6218.11(c).

39. AB 2624 defines "[d]esignated immigration support services facility" to include any facility "where immigration support services are provided, including, but not limited to, nonprofit organizations offices, Department Of Justice-recognized entities, community legal clinics, law offices, accredited representative sites that provide immigration legal services, and health care facilities." Cal. Gov't Code § 6218.11(d).

40. AB 2624 defines "[h]arassment" to include "repeated, unreasonable, and unwelcome conduct directed at a targeted individual that would cause a reasonable person to fear for their own safety or the safety of a household member." Cal. Gov't Code § 6218.11(f). The definition expressly includes "telephone calls" and "written correspondence" that are "repeated, unreasonable, and unwelcome." *Id.*

41. AB 2624 defines "[p]ersonal information" broadly to include, among other things, an individual's home address, telephone number, email address, Social Security number, employment history, and financial information. Cal. Gov't Code § 6218.11(h).

42. AB 2624 defines "'[p]ublicly post' or 'publicly display'" to mean "to intentionally communicate or otherwise make available to the general public." Cal. Gov't Code § 6218.11(i).

43. AB 2624 provides that "[a] person, business, or association shall not knowingly post the home address of a program participant, or of the program participant's residing spouse or child,

on the internet knowing that person is a program participant or a program participant's residing spouse or child and specifically intending to incite a third person to cause imminent great bodily harm to such an individual that is likely to occur imminently or threatening to cause imminent great bodily harm to such an individual." Cal. Gov't Code § 6218.18(a).

44. AB 2624 provides that "[a] person, business, or association shall not knowingly publicly post or publicly display, disclose, or distribute on the internet the personal information or image of any designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address," with "specific intent" to either incite a third person to cause imminent great bodily harm or to threaten a protected individual, placing them in "objectively reasonable fear for their personal safety." Cal. Gov't Code § 6218.19(a)(1)(A)–(B).

45. AB 2624 provides that a program participant may submit a written demand to any person, business, or association to cease posting the participant's personal information on the internet. Cal. Gov't Code § 6218.19(b)(1). A person, business, or association that receives such a demand and thereafter continues to post such information with the specific intent described in subdivision (a) is subject to an action for injunctive or declaratory relief. Cal. Gov't Code § 6218.19(b)(2), (4).

46. AB 2624 prohibits any person from soliciting, selling, or trading on the internet the personal information of protected individuals "with the specific intent" to either "[i]ncite a third person to cause imminent great bodily harm to such an individual," or to "[t]hreaten such an individual . . . in a manner that places the individual in objectively reasonable fear for their personal safety." Cal. Gov't Code § 6218.19(c)(1)(A)–(B).

47. AB 2624 provides: "It is unlawful for a person to post on the internet, with the specific intent that another person imminently use that information to commit a crime involving violence or a threat of violence that is likely to occur against a designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address, the personal information or image of a designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address." Cal. Gov't Code § 6218.20.

48. AB 2624 creates a new crime under California law and subjects violators to criminal

penalties.

49. AB 2624 becomes operative on October 1, 2027. Cal. Gov't Code § 6218.21.

***AB 2624's Impact on Mr. Shirley's Investigative Reporting***

50. Mr. Shirley intends to continue investigating, gathering, and publishing information about individuals and organizations that fall within AB 2624's broad definitions of "[d]esignated immigration support services" providers and facilities.

51. His reporting may include information concerning such organizations' employees, volunteers, funding sources, government contracts, political advocacy, and compliance with applicable laws and regulations.

52. Such reporting may also involve publishing truthful information lawfully obtained by Mr. Shirley concerning individuals associated with immigration-services organizations, including information that may fall within AB 2624's broad definition of "personal information," such as employment history, professional affiliations, and other identifying information.

53. Mr. Shirley's intended speech involves matters of public concern, including (a) how immigration-services organizations use taxpayer funds; (b) whether such organizations comply with applicable laws and regulations; (c) the political activities and advocacy of such organizations and their personnel; and (d) the intersection of immigration policy and local governance.

54. Mr. Shirley's investigations include on-camera interviews, publicly available government records and contracts, public social media posts, and other information lawfully available to members of the public. Mr. Shirley does not use unlawful deception, trespass, or other unlawful means to obtain the information he publishes.

55. AB 2624 chills Mr. Shirley's intended speech by creating uncertainty concerning whether his publication of truthful, lawfully obtained information about individuals associated with immigration-services organizations could subject him to civil liability. That uncertainty extends to speech he has already published, as Mr. Shirley cannot determine whether AB 2624 exposes him to liability for information he previously disseminated.

56. Mr. Shirley faces a credible and objectively reasonable threat of enforcement under AB 2624. The statute authorizes covered individuals to bring an action for injunctive or declaratory

relief and for money damages. It also authorizes program participants to demand cessation of covered online publication and, under specified circumstances, to bring civil actions for damages. Mr. Shirley's past, present, and intended investigative reporting implicates conduct that AB 2624 purports to regulate.

57. But for the existence of AB 2624, Mr. Shirley would continue to investigate and publish the information described above without the statute's threat of civil liability. Because of AB 2624, however, Mr. Shirley has refrained from, and continues to refrain from, engaging in constitutionally protected investigative reporting that he otherwise intends to undertake.

58. Mr. Shirley, therefore, suffers an ongoing injury caused by AB 2624's chilling effect on his protected speech.

59. Mr. Shirley's claims are ripe for adjudication notwithstanding AB 2624's effective date of October 1, 2027. A pre-enforcement challenge is justiciable when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Mr. Shirley need not expose himself to liability to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights. *Id*.

60. Nor does the pendency of a future effective date defeat ripeness where, as here, the challenge presents a purely legal question that will not be clarified by further factual development and where delaying review would force Mr. Shirley to choose between continuing self-censorship, removing lawful content in existence today, and risking eventual civil liability once the statute takes effect. *Id*. at 167–68. Because AB 2624 has already been chaptered and its provisions are fixed, and because Mr. Shirley must now decide whether to continue or curtail his investigative reporting activities well before the operative date to avoid being caught by a completed statutory scheme, the controversy is sufficiently concrete for adjudication now.

## CLAIMS FOR RELIEF

### COUNT I
### Facial Content- and Viewpoint-Based Speech Restriction in Violation of the Free Speech Clause of the First Amendment to the United States Constitution, 42 U.S.C. § 1983

61. Mr. Shirley refers to paragraphs 1 through 60, inclusive, and realleges all matters contained therein as though fully set forth at this place.

62. The Free Speech Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.

63. The Free Speech Clause applies to the States through the Fourteenth Amendment and is enforceable against state actors under 42 U.S.C. § 1983. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 807–08 (2019).

64. Content-based restrictions on speech are "presumptively unconstitutional" and may be upheld "only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A law is content-based when it "target[s] speech based on its communicative content." *Id.*

65. Viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.*

66. Sections 6218.18 through 6218.20 of the California Government Code are facially content-based restrictions because their application turns on the subject matter of the speech—specifically, whether the speech concerns a "designated immigration support services provider," its employees or volunteers, or the identity or activities of persons associated with such providers.

67. Whether speech is subject to liability under AB 2624, therefore, depends entirely on what the speaker is saying. For example, a person who publishes the home address or other covered personal information of a designated immigration support services provider may face liability under the statute. In contrast, a person who publishes identical information concerning an organization or individual engaged in immigration-enforcement activities does not face liability.

68. AB 2624 also discriminates based on viewpoint because its protections and restrictions favor one side of a contested political debate. The statute protects information concerning "immigration support services," while imposing no comparable restriction on speech concerning organizations or individuals whose advocacy favors stricter immigration enforcement or opposes illegal immigration.

69. The statute's viewpoint discrimination is confirmed by its legislative findings. Those findings expressly invoke concerns about "anti-immigrant" harassment directed at immigrant-assistance workers and attribute that purported harassment to "the current federal administration's anti-immigration attitude and policies." Cal. Gov't Code § 6218.10(b). The statute thus reflects a legislative judgment that speech associated with one side of a contested political debate warrants special protection from disclosure and dissemination.

70. AB 2624 cannot survive strict scrutiny because it is not narrowly tailored to serve a compelling governmental interest.

71. AB 2624's specific-intent requirement does not remove the statute from strict scrutiny or narrow its reach to unprotected speech. The "specific intent" language in Section 6218.19 modifies only the purpose for which personal information is disseminated; it does not require that the speech itself constitute a true threat, incitement to imminent lawless action under *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), or any other category of speech historically unprotected by the First Amendment.

72. AB 2624 covers speech protected by the First Amendment because it prohibits speech that does not constitute an actual threat or incitement to imminent lawless action. A speaker may publish truthful, lawfully obtained personal information for legitimate journalistic or investigative purposes that does not objectively constitute an actual threat or incitement to imminent lawless action. Yet, AB 2624 would allow a court or jury to conclude, based on ambiguous or contested evidence of subjective intent, that the speaker acted with the proscribed intent. This scheme creates precisely the kind of ex post, fact-intensive liability determination that chills protected speech before publication, because a speaker cannot know in advance how a factfinder will characterize his motive, even if the First Amendment protects his speech. *See NAACP v. Claiborne Hardware Co.*,

458 U.S. 886, 927–29 (1982) (rejecting liability premised on ambiguous statements that could be understood as inviting violence).

73. Moreover, even if the specific-intent requirement narrows the statute's application in some cases, it does not cure AB 2624's independent defects as a content- and viewpoint-based restriction. A statute that regulates only some subset of speech based on a subject-matter classification is content-based regardless of whether it also requires a showing of intent. *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015) (explaining that a law is content-based if it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter").

74. The statute sweeps far beyond speech that could plausibly facilitate threats, violence, or other unlawful conduct. For example, the definition of "[p]ersonal information" in Section 6218.11(h) includes employment history and financial information, which do not bear any reasonable relationship to threats of violence.

75. The statute is also materially underinclusive. If the asserted governmental interest is protecting individuals from harassment, threats, or other harms arising from the publication of personal information, that interest does not logically depend on whether the affected individual or organization provides "immigration support services." AB 2624 instead singles out one side of the immigration debate for special protection while leaving comparable speech concerning organizations advocating opposing views outside the statute's reach.

76. California's pre-existing doxing statute, California Civil Code § 1708.89, already prohibits the electronic distribution of personal identifying information with intent to cause "unwanted physical contact, injury, or harassment" through a third party and applies to all individuals regardless of their profession or the political valence of their work. AB 2624's duplicative, broader, and viewpoint-specific scheme targeting only "designated immigration support services" personnel confirms that the State's asserted interest in preventing harassment and violence does not require, and is not served by, AB 2624's differential treatment of speech based on its subject matter.

77. Because AB 2624 imposes content-based and viewpoint-based restrictions on

speech that are not narrowly tailored to serve a compelling governmental interest, the statute violates the First Amendment.

78. AB 2624 directly burdens and chills Mr. Shirley's protected speech. Because Mr. Shirley's reporting and investigative activities may involve researching, obtaining, publishing, or disseminating information concerning designated immigration support services providers and persons associated with them, he faces a credible threat of enforcement under AB 2624.

79. As a result of AB 2624 and the credible threat of enforcement, Mr. Shirley has self-censored and refrained from engaging in otherwise lawful research, investigation, and publication that he would undertake but for AB 2624's restrictions.

80. Mr. Shirley's injury is fairly traceable to Defendants because Defendants are the state officials charged with enforcing and administering AB 2624, and their authority to enforce the statute creates the credible threat of enforcement and the chilling effect on Mr. Shirley's constitutionally protected speech.

81. Mr. Shirley seeks a declaration that AB 2624 violates the First Amendment to the United States Constitution, as well as preliminary and permanent injunctive relief.

**COUNT II**

**As-Applied Content- and Viewpoint-Based Speech Restriction in Violation of the Free Speech Clause of the First Amendment to the United States Constitution, 42 U.S.C. § 1983**

82. Mr. Shirley refers to paragraphs 1 through 81, inclusive, and realleges all matters contained therein as though fully set forth at this place.

83. AB 2624 is unconstitutional as applied specifically to Mr. Shirley.

84. The First Amendment provides especially strong protection for the publication of truthful information lawfully obtained from public sources when the information concerns a matter of public significance. The State may not punish the publication of such information unless the restriction is "narrowly tailored to a state interest of the highest order." *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989).

85. AB 2624 fails each of the three considerations that rendered Florida's statute un-

constitutional. *First*, AB 2624 makes actionable the dissemination of personal information regardless of whether that information is already legitimately available to the public through other lawful channels, such as public records, prior news coverage, or the individual's own public statements and appearances. *See Florida Star*, 491 U.S. at 538–39. *Second*, AB 2624's restrictions are facially underinclusive because they apply only to the dissemination of covered information on the internet, but not to dissemination through other media. *Id*. at 540. *Third*, California has not imposed liability broadly on the dissemination of comparable categories of personal information by other means or against other classes of individuals who may face harassment for their political or professional activities, underscoring that the statute is not actually designed to serve the interest in personal safety it invokes, but instead to protect a favored category of speech participants. *Id*. at 540–41.

86. Mr. Shirley regularly engages in speech concerning immigration policy, immigration enforcement, and the political and advocacy activities of organizations that provide immigration-related services. Mr. Shirley also investigates and reports on fraud, waste, and abuse in government, including matters involving government-funded programs and organizations engaged in immigration-related activities.

87. AB 2624 directly burdens and chills Mr. Shirley's protected speech. Because Mr. Shirley's reporting and investigative activities may involve researching, obtaining, publishing, or disseminating information concerning designated immigration support services providers and persons associated with them, he faces a credible threat of enforcement under AB 2624.

88. As a result of AB 2624 and the credible threat of enforcement, Mr. Shirley has self-censored and refrained from engaging in otherwise lawful research, investigation, and publication that he would undertake but for AB 2624's restrictions.

89. Mr. Shirley's injury is fairly traceable to Defendants because Defendants are the state officials charged with enforcing and administering AB 2624, and their authority to enforce the statute creates the credible threat of enforcement and the chilling effect on Mr. Shirley's constitutionally protected speech.

90. Mr. Shirley seeks a declaration that AB 2624 violates the First Amendment to the United States Constitution, as well as preliminary and permanent injunctive relief.

**COUNT III**
**Overbreadth in Violation of the Free Speech Clause of the First Amendment to the United States Constitution, 42 U.S.C. § 1983**

91. Mr. Shirley refers to paragraphs 1 through 90, inclusive, and realleges all matters contained therein as though fully set forth at this place.

92. A statute is unconstitutionally overbroad when it prohibits a substantial amount of protected speech relative to its plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

93. Mr. Shirley regularly engages in advocacy regarding the investigation and elimination of fraud, waste, and abuse in government-funded programs, including by highlighting the role that immigration may play in contributing to such problems.

94. AB 2624 is substantially overbroad because its definitions of "[p]ersonal information," "[h]arassment," "[d]esignated immigration support services," "[d]esignated immigration support services provider," "[d]esignated immigration support services facility," and "'[p]ublicly post' or 'publicly display'" reach a substantial amount of constitutionally protected speech, including investigative journalism, political commentary, whistleblowing, and public-interest advocacy.

95. These provisions sweep in protected speech far beyond any legitimate governmental interest in preventing actual threats or violence.

96. AB 2624's overbreadth is particularly injurious to Mr. Shirley because the statute exposes his ongoing and intended investigative reporting to potential civil and criminal liability based on the publication of truthful, lawful, and constitutionally protected information concerning individuals and entities involved in immigration-related programs.

97. AB 2624's overbreadth extends well beyond Mr. Shirley's own reporting to a wide range of protected speech by third parties, including: (a) local news reporters investigating the use of taxpayer funds by nonprofit immigration-services organizations; (b) government watchdog and transparency organizations publishing the salaries, funding sources, or government contracts of immigration-services personnel; (c) political commentators and podcasters who publish or discuss

publicly available information, such as LinkedIn profiles or campaign-finance disclosures, concerning immigration-services employees who also engage in public political advocacy; and (d) whistleblowers who disclose the identities of specific individuals responsible for fraud, waste, or abuse within organizations that provide "[d]esignated immigration support services" as broadly defined in Section 6218.11. Because AB 2624's broad and open-ended definitions reach this substantial range of protected speech by parties other than Mr. Shirley, the statute is unconstitutionally overbroad under *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

98. As applied to Mr. Shirley, the statute's overbreadth is particularly acute because Mr. Shirley's investigative reporting necessarily involves researching, obtaining, and publishing information that falls within the statute's expansive definitions. The statute's civil liability provisions create an in terrorem effect that chills his constitutionally protected journalism.

99. Mr. Shirley seeks a declaration that AB 2624 violates the First Amendment to the United States Constitution, as well as preliminary and permanent injunctive relief.

**COUNT IV**
**Vagueness in Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983**

100. Mr. Shirley refers to paragraphs 1 through 99, inclusive, and realleges all matters contained therein as though fully set forth at this place.

101. A law is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

102. When a law "interferes with the right of free speech . . . a more stringent vagueness test should apply." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

103. AB 2624 fails to give persons of ordinary intelligence fair notice of what conduct is prohibited.

104. AB 2624 defines "[d]esignated immigration support services" through an open-ended list introduced by the phrase "including, but not limited to." Cal. Gov't Code § 6218.11(b). Because the statute does not identify the outer boundaries of the listed services, it is difficult for individuals, businesses, and organizations to determine which services fall within the definition.

105. AB 2624 defines "[d]esignated immigration support services facility" through an open-ended list introduced by the phrase "including, but not limited to." Cal. Gov't Code § 6218.11(d). The inclusion of entities as broad and ubiquitous as "health care facilities" further underscores the definition's sweeping scope. The statute neither provides a meaningful limiting principle nor identifies the outer boundaries of the listed entities, leaving individuals, businesses, and organizations to guess which facilities fall within its scope.

106. AB 2624 defines "[h]arassment" by reference to "repeated, unreasonable, and unwelcome conduct" directed at a targeted individual, expressly including telephone calls and written correspondence that are repeated, unreasonable, and unwelcome. Cal. Gov't Code § 6218.11(f). Terms such as "unreasonable" and "unwelcome" are inherently context-dependent and do not adequately identify when persistent criticism, advocacy, protest activity, or press inquiries become unlawful.

107. AB 2624 defines "[p]ersonal information" to include "information that identifies, relates to, describes, or is capable of being associated with a designated immigration support services provider, employee, or volunteer, including, but not limited to, their name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, license plate number, employment, employment history, and financial information." Cal. Gov't Code § 6218.11(h). This definition is exceptionally broad, sweeping in not only traditional identifying information but also any information that merely "relates to," "describes," or is "capable of being associated with" a covered person, without meaningfully defining the outer boundaries of those categories.

108. AB 2624 defines "'[p]ublicly post' or 'publicly display'" to mean "to intentionally communicate or otherwise make available to the general public." Cal. Gov't Code § 6218.11(i). This definition is unclear because it provides no meaningful guidance as to when content is merely available to the public and when that availability constitutes an affirmative act of posting or displaying. In the modern technological age, content may remain publicly accessible online indefinitely without any further action by the speaker. The statute, therefore, leaves speakers to guess whether simply maintaining previously published content online constitutes a new "public[] post"

each day the content remains available to the general public.

109. The statute's requirement that offenders act with "specific intent" to "incite" or "threaten" violence does not eliminate these vagueness concerns. The constitutional line between protected advocacy or criticism and an unprotected threat or incitement is highly fact-dependent, and speakers cannot reasonably determine when disseminating particular information crosses that line under Sections 6218.19(a) through (c). The uncertainty is compounded by the statute's broad definitions and its written-demand and civil-liability provisions, which can chill protected expression before any court determines whether the speech is unlawful.

110. AB 2624 further violates due process because its vague and undefined terms vest state officials, program participants, and civil juries with unfettered discretion to determine, after the fact, whether particular speech about a broadly and vaguely defined class of individuals crosses the line into unlawful conduct, inviting discriminatory or arbitrary enforcement against disfavored speakers, including Mr. Shirley.

111. Because AB 2624 regulates speech and implicates core First Amendment freedoms, the more stringent vagueness standard stated above applies.

112. AB 2624 fails to provide Mr. Shirley fair notice of what conduct is prohibited and is sufficiently standardless to invite arbitrary enforcement.

113. AB 2624 fails to provide persons of ordinary intelligence fair notice of what conduct is prohibited and is sufficiently standardless to invite arbitrary enforcement. The statute, therefore, violates the Due Process Clause of the Fourteenth Amendment.

114. Mr. Shirley seeks a declaration that AB 2624 violates the Fourteenth Amendment to the United States Constitution, as well as preliminary and permanent injunctive relief.

**COUNT V**
**Ex Post Facto Law in Violation of Article I, Section 10 of the United States Constitution**

115. Mr. Shirley refers to paragraphs 1 through 114, inclusive, and realleges all matters contained therein as though fully set forth at this place.

116. Article I, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." The Ex Post Facto Clause prohibits a State from retroactively

imposing criminal punishment for conduct that was not criminal when it occurred.

117. AB 2624 creates a new crime under California law and subjects violators to criminal penalties.

118. AB 2624, therefore, imposes punitive consequences on conduct within its scope.

119. Before AB 2624 was enacted, Mr. Shirley published content concerning matters addressed by AB 2624.

120. Mr. Shirley's publication of that content was lawful when he published it.

121. The act of publishing that content occurred before AB 2624's enactment and before its effective date.

122. Nevertheless, AB 2624 reaches information that was made publicly available before the statute took effect if that information remains publicly accessible afterward. Specifically, AB 2624 imposes penalties and liability whenever covered information is "ma[de] available to the general public." Cal. Gov't Code § 6218.11(i).

123. Thus, as applied to Mr. Shirley, AB 2624 attaches new criminal consequences to his completed, pre-enactment publication of information that was lawful when he published it.

124. The fact that Mr. Shirley's previously published content remains publicly accessible after AB 2624 takes effect does not change the fact that the publication for which the State seeks to impose liability occurred before the enactment and effective date of the statute.

125. By imposing criminal punishment for conduct that was lawful when it occurred, AB 2624 operates as an ex post facto law as applied to Mr. Shirley.

126. Mr. Shirley has suffered and will continue to suffer irreparable injury absent declaratory and injunctive relief.

127. Mr. Shirley seeks a declaration that AB 2624 violates Article I, Section 10 of the United States Constitution, as well as preliminary and permanent injunctive relief prohibiting its enforcement against him.

**PRAYER FOR RELIEF**

Mr. Shirley respectfully requests that this Court:

A. Issue a declaratory judgment declaring that California Government Code

§§ 6218.11, 6218.18–6218.21, as enacted by Assembly Bill 2624, violates the First and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the United States Constitution;

B. Issue a preliminary and permanent injunction enjoining Defendants, their agents, officers, employees, and successors, and all persons acting in concert with them, from enforcing California Government Code §§ 6218.18–6218.21 against Mr. Shirley or any other person;

C. Award reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988, and any other applicable statute; and

D. Award any other relief that this Court deems just and proper.

Respectfully submitted,

DATED: September 4, 2026

/s/ John W. Howard

Gene P. Hamilton, *pro hac vice**
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice**
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice**
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice**
ian.prior@aflegal.org
James K. Rogers, *pro hac vice**
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice**
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice**
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

*Application forthcoming

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

DATED: September 4, 2026

<u>*/s/ John W. Howard*</u>

Gene P. Hamilton, *pro hac vice**
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice**
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice**
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice**
ian.prior@aflegal.org
James K. Rogers, *pro hac vice**
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice**
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice**
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

*Application forthcoming

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842