Gene P. Hamilton, *pro hac vice*
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice*
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice*
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice*
ian.prior@aflegal.org
James K. Rogers, *pro hac vice**
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice**
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice*
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

Jonathan F. Mitchell, *pro hac vice*
jonathan@mitchell.law

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, TX 78701
Phone: (512) 686-3940

*Application pending

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842

Alex Kozinski, SBN 66473
alex@kozinski.com
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Phone: (310) 541-5885

*Attorneys for Plaintiff Nicholas Shirley*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

NICHOLAS SHIRLEY,

*Plaintiff,*

v.

ROBERT BONTA, in his official capacity as California Attorney General; and SHIRLEY N. WEBER, in her official capacity as California Secretary of State,

*Defendants.*

Case No. 2:26-cv-3000-DJC-AC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**Date:** December 17, 2026
**Time:** 1:30 PM
**Courtroom:** 7 (14th Floor)
**Judge:** Hon. Daniel J. Calabretta

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
BACKGROUND ........ 2
LEGAL STANDARD ........ 5
ARGUMENT ........ 6
- I. Mr. Shirley has standing. ........ 6
  - A. Mr. Shirley is suffering multiple ongoing injuries. ........ 6
  - B. Mr. Shirley satisfies the traceability and redressability requirements. ........ 10
- II. Mr. Shirley is likely to succeed on the merits. ........ 10
  - A. AB 2624 is a facially invalid content-based and viewpoint-discriminatory speech restriction that cannot withstand strict scrutiny. ........ 10
    - i. AB 2624 is content-based and viewpoint-discriminatory. ........ 10
    - ii. AB 2624 cannot survive strict scrutiny. ........ 13
    - iii. AB 2624 cannot be enforced against anyone. ........ 15
  - B. AB 2624 is unconstitutional as applied to Mr. Shirley's intended speech. ........ 15
  - C. AB 2624 is unconstitutionally overbroad. ........ 16
  - D. AB 2624 is unconstitutionally vague. ........ 18
  - E. AB 2624 operates as an ex post facto law. ........ 22
- III. The remaining preliminary-injunction factors favor Mr. Shirley. ........ 23
- IV. *CASA* does not control the scope of available relief. ........ 24
- V. The Court should decline an injunction bond. ........ 25

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

### CASES


*Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749 (9th Cir. 2019) (en banc). .......... 24

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) .......... 20

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) .......... 6, 9

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). .......... 17

*Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996). .......... 6

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011). .......... 13

*Cal. Chamber of Com. v. Bonta*, 802 F. Supp. 3d 1227 (E.D. Cal. 2025). .......... 11

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) .......... 23

*Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141 (9th Cir. 2001) .......... 22

*Calder v. Bull*, 3 U.S. 386 (1798). .......... 22

*Canatella v. California*, 304 F.3d 843 (9th Cir. 2002). .......... 6

*Chiles v. Salazar*, 607 U.S. 627 (2026). .......... 11, 12, 15, 24

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) .......... 13

*Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003). .......... 25

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019). .......... 23

*Davenport* v. *Wash. Ed. Ass'n*, 551 U.S. 177 (2007). .......... 12

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) .......... 23, 24

*Dombrowski v. Pfister*, 380 U.S. 479 (1965). .......... 6, 24

*Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion). .......... 23, 24

*Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020). .......... 5

*FCC v. Fox Television Stations*, 567 U.S. 239 (2012). .......... 19

*FEC v. Cruz*,
596 U.S. 289 (2022) ........ 10

*First Choice Women's Res. Ctrs. v. Davenport*,
608 U.S. 174 (2026) ........ 9

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989) ........ 15, 16

*IMDb.com v. Becerra,*
962 F.3d 1111 (9th Cir. 2020) ........ 14, 15, 16

*Imperial Sovereign Ct. of Mont. v. Knudsen*,
170 F.4th 820 (9th Cir. 2026) ........ 15

*Italian Colors Rest. v. Becerra*,
878 F.3d 1165 (9th Cir. 2018) ........ 6, 14

*Kohls v. Bonta*,
797 F. Supp. 3d 1177 (E.D. Cal. 2025) ........ 19

*L.A. Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ........ 6

*Libertarian Party of L.A. Cnty. v. Bowen*,
709 F.3d 867 (9th Cir. 2013) ........ 6

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010) ........ 6

*Matal v. Tam*,
582 U.S. 218 (2017) ........ 11

*McCormack v. Hiedeman*,
694 F.3d 1004 (9th Cir. 2012) ........ 7

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ........ 24

*Neb. Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ........ 24

*New York Times Co. v. United States*,
403 U.S. 713 (1971) ........ 15

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 24

*Planned Parenthood of Columbia/Willamette v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002) (en banc) ........ 7, 21

*Porter v. Martinez*,
68 F.4th 429 (9th Cir. 2023) ........ 10

*R.A.V. v. City of St. Paul,*
505 U.S. 377 (1992) ........ 14, 24

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........ 10, 11, 13

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002) ........ 13

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ........ 11, 12

*Save Our Sonoran, Inc. v. Flowers*,
408 F.3d 1113 (9th Cir. 2005). .......... 25

*Smith v. Doe*,
538 U.S. 84 (2003). .......... 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016). .......... 6

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014). .......... 7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025). .......... 24, 25

*United States v. Alvarez*,
567 U.S. 709 (2012). .......... 13

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000). .......... 13

*United States v. Rundo*,
990 F.3d 709 (9th Cir. 2021) .......... 17

*United States v. Stevens*,
559 U.S. 460 (2010). .......... 18

*United States v. Williams*,
553 U.S. 285 (2008). .......... 16, 18

*United States v. Zhi Yong Guo*,
634 F.3d 1119 (9th Cir. 2011). .......... 19

*Van De Kamp v. Tahoe Reg'l Plan. Agency*,
766 F.2d 1319 (9th Cir. 1985) .......... 25

*Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*,
455 U.S. 489 (1982). .......... 19

*Vill. of Schaumburg v. Citizens for a Better Env't*,
444 U.S. 620 (1980). .......... 15

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988). .......... 6

*Virginia v. Hicks*,
539 U.S. 113 (2003). .......... 18

*Weaver v. Graham*,
450 U.S. 24 (1981). .......... 22, 23

*Welty v. Dunaway*,
___ F.4th ___, 2026 WL 2874671 (6th Cir. Sept. 24, 2026). .......... 24, 25

*Welty v. Dunaway*,
791 F. Supp. 3d 818 (M.D. Tenn. July 18, 2025) .......... 25

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
32 F.4th 852 (9th Cir. 2022). .......... 5

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008). .......... 5

*Wooley v. Maynard*,
430 U.S. 705 (1977). .......... 24

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. I, § 10. ....................................................................................22

**STATUTES**

AB 2624, 2026 Cal. Legis. Serv. ch. 117, § 3 (West). ..............................................22
Cal. Civ. Code § 1708.89.........................................................................................14
Cal. Gov't Code § 6218.10. .........................................................................................3
Cal. Gov't Code § 6218.11 ..................................................................................... passim
Cal. Gov't Code § 6218.12 ......................................................................................4, 10
Cal. Gov't Code § 6218.13 ...........................................................................................4
Cal. Gov't Code § 6218.14 ...........................................................................................4
Cal. Gov't Code § 6218.15 ...........................................................................................4
Cal. Gov't Code § 6218.16 ...........................................................................................4
Cal. Gov't Code § 6218.18. ..........................................................................................4
Cal. Gov't Code § 6218.19. ..................................................................................... passim
Cal. Gov't Code § 6218.20 ...................................................................................... passim
Cal. Gov't Code § 6218.21 ...........................................................................................4

**OTHER AUTHORITIES**

Assemblymember Mia Bonta (@AsmMiaBonta), X (Aug. 19, 2026, at 2:39 PM), https://perma.cc/P78Y-93U2.............................................................................9

Bethany Blankley, *Assaults Against ICE Officers Up 1,300%, Vehicle Attacks Up 3,200%*, THE CENTER SQUARE (July 13, 2026), https://perma.cc/LEA9-WUZC. .........................................................................12

CAL. STATE ASSEMBLY, *Assembly Floor Session*, at 1:13:08–1:13:31 (Apr. 16, 2026), https://www.assembly.ca.gov/media/assembly-floor-session-20260416 (statement of Assemb. Carl DeMaio). .......................................8

FOX NEWS, *Nick Shirley Testifies Before Congress on Minnesota Fraud Scandal*, at 37:12 (YouTube, streamed Jan. 21, 2026), https://youtu.be/g-6o4T9KnSM?t=2232.........................................................2

Katie King, *A Push to Shield Immigrant Aid Workers is Raising 1st Amendment Concerns*, L.A. TIMES (May 4, 2026), https://perma.cc/736A-324B..........................................................................8

Mia Sato, *Slopaganda Goes West*, THE VERGE (Feb. 3, 2026), https://perma.cc/UR7T-W9QK...........................................................................7

Nick Shirley (@NickShirleyy), X (Feb. 16, 2026, at 6:10 PM), https://perma.cc/5JFR-VMQU ..........................................................................3

NICK SHIRLEY, *I Testified in Front of the Senate . . . Democrats Vanished* (YouTube, July 16, 2026), https://youtu.be/Vn2FOgTGkVs?t=170. ..........................2

Sofia Williams, *Immigrant Services Privacy Bill – So-Called 'Stop Nick Shirley Act' – Sent to Newsom*, THE SACRAMENTO BEE (Aug. 21, 2026), https://perma.cc/KK9S-XRYD. ..........................................................................8

*Womp Womp*, DICTIONARY.COM, https://perma.cc/M74W-28YK.....................................9

**RULES**

Federal Rule of Civil Procedure 65(c)..........25

**FILINGS**

Complaint..........2, 3
Declaration..........passim

## INTRODUCTION

In a brazen display of raw and unconstitutional power, California is attempting to silence investigative reporters for doing what investigative reporters do: investigate and report the truth. California Assembly Bill 2624 ("AB 2624"), known as the "Stop Nick Shirley Act," prohibits anyone from "publicly post[ing] or publicly display[ing]" the "personal information" of any "immigration support services provider" with "specific intent" to cause certain harms. Cal. Gov't Code § 6218.19(a). But the statute's sweeping, open-ended definitions reach far beyond credible threats to personal safety and chill constitutionally protected speech. As a result, anyone reporting on a person or organization with even a tenuous connection to immigration services faces substantial civil and criminal liability. The demand mechanism in Section 6218.19(b) is worse. A program participant may demand that a speaker stop publishing identifying information, and Section 6218.19(b)(4) then authorizes injunctive and declaratory relief, plus mandatory fees, if the speaker does not comply. Unlike subsection (a), subsection (b)(4) does not require the plaintiff to prove that the speaker acted with specific intent to cause harm.

Plaintiff Nicholas Shirley is a well-known investigative journalist who exposes waste, fraud, and abuse in taxpayer-funded immigration programs and the organizations that administer them. He recently focused his reporting on California's sprawling network of nonprofits, healthcare facilities, and other entities that receive public funds under the banner of "immigration support." Shirley Decl. ¶ 8 (hereinafter "Decl."). And he intends to continue that reporting. *Id.* ¶ 15. Because of AB 2624, however, he now runs the risk of massive civil liability and criminal prosecution for doing no more than telling the truth.

Mr. Shirley filed this action on September 4, 2026, seeking to enjoin Defendants from enforcing key provisions of AB 2624 and violating his rights under the First and Fourteenth Amendments, and Article I, Section 10 of the United States Constitution.

Mr. Shirley has standing to bring this pre-enforcement lawsuit. He intends to engage in speech that AB 2624 proscribes, faces a credible threat of enforcement, and is unmistakably among the law's intended targets. Indeed, he is *the* target.

Mr. Shirley is also likely to prevail on the merits. AB 2624 is unconstitutional both facially and as applied because it imposes content- and viewpoint-based restrictions on speech, targeting speech based on its subject matter and favoring the California government's preferred side of the immigration debate. Such restrictions cannot survive strict scrutiny. The statute is independently unconstitutional because it is overbroad: Its open-ended definitions reach far beyond conduct plausibly connected to incitement or true threats, sweeping in protected journalism and whistleblowing. It is also unconstitutionally vague, providing no discernible line between protected speech and punishable conduct. Finally, AB 2624 operates as an ex post facto law by exposing Mr. Shirley to prosecution for conduct that was lawful when he engaged in it.

## BACKGROUND

Mr. Shirley is an investigative journalist and independent publisher who exposes fraud, waste, and abuse in government programs. Decl. ¶ 2. He investigates matters of public concern, scrutinizes government programs and the expenditure of taxpayer dollars, and brings his findings to a public audience of more than 6 million followers. *Id.* ¶¶ 2–3.

Mr. Shirley's reporting has had significant consequences. In 2025, he uncovered more than $100 million in fraud involving Somali-run daycare centers in Minnesota, prompting the federal government to withhold or freeze hundreds of millions of dollars in federal funding. *Id.* ¶¶ 5–6. His reporting has also exposed several other fraudulent taxpayer-funded businesses and programs, including in California, leading to their closure or termination. *Id.* ¶ 7. He has testified about his reporting before the House and Senate.[1]

On January 31, 2026, Mr. Shirley announced his arrival in California by posting a photograph captioned: "Hello California I've arrived." Decl. ¶ 9. Two days later, California Governor Gavin Newsom claimed that the San Diego Somali community felt "under siege" following "the arrival of right-wing provocateurs," no doubt referring to Mr. Shirley, who had investigated immigrant-run daycare facilities in San Diego. Compl. ¶ 26.

[1] Fox News, *Nick Shirley Testifies Before Congress on Minnesota Fraud Scandal*, at 37:12 (YouTube, streamed Jan. 21, 2026), https://youtu.be/g-6o4T9KnSM?t=2232; Nick Shirley, *I Testified in Front of the Senate . . . Democrats Vanished* (YouTube, July 16, 2026), https://youtu.be/Vn2FOgTGkVs?t=170.

On February 4, 2026, Mr. Shirley announced: "California fraud videos coming soon." Decl. ¶ 10. Around the same time, media reports revealed that the Trump Administration was considering creating an anti-fraud task force in California. Compl. ¶ 24. California Attorney General Robert Bonta publicly denounced the allegations of fraud as "reckless," "false," "outrageous," and "ridiculous." *Id.* ¶ 28.

Undaunted, on February 16, 2026, Mr. Shirley published a 23-minute video reporting on alleged fraud in California. Decl. ¶ 11; Nick Shirley (@NickShirleyy), X (Feb. 16, 2026, at 6:10 PM), https://perma.cc/5JFR-VMQU. The video contains constitutionally protected speech concerning matters of public concern, including irregularities in voting and voter registration. Within hours, Governor Newsom's Press Office attempted to downplay Mr. Shirley's reporting. Compl. ¶ 31. The following day, it published another hostile message directed at Mr. Shirley. *Id.* ¶ 32. Mr. Shirley welcomes the opportunity to debate the issue in the public forum, but what happened next was censorship, not debate.

On February 20, 2026, Assemblymember Mia Bonta introduced AB 2624. The bill quickly acquired a colloquial name: the Stop Nick Shirley Act. Rather than target threats or harassment generally, the law frames itself as an effort to protect those who serve immigrants amid "the current federal administration's anti-immigration attitude and policies." Cal. Gov't Code § 6218.10(b).

AB 2624 prohibits anyone from posting on the internet the image or "personal information" of a "designated immigration support services provider, employee, or volunteer" when acting with the "specific intent" to cause one of several enumerated harms. *Id.* § 6218.19(a)(1). It defines "[p]ersonal information" broadly to include, among other things, employment history and financial information. *Id.* § 6218.11(h). And "[p]ublicly post" or "publicly display" means any effort to intentionally communicate or otherwise make information available to the public. *Id.* § 6218.11(i). A covered individual whose image or information is posted may bring a civil action for declaratory or injunctive relief and money damages. *Id.* § 6218.19(a)(2). The statute also exposes alleged violators to uncapped penalties of "three times the actual damages, but in no case less than four thousand

dollars ($4,000)." *Id.* § 6218.19(a)(2)(B). A successful plaintiff (but not a successful defendant) "shall" be awarded costs and attorney's fees. *Id.* § 6218.19(a)(2)(A).

The statute defines the covered persons and entities broadly. "Designated immigration support services" include (but are "not limited to") legal, medical, referral, translation, and other services. *Id.* § 6218.11(b). A "provider, employee, or volunteer" includes not only individuals who provide those services, but also anyone who *receives* them. *Id.* § 6218.11(c). A "facility" encompasses (but is "not limited to") nonprofit-organization offices, California Department of Justice–recognized entities, legal offices, and healthcare facilities. *Id.* § 6218.11(d).

The statute also creates an address-confidentiality program through which eligible individuals may apply to the California Secretary of State for protection. *Id.* §§ 6218.12–6218.18. In addition, AB 2624 establishes a demand-and-cease mechanism through which program participants may demand that a speaker stop publishing anything that might identify them. *Id.* § 6218.19(b). Continued publication after such a demand provides grounds for an action seeking declaratory or injunctive relief. *Id.* Again, a successful plaintiff (but not a successful defendant) "shall" be awarded "court costs and reasonable attorney's fees." *Id.* § 6218.19(b)(4).

Finally, AB 2624 creates a new criminal offense. Section 6218.20(a) makes it "unlawful for a person to post on the internet" the "personal information or image" of designated immigration support services providers, if done "with the specific intent that another person imminently use that information to commit a crime involving violence or a threat of violence" against those persons or others living at their homes.

Governor Newsom signed AB 2624 into law on August 22, 2026. It becomes operative on October 1, 2027, *id.* § 6218.21, but journalists like Mr. Shirley are already feeling its effects. Decl. ¶¶ 44–45.

Mr. Shirley intends to continue his reporting that precipitated the enactment of AB 2624. *Id.* ¶¶ 15, 20. Specifically, he plans to investigate and publish information concerning individuals and organizations within the statute's broad definitions of designated

immigration support services providers and facilities. *Id.* ¶ 16. That reporting may discuss employees and volunteers, funding sources, government contracts, professional affiliations, and non-compliance with applicable laws and regulations. *Id.* ¶ 17. As a result, he plans to publish truthful, lawfully obtained information about individuals associated with covered organizations and facilities—including material that falls within AB 2624's definition of "personal information." Cal. Gov't Code § 6218.11(h); Decl. ¶ 18.

AB 2624 chills speech and threatens Mr. Shirley's reporting. Mr. Shirley cannot confidently determine whether publishing truthful, lawfully obtained information about the subjects of his investigations could expose him to civil or criminal liability. Decl. ¶ 26. Nor is the uncertainty confined to future reporting. And because AB 2624 potentially extends to information published before the law's effective date, Mr. Shirley fears that the law exposes him to liability for information already made public. *Id.* ¶¶ 34, 39.

AB 2624 places Mr. Shirley in an untenable position: Curtail his lawful investigative journalism or continue reporting under the threat of civil and criminal sanctions. The First Amendment prevents California from putting Mr. Shirley to that choice.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Likelihood of success is "the most important factor" and functions as a threshold inquiry. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). The Ninth Circuit employs a "sliding scale" approach to the *Winter* factors, "which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success." *Where Do We Go Berkeley v. Cal. Dep't of Transp*., 32 F.4th 852, 859 (9th Cir. 2022).

## ARGUMENT

### I. Mr. Shirley has standing.

At the preliminary-injunction stage, a plaintiff need only show that he is "likely to establish each element of standing." *L.A. Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026). Standing requires (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

First Amendment cases "present unique standing considerations such that the inquiry tilts dramatically toward a finding of standing." *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (internal quotation marks omitted); *see also Canatella v. California*, 304 F.3d 843, 853 (9th Cir. 2002) (observing that the Supreme Court has "relaxed" standing requirements "in the First Amendment context"). In pre-enforcement cases, "the plaintiff may meet constitutional standing requirements by 'demonstrat[ing] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Critically, a plaintiff need not wait for enforcement before seeking judicial relief. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988). The principle "[t]hat one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases, '[f]or free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser.'" *Bland v. Fessler*, 88 F.3d 729, 736–37 (9th Cir. 1996) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

#### A. Mr. Shirley is suffering multiple ongoing injuries.

A plaintiff suffers an injury when he "intends to engage in a course of conduct arguably affected with a constitutional interest" and "there is a credible threat that the challenged provision will be invoked against" him. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (citation modified). In other words, the substantial and credible

"threat of enforcement" of an unlawful statute "amounts to an Article III injury in fact." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). In evaluating the genuineness of a claimed threat of enforcement, courts consider: (1) whether the plaintiff has articulated a concrete plan to violate the law in question, (2) whether those with enforcement authority have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir. 2012).

Mr. Shirley has articulated a concrete plan to engage in speech that will violate AB 2624. He earns income from his reporting and relies on his journalism for his livelihood. Decl. ¶ 4. In pursuing that vocation, he intends to continue the reporting that AB 2624 forbids: investigating, recording, and publishing videos about potential fraud in immigration-support facilities and by those who operate them. *Id.* ¶¶ 15–16. In fact, he has already undertaken this work and published some of his reporting. *Id.* ¶ 11.

Mr. Shirley does not intend to threaten anyone or to incite violence. *Id.* ¶ 23. He intends to publish truthful, lawfully obtained information about covered persons and facilities. *Id.* ¶¶ 19–22. Nevertheless, people in the immigration industry have already blamed his prior videos for harassment they say they received. *See, e.g.*, Mia Sato, *Slopaganda Goes West*, THE VERGE (Feb. 3, 2026), https://perma.cc/UR7T-W9QK. That is the enforcement theory supplied by *Planned Parenthood of Columbia/Willamette v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1079 (9th Cir. 2002) (en banc): Knowledge of third-party reaction to earlier speech becomes "intent." It is why the threat of enforcement is credible. It is also why the statute is unconstitutional as applied to journalism. Public identification of people involved in a political controversy is not a true threat merely because someone else later behaves badly. *Id.* at 1089–92, 1101 (Kozinski, J., dissenting). And, unlike the statute in *Planned Parenthood*, AB 2624 adds a demand right, injunctive relief, and mandatory fees without requiring a plaintiff to prove intent. *See* Cal. Gov't Code § 6218.19(b)(4).

The risk does not end there. Section 6218.19(b)(4) exposes Mr. Shirley to liability without a finding that he acted with specific intent to cause harm. If a program participant

demands that Mr. Shirley remove his reporting, he will refuse. Decl. ¶ 43. Yet Mr. Shirley has no way to know ex ante who has been admitted to the program and is empowered to make such a demand. He thus cannot identify which reporting is subject to the statute's special protections before publishing. And, although a demand must include a statement "describing the reasonable fear that the program participant or their coresident has for their safety," the statute provides no mechanism for challenging the veracity or reasonableness of that asserted fear. Cal. Gov't Code § 6218.19(b)(3). Program participants can thus exempt themselves from Mr. Shirley's reporting for "four years," regardless of how newsworthy their conduct may be. *Id.* Given Mr. Shirley's notoriety, demands are likely. The result is a powerful incentive to avoid reporting in California.

The statute was designed with Mr. Shirley's reporting in mind. In advocating for AB 2624, Angelica Salas, executive director of the Coalition for Humane Immigrant Rights, alleged that recent reporting about immigration groups in California had resulted in threats and harassment against her staff. *See* Katie King, *A Push to Shield Immigrant Aid Workers is Raising 1st Amendment Concerns*, L.A. TIMES (May 4, 2026), https://perma.cc/736A-324B. Mr. Shirley engages in precisely that kind of reporting.

Legislators have explained that AB 2624 will burden Mr. Shirley's reporting. Assemblymember Carl DeMaio warned on the Assembly floor that the law would have the effect of "stopping citizen journalists from recording and posting . . . evidence of fraud." CAL. STATE ASSEMBLY, *Assembly Floor Session*, at 1:13:08–1:13:31 (Apr. 16, 2026), https://www.assembly.ca.gov/media/assembly-floor-session-20260416 (statement of Assemb. Carl DeMaio). Similarly, Senator Tony Strickland told reporters that the law "makes it harder for investigative reporters like Nick Shirley to do what they've done." Sofia Williams, *Immigrant Services Privacy Bill – So-Called 'Stop Nick Shirley Act' – Sent to Newsom*, THE SACRAMENTO BEE (Aug. 21, 2026), https://perma.cc/KK9S-XRYD. The bill's popular name is the giveaway: It is designed to target Mr. Shirley and his work. California officials seek to deter and burden that reporting so that they can avoid public scrutiny of how they administer programs funded by millions of taxpayer dollars.

Assemblymember Mia Bonta—the statute's sponsor—has also acknowledged that Mr. Shirley is a likely target for enforcement. When Mr. Shirley warned that the law could subject citizen journalists to fines for exposing potential fraud by immigration-support service providers, Bonta responded: "Womp womp." Assemblymember Mia Bonta (@AsmMiaBonta), X (Aug. 19, 2026, at 2:39 PM), https://perma.cc/P78Y-93U2.[2]

A newly enacted statute that is not yet in effect will not have a history of prior enforcement. But that is not a standing defect; it is the point of a pre-enforcement challenge. A plaintiff need not expose himself to injury before seeking relief. *Babbitt*, 442 U.S. at 298. The credible, substantial threat of enforcement against Mr. Shirley is sufficient to satisfy the injury requirement.

Reporting Mr. Shirley has already done—and reporting he does now—exposes him to the risk of enforcement under AB 2624. The law prohibits "knowingly publicly post[ing] or publicly display[ing], disclos[ing], or distribut[ing] on the internet" certain information about covered persons. Cal. Gov't Code § 6218.19(a)(1). Mr. Shirley has already "intentionally communicate[d]" or "otherwise ma[d]e available" to the public such information through videos and related materials identifying covered persons and facilities. *Id.* § 6218.11(i). He regularly recirculates older content and keeps his archive publicly accessible. Decl. ¶ 41. Once AB 2624 takes effect, leaving that archive online or recirculating it could itself constitute a prohibited public posting or display.

Mr. Shirley also suffers an ongoing injury in the form of chilled speech. *First Choice Women's Res. Ctrs. v. Davenport*, 608 U.S. 174, 191 (2026) ("objectively reasonable chill" of First Amendment rights is "an injury in fact sufficient to give rise to Article III standing"). Notwithstanding the substantial risk of liability for reporting on California's immigration-support organizations, Mr. Shirley does not intend to abandon his California reporting. Decl. ¶ 45. But he expects to do less of it and instead devote more of his reporting to states where he does not face the same threat to his speech or livelihood. *Id.* ¶¶ 44–45.

[2] *See Womp Womp*, DICTIONARY.COM, https://perma.cc/M74W-28YK (defining "womp womp" as an interjection "used to dismiss or to mock a failure, loss, etc.").

He also reasonably fears that reporting he has already published, as well as reporting he publishes before the statute takes effect, could subject him to aggressive enforcement once the law becomes operative. *Id.* ¶¶ 38–40.

**B. Mr. Shirley satisfies the traceability and redressability requirements.**

"[A]n injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application." *FEC v. Cruz*, 596 U.S. 289, 297 (2022). Defendants are the officials charged with implementing AB 2624 and enforcing its key provisions. *See, e.g.*, Cal. Gov't Code § 6218.12(a) (charging the Secretary of State with approving applications for the address-confidentiality program). The chill Mr. Shirley suffers, and the uncertainty he faces with respect to his publications, would not exist but for the statutory scheme and its impending implementation. The requested relief would redress Mr. Shirley's injuries. *See Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023).

**II. Mr. Shirley is likely to succeed on the merits.**

Mr. Shirley is likely to succeed on all his constitutional claims.

**A. AB 2624 is a facially invalid content-based and viewpoint-discriminatory speech restriction that cannot withstand strict scrutiny.**

Because AB 2624 is a content- and viewpoint-based restriction on speech, it is subject to strict scrutiny. The statute cannot survive that demanding standard.

**i. AB 2624 is content-based and viewpoint-discriminatory.**

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.*

AB 2624 is content based on its face because its prohibitions turn on the content of the information published. The statute restricts publication of "personal information or image[s]" concerning a specifically defined class of persons and entities—those engaged in "immigration *support* services." Cal. Gov't Code §§ 6218.11, 6218.19–6218.20

(emphasis added). Whether speech is covered by the statute therefore depends on who is discussed and what they do—the quintessential hallmark of a content-based restriction. That alone triggers strict scrutiny, whether or not the law also discriminates based on viewpoint. *Reed*, 576 U.S. at 168–69.

The statute's content-based character becomes unmistakable when the same publication is considered in two different scenarios: A person could publish personal information about an individual who works to remove illegal aliens from the country—an ICE officer, for example—and that publication would fall outside AB 2624's scope. Publish the same information about someone who provides "immigration support services," however, and the statute restricts it. The statute's prohibitions thus "depend entirely on the communicative content" of the message. *Id.* at 164; *see also Cal. Chamber of Com. v. Bonta*, 802 F. Supp. 3d 1227, 1258 (E.D. Cal. 2025) ("the subject matter of the speech dictates whether the law applies"). That is content-based regulation in its clearest form.

Worse still, AB 2624 discriminates based on viewpoint. "Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.'" *Id.* at 168 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819, 829 (1995)). "When the government seeks not just to restrict speech based on its subject matter, but also seeks to dictate what particular 'opinion or perspective' individuals may express on that subject, 'the violation of the First Amendment is all the more blatant.'" *Chiles v. Salazar*, 607 U.S. 627, 641 (2026). "A law drawing a line based on the 'ideology' of the speaker—disadvantaging one view and advantaging another—skews the marketplace of ideas our society depends on to discover truth." *Id.* at 656 (Kagan, J., concurring). "[G]overnments in this country must nearly always 'abstain' from it." *Id*. at 641. California must "abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829; *accord Matal v. Tam*, 582 U.S. 218, 234 (2017).

The text of AB 2624 makes clear that viewpoint is the motivating factor. The statute

prohibits publication of certain information only when the speaker acts with "specific intent" to cause harm to persons who provide services to immigrants. Cal. Gov't Code § 6218.19. The same information may be published with the same intent to cause the same harms, yet that speaker incurs no liability or risk of prosecution if it concerns persons on the other side of the immigration debate. AB 2624 protects individuals who provide services designed to assist immigrants in remaining in the United States, while providing no comparable protection to immigration-enforcement personnel who deport illegal immigrants or whistleblowers who report suspected immigration abuses—or Mr. Shirley himself, for that matter. Yet those individuals are also targets of doxxing, true threats, harassment, and violence arising from contentious public debate over immigration policy. *See* Bethany Blankley, *Assaults Against ICE Officers Up 1,300%, Vehicle Attacks Up 3,200%*, THE CENTER SQUARE (July 13, 2026), https://perma.cc/LEA9-WUZC; Decl. ¶ 13.

Laws that protect people on one side of a contentious issue while leaving their counterparts exposed to similar risks put the government's thumb on the scale in favor of a preferred viewpoint. As Justices Kagan and Sotomayor recently observed, the "most demanding standard" applies "when there is any 'realistic possibility that official suppression of ideas is afoot'—when, that is, a (merely) content-based law may reasonably be thought to pose the dangers that viewpoint-based laws always do." *Chiles,* 607 U.S. at 657 (Kagan, J., concurring) (quoting *Davenport* v. *Wash. Ed. Ass'n*, 551 U.S. 177, 189 (2007)). The First Amendment forbids the government from protecting certain participants in a public controversy based on their viewpoints. *Rosenberger*, 515 U.S. at 828–29.

AB 2624's specific-intent requirement does not save the statute from strict scrutiny or narrow its reach to unprotected speech. The intent requirement outlined in Section 6218.19(a)(1), for example, modifies only the purpose for which personal information is shared; it does not require that the speech itself constitute a true threat, incitement to imminent lawless action, or any other category of historically unprotected speech. Speech with evil intent is constitutionally protected, unless it fits into one of those narrow categories, which this speech does not. *See*, *e.g.*, *United States v. Alvarez*, 567 U.S. 709, 717–

18 (2012). In any event, Section 6218.19(b)(4) authorizes injunctive and declaratory relief, plus mandatory fees, for failure to honor a program participant's demand, without separately requiring the plaintiff to prove specific intent to cause harm.

**ii. AB 2624 cannot survive strict scrutiny.**

Because AB 2624 is a content-based restriction on speech, it is "presumptively unconstitutional" and can survive only if California proves that the law is narrowly tailored to further a compelling governmental interest. *Reed*, 576 U.S. at 163. "If a less restrictive alternative would serve the [g]overnment's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc*., 529 U.S. 803, 813 (2000).

A statute's underinclusivity—that is, its failure to regulate conduct that causes the same harm the government claims to address—"raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 802 (2011). "A law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002) (alterations adopted and internal quotation marks omitted); *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) (explaining that underinclusivity "diminish[es] the credibility of the government's rationale for restricting speech in the first place").

California does not seek to protect everyone who deals with immigrants and receives threats. Instead, it singles out providers of immigration "support services" for special protection, while leaving others who interact with the same population, face the same public controversy, and confront the same risks unprotected. It also targets speakers who speak out against those "support services" but not those who speak out against immigration enforcers. That selective line-drawing undermines the State's asserted interest in preventing harassment and intimidation. If those harms are serious enough to justify restricting speech, the State cannot explain why they warrant protection for "support services"

providers but not law-enforcement officers and anti-immigration activists who likewise face harassment because of their work concerning immigrants. This underinclusiveness undermines the statute's asserted justification and renders it unconstitutional under the First Amendment.

Underinclusivity is a particularly serious problem because the statute contains a criminal component. Section 6218.20 criminalizes incitement to violence by use of the internet, but only as to those speakers who target immigration providers and their clients and families. Those who engage in identical speech against immigration law enforcers and supporters may do so without risking prosecution, even though their speech is equally dangerous. Nor is the problem of online incitement and true threats unique to immigration-related disputes; such speech arises across a wide range of contentious political and social issues. The State has offered no explanation as to how or why immigration providers are uniquely vulnerable or deserving of legal protections enforced by criminal sanctions.

AB 2624 also fails narrow tailoring. "The existence of adequate content-neutral alternatives . . . 'undercut[s] significantly' any defense of such a statute, casting considerable doubt on the government's protestations that 'the asserted justification is in fact an accurate description of the purpose and effect of the law.'" *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (citation omitted). The First Amendment does not "permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech." *IMDb.com v. Becerra,* 962 F.3d 1111, 1125 (9th Cir. 2020); *Italian Colors Rest.*, 878 F.3d at 1178–79 (the existence of "more narrowly drawn alternatives" renders a statute unconstitutional even under intermediate scrutiny). If California's true objective were to prevent the harms associated with publishing personal information, it could—and already does—regulate the publication of personal information based on the manner in which it is obtained, the nature of the threat, or the conduct accompanying its publication, without reference to identity or ideology. *See, e.g.*, Cal. Civ. Code § 1708.89. AB 2624's underinclusiveness "calls into question the State's true motives in enacting the statute." *IMDb.com*, 962 F.3d at 1127; *Chiles,* 607 U.S. at 656 (Kagan,

J., concurring). AB 2624 is thus not the least restrictive means; it is a content-sorted overlay on top of laws that already reach the conduct California claims to fear.

Because "the State has not explored, or even considered, a less restrictive means . . . before resorting to the drastic step of restricting speech," *IMDb.com, 962 F.3d at* 1125, it cannot prove that AB 2624 is narrowly tailored to further a compelling governmental interest.

**iii. AB 2624 cannot be enforced against anyone.**

In First Amendment cases, litigants are permitted to raise the rights of absent third parties. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980) (collecting cases). "Thus, if a court concludes that a content-based speech restriction fails strict scrutiny, the analysis ends. The law is facially invalid and cannot be enforced against anyone." *Imperial Sovereign Ct. of Mont. v. Knudsen*, 170 F.4th 820, 845 (9th Cir. 2026) (collecting cases).

**B. AB 2624 is unconstitutional as applied to Mr. Shirley's intended speech.**

The First Amendment affords especially strong protection to the press's publication of truthful information. *See Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989). When a publisher lawfully obtains truthful information about a matter of public significance, the State may not burden its publication absent a need of the highest order and a restriction narrowly tailored to that need. *Id.* Indeed, the Supreme Court has been reluctant to suppress highly sensitive, truthful information, even when illicitly obtained. *See*, *e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971) (Pentagon Papers case).

Mr. Shirley's reporting falls squarely within that protection. He investigates and reports on immigration-related organizations and the use of taxpayer funds to provide immigration-related services, relying on public records, public statements, and on-camera interviews. Decl. ¶¶ 2, 20–21. His reporting does not contain fraud, incitement to violence, true threats, fighting words, or any other category of speech outside the First Amendment's full protection. *Id.* ¶ 19. To the contrary, his work exemplifies the First Amendment's core

function: gathering and disseminating information about matters of profound public concern, including the activities of organizations and individuals spending taxpayer dollars. He gives the public information it needs to evaluate government programs, private organizations, and the policies governing one of the most consequential and vigorously debated issues in American public life.

Applying AB 2624 to Mr. Shirley would impose a particularly onerous burden. Mr. Shirley has already identified people and entities involved in matters covered by AB 2624. *Id.* ¶ 24. Under the statute, a covered organization's employees could demand that he refrain from publishing their "personal information or image" and subject him to liability if he refuses, as he intends to do. Even absent such a demand, organizations and their employees and clients could sue Mr. Shirley by claiming he published with improper intent—and because each individual may bring a separate action, a single publication identifying multiple covered individuals could subject him to unlimited damages, penalties, and attorneys' fees. The practical effect is to place organizations and individuals entrusted with disbursing vast sums of taxpayer money beyond the reach of ordinary journalistic scrutiny.

California cannot justify its burden on speech by invoking generalized concerns about harassment or intimidation. Assuming those interests are compelling, the State must show that applying AB 2624 to Mr. Shirley's protected reporting is narrowly tailored to an interest of the highest order. *Florida Star*, 491 U.S. at 541. It cannot do so when Mr. Shirley is reporting truthfully on matters of public concern, using information lawfully obtained through ordinary journalistic methods. *See IMDb.com*, 962 F.3d at 1125.

**C. AB 2624 is unconstitutionally overbroad.**

The overbreadth doctrine requires courts to enjoin the enforcement of a statute that prohibits a "substantial" amount of protected speech relative to its "plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). AB 2624 fails that test.

California has a legitimate interest in preventing incitement and threats of violence,

which are unprotected by the First Amendment.[3] But AB 2624 does not confine itself to those categories. Instead, it authorizes a program participant to demand that Mr. Shirley refrain from publicly posting, publicly displaying, disclosing, or distributing on the internet the participant's "personal information or image." Cal. Gov't Code § 6218.19(b)(1). If the demand is not met, the participant may sue. *Id.* § 6218.19(b)(4). The statute does not require Mr. Shirley to have threatened anyone, incited violence, provoked a fight, or engaged in any other unlawful conduct. The demand may reach information that is already public—including, for example, a photograph the individual has posted on Facebook or identifying information appearing on a public website. And the statute does not require the feared harm to arise from anything Mr. Shirley has done; the asserted fear may rest on the conduct of third parties or on circumstances unrelated to Mr. Shirley altogether.

The statute therefore does not merely prevent unlawful harassment; it gives private individuals a mechanism to suppress otherwise protected speech. A journalist who accurately identifies a person, reproduces a publicly available photograph, or reports where that person works may face litigation, not because the journalist threatened or encouraged anyone to harm the person, but simply because the person invokes the statutory demand mechanism and the journalist refuses to remove the information. AB 2624 thus converts the refusal to censor protected speech into a basis for judicial relief.

The statute's sweep is particularly troubling because it reaches speech at the First Amendment's core. AB 2624 covers investigative journalism, reporting on public spending, whistleblowing, public commentary, and political advocacy—all quintessential First Amendment activities. By restricting the public's ability to identify individuals associated with government-supported institutions, the statute impedes scrutiny of those individuals and their institutions, activities, and use of public funds. And by giving program participants a veto over which of their activities may be reported, it operates as an odious prior restraint on speech. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).

---

[3] *See United States v. Rundo*, 990 F.3d 709, 713 (9th Cir. 2021) (explaining that "incitement" is speech that is (1) directed to inciting or producing *imminent* lawless action, and (2) likely to incite or produce such action).

The threat is not speculative. Mr. Shirley reports on immigration-related organizations, the provision of immigration-related services, and the expenditure of public funds. His reporting necessarily identifies individuals and organizations, describes their activities, and reproduces information or images, some of which are already publicly available. AB 2624 places that reporting under threat of prosecution and liability without requiring that the reporting itself contain a threat or any other unlawful speech. The statute therefore burdens a substantial amount of protected newsgathering and political speech while doing little to distinguish it from the speech that California may lawfully prohibit.

The danger sweeps far beyond Mr. Shirley and other independent investigative journalists. For example, if a local television station or newspaper runs a story about a demonstration or violent confrontation at a "[d]esignated immigration support services facility," it may not disclose the identity, image, or anything "capable of being associated with" anyone involved with the facility without risking civil liability. Cal. Gov't Code § 6218.11(d), (h). If the newspaper or TV station then posts the story on its website, it also exposes itself to the risk of criminal prosecution. *See id*. § 6218.20. The statute effectively creates an informational black hole regarding anything involving these facilities and the people who populate them.

The proper remedy is facial relief. In First Amendment cases, courts recognize a unique "type of facial challenge," under which a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). This "expansive remedy" is available because the threat of enforcement of an overbroad law may deter or "chill" protected speech. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

**D. AB 2624 is unconstitutionally vague.**

A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. The doctrine

applies with force to laws regulating speech, where the risk of chilling protected expression demands “a more stringent vagueness test.” *Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*, 455 U.S. 489, 499 (1982). The Constitution requires rules clear enough for ordinary speakers to understand what conduct is prohibited and definite enough to constrain official discretion. *FCC v. Fox Television Stations*, 567 U.S. 239, 253–54 (2012). And courts do not assess statutory defects in isolation; the question is whether “the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice.” *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122–23 (9th Cir. 2011).

AB 2624 is unconstitutionally vague in at least six respects. *First*, it defines “[d]esignated immigration support services” through a non-exhaustive list encompassing “legal representation, legal assistance, advocacy, case management, humanitarian relief, immigration resources, referrals, translation services, counseling services, and health care.” Cal. Gov’t Code § 6218.11(b). The statute neither defines the outer limits of those categories nor explains what distinguishes covered services from ordinary legal, medical, charitable, or advocacy activities. The definition of a “[d]esignated immigration support services facility” is equally open-ended, “including, but not limited to,” a hodgepodge of facilities. *Id.* Does it cover an apartment building with immigrant tenants? An employer that hires illegal workers? A tort or divorce lawyer with immigrant clients? It’s anybody’s guess. What is covered turns on a series of undefined, open-ended categories with no discernible boundaries.

*Second*, “harassment” is defined so loosely that speakers cannot distinguish unlawful conduct from ordinary newsgathering and advocacy. The law prohibits “repeated, unreasonable, and unwelcome conduct directed at a targeted individual that would cause a reasonable person to fear for their own safety or the safety of a household member,” including (but “not limited to”) “telephone calls” and “written correspondence.” *Id.* § 6218.11(f). “Unreasonable” and “unwelcome” supply no objective boundary between protected and prohibited conduct. Standards that “inherently rely on value judgments” do not give speakers fair notice. *Kohls v. Bonta*, 797 F. Supp. 3d 1177, 1190 (E.D. Cal. 2025).

And what does "repeated" mean? Do two calls count? A reporter's requests for comment, diligent investigative reporting, or advocacy directed at a covered individual could all be characterized as "unreasonable" and "unwelcome," depending on the recipient's reaction and a factfinder's post-hoc assessment. The statute provides no discernible line between protected speech and punishable conduct, so a speaker wary of being sued is likely to suppress protected speech. *See Ashcroft v. ACLU*, 542 U.S. 656, 670–71 (2004) ("Where a prosecution is a likely possibility, yet only an affirmative defense is available, speakers may self-censor rather than risk the perils of trial.").

*Third*, "personal information" sweeps far beyond conventional identifying information, leaving speakers with no ascertainable guidance on what they may publish. Information need not identify a person; it need only be "capable of being associated with" that person. Cal. Gov't Code § 6218.11(h). The statute thus reaches any fact about a covered individual that a speaker might publish as part of legitimate reporting. Because the list is expressly nonexclusive, speakers like Mr. Shirley cannot know what categories of information the statute encompasses. Decl. ¶¶ 28–29.

*Fourth*, "publicly post or publicly display" is undefined at the point where modern journalism most needs clarity. The statute defines those terms as "to intentionally communicate or otherwise make available to the general public." Cal. Gov't Code § 6218.11(i). But what counts as making information available to the general public? If a journalist discloses information to a source during an investigation, is that a public disclosure because the source might later share it on social media? *See* Decl. ¶ 32. The statute provides no answer. Nor does it explain whether continued public access to posts made before the law's effective date constitutes new acts of publication. Online reporting routinely remains accessible after its initial disclosure, while social-media platforms permit users to recirculate previously published content. AB 2624 leaves speakers to guess whether keeping an article, video, X post, or webpage publicly accessible constitutes a "public[] post" or "display"—and therefore a new violation—each day it remains online.

*Fifth*, the statute's imposition of a minimum $4,000 fine per "violation" is unclear.

*See* Cal. Gov't Code § 6218.19(a)(2)(B). A violation turns on a speaker's decision to "publicly post or publicly display" content, but the statute provides no rule for determining how violations are counted. Does publishing information about multiple covered individuals in a single article or video constitute one violation or a separate violation for each individual? Does reposting the same content across multiple platforms, leaving it online for several days, or making minor edits and republishing it, create additional violations? Because the statute supplies no answers, speakers cannot determine ex ante the financial risks of a single publication. And because each additional violation carries a $4,000+ penalty, the statute could produce enormous liability.

*Sixth*, the statute's requirement of "specific intent" does not cure the uncertainty. AB 2624 reaches conduct undertaken with "specific intent" to either "[i]ncite a third person to cause imminent great bodily harm" or "[t]hreaten" covered individuals. *Id.* § 6218.19(a)(1)(A)–(B). Mr. Shirley does not intend to threaten anyone or to incite violence. Decl. ¶ 23. But under Ninth Circuit precedent, intent may be inferred from a speaker's knowledge that similar speech previously prompted a third-party's adverse reaction. *See Planned Parenthood of Columbia/Willamette*, 290 F.3d at 1079–80. Thus, liability may depend not on what Mr. Shirley specifically intended when he published, but on whether a factfinder later infers intent from third-party conduct following earlier publications. The result is substantial uncertainty at the point of publication: A speaker may know what he intends when he speaks but cannot know whether third-party conduct will be invoked as evidence of an intent he did not possess.

Taken together, these defects leave Mr. Shirley without the fair notice the Constitution requires. He cannot know whether his reporting will concern a covered person or facility; whether information he lawfully obtains and publishes qualifies as "personal information"; whether ordinary newsgathering will be deemed "harassment"; whether leaving previously published material online constitutes a new "public" posting; how many "violations" a single publication may trigger; or whether officials will later characterize his purpose as the requisite "specific intent." AB 2624 is irremediably vague on its face. *See Cal.*

*Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001) ("facial vagueness challenges are appropriate if the statute clearly implicates free speech rights").

**E. AB 2624 operates as an ex post facto law.**

"No State shall . . . pass any . . . ex post facto Law." U.S. CONST. art. I, § 10. This constitutional command bars states from retroactively imposing criminal punishment for conduct that was lawful when committed. *Calder v. Bull*, 3 U.S. 386, 390 (1798). To prove a violation, a plaintiff must establish that: (1) the law imposing criminal punishment is "retrospective"—that is, it "appl[ies] to events occurring before its enactment," and (2) it "disadvantage[s] the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981).

AB 2624 creates a new crime. Section 6218.20 makes it "unlawful for a person to post on the internet," with the specific intent to inflict certain harms, the "personal information or image of a designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address." Cal. Gov't Code § 6218.20(a); *see also* AB 2624, 2026 Cal. Legis. Serv. ch. 117, § 3 (West) ("this act *creates a new crime or infraction*") (emphasis added).[4] It also states that the law shall not "preclude *prosecution* under any *other* provision of law." Cal. Gov't Code § 6218.20(b) (emphasis added). The Legislative Counsel's Digest confirms the point, stating that AB 2624 "creat[es] new crimes." AB 2624, 2026 Cal. Legis. Serv. ch. 117, Legis. Counsel's Dig. (West). A new criminal offense, backed by the enforcement power of the State, is the paradigmatic exercise of punitive authority. *Smith v. Doe*, 538 U.S. 84, 92 (2003).

AB 2624 applies to conduct that occurred before its enactment. The law defines "'[p]ublicly post' or 'publicly display'" to mean "to intentionally communicate or otherwise make available to the general public." Cal. Gov't Code § 6218.11(i). That definition is not limited to the act of initially posting information. Instead, by encompassing conduct that

---

[4] "When an act or omission is declared by a statute to be a public offense and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor." Cal. Penal Code § 19.4. "Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars ($1,000), or by both." *Id.*, violations of AB 2624 are misdemeanors punishable by up to six months of imprisonment, a $1,000 fine, or both.

"make[s] [information] available to the general public," it could be read to reach speech published in the past that remains publicly available.

AB 2624 burdens Mr. Shirley because he has already published content concerning matters now covered by the statute and expects to publish more of that content before the law's effective date. Decl. ¶¶ 36–37. Those publications were and will be lawful when made, but AB 2624 purports to make that speech a basis for criminal prosecution.

Mr. Shirley need not republish existing content or take affirmative action after October 1, 2027, to risk criminal liability. Because AB 2624 attaches criminal consequences to conduct that was completed before the statute existed, it is an ex post facto law. *Weaver*, 450 U.S. at 33–36.

**III. The remaining preliminary-injunction factors favor Mr. Shirley.**

Mr. Shirley readily satisfies the remaining preliminary-injunction factors. "Irreparable harm is relatively easy to establish in a First Amendment case." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (internal quotation marks omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (plurality opinion). In the Ninth Circuit, "[a] colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (internal quotation marks omitted). And because constitutional injuries often cannot be adequately remedied through damages, the Ninth Circuit "do[es] not require a strong showing of irreparable harm for constitutional injuries." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

The irreparable-harm factor favors Mr. Shirley. He has established a clear First Amendment violation: AB 2624 threatens enforcement against his protected investigative journalism by subjecting his speech and newsgathering activities (and those of other speakers) to civil liability. He has also established a clear ex post facto violation: Once AB 2624 takes effect, he could be prosecuted for content he posted before its effective date.

Once speech has been suppressed, the lost opportunity to gather information and inform the public cannot be fully remedied through an award of damages. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Elrod*, 427 U.S. at 373. Moreover, exposure to repeated criminal prosecutions and potentially endless civil lawsuits constitutes irreparable injury. *Wooley v. Maynard*, 430 U.S. 705, 710–12 (1977); *Dombrowski*, 380 U.S. at 485–89.

When the party opposing injunctive relief is a government entity, the third and fourth factors—the equities and the public interest—"merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). That Mr. Shirley has "raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [his] favor." *Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (internal quotation marks omitted).

The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Harris*, 772 F.3d at 583 (internal quotation marks omitted). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).

"If the First Amendment prohibits anything, it is the 'official suppression of ideas.'" *Chiles,* 607 U.S. at 656 (Kagan, J., concurring) (quoting *R.A.V.*, 505 U.S. at 390). AB 2624 chills the speech of journalists, legal observers, protesters, whistleblowers, and others seeking to inform the public about ideas of public concern.

**IV. *CASA* does not control the scope of available relief.**

As a general matter, federal courts must exercise restraint when fashioning injunctions. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–42 (2025). But "nothing in *CASA* addresses, let alone forecloses, the propriety of a broad injunction . . . in the First Amendment overbreadth context." *Welty v. Dunaway*, ___ F.4th ___, 2026 WL 2874671, at *22 (6th Cir. Sept. 24, 2026). Because First Amendment plaintiffs are permitted to raise constitutional deficiencies that operate against third parties, this Court has authority to provide a remedy that will cure those deficiencies. When a statute's unconstitutional applications

are substantial compared to its legitimate sweep, “the overwhelming weight of Supreme Court precedent” supports relief extending beyond the named plaintiff. *Id.*

Moreover, *CASA* addressed universal injunctions against federal action, while this case concerns a state law that violates the First Amendment. That distinction matters. The federal government’s unique constitutional structure and the separation-of-powers concerns that may counsel against broad injunctions of federal action have no obvious analog when a State violates rights protected by the Constitution—the supreme law to which the States bound themselves when they joined the Union. The Supremacy Clause and principles of federalism therefore support broad relief where necessary to prevent unconstitutional state action. *Id.* at *23; *accord Welty v. Dunaway*, 791 F. Supp. 3d 818, 843 (M.D. Tenn. July 18, 2025) (concluding that *CASA* “limits the availability of universal injunctions, not statewide injunctions”).

## V. The Court should decline an injunction bond.

Courts have broad discretion to waive bond under Federal Rule of Civil Procedure 65(c). *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

A bond is unwarranted here. Defendants will suffer no monetary loss or other compensable harm from an injunction preventing them from enforcing an unconstitutional law. Bonds are generally appropriate in situations, unlike this one, where an improvidently granted injunction could cause the enjoined party financial harm. *See Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 882–83 (9th Cir. 2003). Waiver is particularly appropriate because Mr. Shirley is likely to succeed on the merits. *See Van De Kamp v. Tahoe Reg’l Plan. Agency*, 766 F.2d 1319, 1325–26 (9th Cir. 1985) (upholding decision to waive bond while noting that “likelihood of success on the merits . . . tips in favor of a minimal bond or no bond at all”). This Court should decline a bond, as it has done in similar circumstances. *See Cal. Chamber of Com.*, 802 F. Supp. 3d at 1261.

## CONCLUSION

This Court should grant Mr. Shirley’s motion for a preliminary injunction without bond.

Respectfully submitted,

DATED: October 1, 2026

/s/ John W. Howard

Gene P. Hamilton, *pro hac vice*
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice*
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice*
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice*
ian.prior@aflegal.org
James K. Rogers, *pro hac vice**
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice**
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice*
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

Jonathan F. Mitchell, *pro hac vice*
jonathan@mitchell.law

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, TX 78701
Phone: (512) 686-3940

*Application pending

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842

Alex Kozinski, SBN 66473
alex@kozinski.com
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Phone: (310) 541-5885

# CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On October 1, 2026, I electronically filed **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 1, 2026 at San Diego, California.

*/s/ Dayna Dang*
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com