ROB BONTA
Attorney General of California
ANYA M. BINSACCA, State Bar No. 189613
Supervising Deputy Attorney General
KRISTIN A. LISKA, State Bar No. 315994
DERIN MCLEOD, State Bar No. 345256
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 229-0123
Fax: (415) 703-5480
E-mail: Derin.McLeod@doj.ca.gov
*Attorneys for Defendants Rob Bonta, in his official capacity as California Attorney General; and Shirley N. Weber, in her official capacity as California Secretary of State*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

**NICHOLAS SHIRLEY,**

Plaintiff,

v.

**ROBERT BONTA, in his official capacity as California Attorney General; and SHIRLEY N. WEBER, in her official capacity as California Secretary of State,**

Defendants.

Case No. 2:26-cv-03000-DJC-AC

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Date: December 17, 2026
Time: 1:30 p.m.
Dept: 7, 14th floor
Judge: Hon. Daniel J. Calabretta
Action Filed: September 4, 2026

## TABLE OF CONTENTS


**Page**

Introduction ........ 1
Background ........ 2
I. California's Safe at Home Laws, Like Other States' Laws, Provide for Substitute Addresses and Prohibit Posting Threats or Incitement. ........ 2
II. AB 2624 Provides Safe at Home Protections to Immigration Support Services Providers. ........ 4
III. Plaintiff Brings This Lawsuit and Moves for a Preliminary Injunction. ........ 6
Legal Standard ........ 7
Argument ........ 7
I. The Court Lacks Jurisdiction over Plaintiff's Claims and Requested Relief. ........ 7
A. Plaintiff Lacks Standing Because He Does Not Intend to Violate AB 2624. ........ 7
B. Plaintiff Lacks Standing to and Cannot Pursue His Requested Relief Against the Secretary or Attorney General. ........ 11
II. Plaintiff Is Not Likely to Succeed on the Merits of Any of His Claims. ........ 15
A. Plaintiff's Facial First Amendment Claim Is Not Likely to Succeed. ........ 15
B. Plaintiff's As-Applied First Amendment Claim Is Not Likely to Succeed. ........ 18
C. Plaintiff's Overbreadth Claim Is Not Likely to Succeed. ........ 19
D. Plaintiff's Vagueness Claim Is Not Likely to Succeed. ........ 20
E. Plaintiff's Ex Post Facto Claim Is Not Likely to Succeed. ........ 23
III. The Remaining Factors Also Weigh Against Plaintiff. ........ 24
IV. Any Injunction Cannot Extend Beyond Plaintiff or the Challenged Provisions. ........ 25
Conclusion ........ 25

# TABLE OF AUTHORITIES

Page

## Cases

*Alaska Right to Life Political Action Comm. v. Feldman*
504 F.3d 840 (9th Cir. 2007) ........ 10

*Am. Encore v. Fontes*
152 F.4th 1097 (9th Cir. 2025) ........ 8

*Am. Passage Media Corp. v. Cass Comm'ns, Inc.*
750 F.2d 1470 (9th Cir. 1985) ........ 11

*Ashcroft v. Am. Civil Liberties Union*
542 U.S. 656 (2004) ........ 21

*Az. Attorneys for Criminal Justice v. Mayes*
127 F.4th 105 (9th Cir. 2025) ........ 18

*Bland v. Fessler*
88 F.3d 729 (9th Cir. 1996) ........ 9

*Botosan v. Paul McNally Realty*
216 F.3d 827 (9th Cir. 2000) ........ 20, 21

*Brandenburg v. Ohio*
395 U.S. 444 (1969) ........ 15

*Brennon B. v. Superior Court*
13 Cal.5th 662 (2022) ........ 14

*Cal. Chamber of Commerce v. Bonta*
--- F.4th ---, 2026 WL 3255527 (9th Cir. Oct. 29, 2026) ........ 17

*Cal. Pro-Life Council v. Getman*
328 F.3d 1088 (9th Cir. 2003) ........ 8

*Cal. Teachers Ass'n v. State Bd. of Educ.*
271 F.3d 1141 (9th Cir. 2001) ........ 20

*Canatella v. California*
304 F.3d 843 (9th Cir. 2002) ........ 9

*Carter v. Cal. Dep't of Veteran Affairs*
38 Cal.4th 914 (2006) ........ 11

*Chiles v. Salazar*
607 U.S. 627 (2026) ........ 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) .......... 9, 12

*Cohen v. Cowles Media Co.*
501 U.S. 663 .......... 19

*Counterman v. Colorado*
600 U.S. 66 (2023) .......... 10, 16, 19

*Dahlstrom v. Sun-Times Media, LLC*
777 F.3d 937 (7th Cir. 2015) .......... 21

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006) .......... 8

*Davis v. Fed. Election Comm'n*
554 U.S. 724 (2008) .......... 8

*Deanda v. Savings Inv., Inc.*
267 F. App'x 675 (9th Cir. 2008) .......... 22

*FEC v. Cruz*
596 U.S. 289 (2022) .......... 13

*First Choice Women's Res. Ctrs. v. Davenport*
608 U.S. 174 (2026) .......... 9

*Geo Group, Inc. v. Inslee*
151 F.4th 1107 (9th Cir. 2025) .......... 12

*Greenberg v. Lehocky*
81 F.4th 376 (3d Cir. 2023) .......... 9

*Harris v. Mexican Specialty Foods, Inc.*
564 F.3d 1301 (11th Cir. 2009) .......... 22

*Hill v. Colorado*
530 U.S. 703 (2000) .......... 21, 22, 23

*IMDB.com, Inc. v. Becerra*
962 F.3d 1111 (9th Cir. 2020) .......... 19

*In re Rolando S.*
197 Cal. App. 4th 936 (2011) .......... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**


*Italian Colors Rest. v. Becerra*
878 F.3d 1165 (9th Cir. 2018) ........ 9

*L.A. Press Club v. Noem*
171 F.4th 1179 (9th Cir. 2026) ........ 9

*Libertarian Party of L.A. County v. Bowen*
709 F.3d 867 (9th Cir. 2013) ........ 9

*Lopez v. Candaele*
630 F.3d 775 (9th Cir. 2010) ........ 9

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ........ 7, 11, 12

*Matal v. Tam*
582 U.S. 218 (2017) ........ 17

*McCormack v. Hiedeman*
694 F.3d 1004 (9th Cir. 2012) ........ 9

*Melugin v. Holmes*
38 F.3d 1478 (9th Cir. 1994) ........ 21

*Moody v. NetChoice, LLC*
603 U.S. 707 (2024) ........ 15, 17, 18

*New York Times Co. v. United States*
403 U.S. 713 (1971) ........ 19

*People v. Burgos*
16 Cal.5th 1 (2024) ........ 24

*People v. Garcia*
2 Cal.5th 792 (2017) ........ 17

*People v. Toledo*
26 Cal.4th 221 (2001) ........ 9

*People v. Trevino*
26 Cal.4th 237 (2001) ........ 13

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*
290 F.3d 1058 (9th Cir. 2002) (en banc) ........ 9, 10

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Porter v. Martinez*
68 F.4th 429 (9th Cir. 2023) .......... 15

*Project Veritas v. Schmidt*
125 F.4th 929 (9th Cir. 2025) (en banc) .......... 18

*R.A.V. v. City of St. Paul*
505 U.S. 377 (1992) .......... 17

*Roulette v. City of Seattle*
97 F.3d 300 (9th Cir. 1996) .......... 20

*Smith v. Doe*
538 U.S. 84 (2003) .......... 23

*Stormans, Inc. v. Selecky*
586 F.3d 1109 (9th Cir. 2009) .......... 25

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014) .......... 8

*The Florida Star v. B.J.F.*
491 U.S. 524 .......... 19

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) (en banc) .......... 15

*Trump v. CASA, Inc.*
606 U.S. 831 (2025) .......... 25

*Unified Data Servs., LLC v. FTC*
39 F.4th 1200 (9th Cir. 2022) .......... 8

*United States v. Alvarez*
567 U.S. 709 (2012) .......... 16

*United States v. Estate Pres. Servs.*
202 F.3d 1093 (9th Cir. 2000) .......... 17

*United States v. Hastie*
854 F.3d 1298 (11th Cir. 2017) .......... 22

*United States v. Jae Gab Kim*
449 F.3d 933 (9th Cir. 2006) .......... 23

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. Osinger*
753 F.3d 939 (9th Cir. 2014) .......... 21, 23

*United States v. Reynard*
473 F.3d 1008 (2007) .......... 23

*United States v. Rundo*
990 F.3d 709 (9th Cir. 2021) .......... 15, 16

*United States v. Williams*
553 U.S. 285 (2008) .......... 19, 20, 22

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
455 U.S. 489 (1982) .......... 20, 21, 22

*Virginia v. Am. Booksellers' Ass'n*
484 U.S. 383 (1988) .......... 9

*Whole Women's Health v. Jackson*
595 U.S. 30 (2021) .......... 12, 15

*Winter v. Nat. Res. Def. Council, Inc.*
555 U.S. 7 (2008) .......... 7, 24, 25

*Yazzie v. Hobbs*
977 F.3d 964 (9th Cir. 2020) .......... 7

*Ex Parte Young*
209 U.S. 123 (1908) .......... 12

**STATUTES**

Alabama Code
§ 13A-11-38 .......... 4

Alaska Statutes
§ 44.21.022 .......... 3

Arizona Revised Statutes Annotated
§ 13-2916 .......... 4
§ 41-162 .......... 3

Arkansas Code Annotated
§ 5-27-610 .......... 4
§ 27-16-811 .......... 3

## TABLE OF AUTHORITIES
**(continued)**

**Page**

California Government Code
§ 6206(a) .......... 2
§ 6206(d) .......... 3
§ 6206(f) .......... 3
§ 6206.7 .......... 3
§ 6208.1 .......... 3
§ 6208.2 .......... 3,13
§ 6215.2(a) .......... 2
§ 6215.2(b) .......... 2
§ 6215.2(f) .......... 3
§ 6215.2(g) .......... 3
§ 6215.3 .......... 3
§ 6215.4 .......... 3
§ 6215.10 .......... 3
§ 6218 .......... 3
§ 6218.01 .......... 3, 13
§ 6218.10(a) .......... 4, 25
§ 6218.11(i) .......... 24
§ 6218.12(a) .......... *passim*
§ 6218.12(e) .......... 5
§ 6218.12(f) .......... 5, 13, 14, 17
§§ 6218.12 - 6218.17 .......... 4, 8, 12, 15
§ 6218.13 .......... 5
§ 6218.14(b) .......... 5
§ 6218.17 .......... 5
§ 6218.18 .......... *passim*
§ 6218.19(a) .......... *passim*
§ 6218.19(b) .......... *passim*
§ 6218.19(c) .......... 6, 8, 15, 26
§ 6218.20 .......... *passim*
§ 6218.21 .......... 4, 6

California Penal Code
§ 15 .......... 14
§ 19.4 .......... 14

## TABLE OF AUTHORITIES
**(continued)**

**Page**

Statutes of California
1998, c. 1005 .......... 2
2000, c. 562 .......... 2
2002, c. 380 .......... 2
2006, c. 639 .......... 2
2017, c. 570 .......... 2
2018, c. 517 .......... 2
2022, c. 554 .......... 2
2025, c. 679 .......... 2
2026, c. 117 (AB 2624) .......... *passim*

Colorado Revised Statutes
§ 18-9-313 .......... 4
§ 18-9-313.5 .......... 4
§ 18-9-313.7 .......... 4
§ 24-30-2103 .......... 3

Connecticut General Statutes
§ 54-240a .......... 3

Delaware Code Annotated
Title 10, § 1923 .......... 4
Title 11, § 9612 .......... 3

Florida Statutes
§ 741.403 .......... 3

Georgia Code Annotated
§ 50-18-151 .......... 3

Hawaii Revised Statutes
§ 801G-2 .......... 3

Idaho Code
§ 19-5703 .......... 3
§ 19-5803 .......... 3
§ 19-6203 .......... 3

Illinois Compiled Statutes
Chapter 740, 195/10 50 .......... 4
Chapter 750, 61/15 .......... 3

Indiana Code
§ 5-26.5-2-2 .......... 3
§ 35-45-2-1 .......... 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Iowa Code
§ 9E.3 .......... 3
§ 708.18 .......... 4

Kansas Statutes Annotated
§ 75-453 .......... 3

Kentucky Revised Statutes Annotated
§ 14.302 .......... 3
§ 525.085 .......... 4

Maine Statutes
Title 5, § 90-B .......... 3
Title 14, § 9102 .......... 4

Maryland Code Annotated, Courts and Judicial Proceedings
§ 3-2304 .......... 4

Maryland Code Annotated, State Government
§ 7-303 .......... 3

Massachusetts General Laws
Chapter 9A, § 2 .......... 3

Michigan Compiled Laws
§ 780.855 .......... 3

Minnesota Statutes
§ 5B.03 .......... 3
§ 211B.076 .......... 4
§ 609.5151 .......... 4

Mississippi Code Annotated
§ 99-47-1 .......... 3

Missouri Revised Statutes
§ 565.240 .......... 4
§ 589.663 .......... 3

Montana Code Annotated
§ 40-15-117 .......... 3

Nebraska Revised Statutes
§ 42-1204 .......... 3

## TABLE OF AUTHORITIES
### (continued)

**Page**

Nevada Revised Statutes
§ 205.4659 ........ 4
§ 217.462 ........ 3

New Hampshire Revised Statutes Annotated
§ 7:43 ........ 3

New Jersey Statutes Annotated
§ 47:4-3 ........ 3
§ 47:4-4 ........ 3

New Mexico Statutes Annotated
§ 30-3-20 ........ 4
§ 40-13B-3 ........ 3

New York Executive Law
§ 108 ........ 3

North Carolina General Statutes
§ 15C-4 ........ 3

North Dakota Century Code Annotated
§ 12.1-17-07 ........ 4

Ohio Revised Code Annotated
§ 111.42 ........ 3

Oklahoma Statutes
Title 21, § 1176 ........ 4
Title 22, § 60.14 ........ 3

Oregon Revised Statutes
§ 30.835 ........ 4
§ 192.822 ........ 3

Pennsylvania Consolidated Statutes
Title 18, § 2719 ........ 4
Title 23, § 6705 ........ 3

Rhode Island General Laws
§ 42-164-3 ........ 3
§ 42-164-10 ........ 4

South Carolina Code Annotated
§ 16-25-130 ........ 3

## TABLE OF AUTHORITIES
**(continued)**

**Page**

South Dakota Codified Laws
§ 22-11-40 .......... 4

Tennessee Code Annotated
§ 39-17-320 .......... 4
§ 40-38-602 .......... 3

Texas Code of Criminal Procedure Annotated
Article 58.052 .......... 3

Texas Penal Code Annotated
§ 42.074 .......... 4

Utah Code Annotated
§ 75E-11-102 .......... 3
§ 76-12-205 .......... 4

Vermont Statutes Annotated
Title 15, § 1152 .......... 3

Virginia Code Annotated
§ 2.2-515.2 .......... 3
§ 18.2-186.4 .......... 4

Washington Revised Code
§ 4.24.792 .......... 4
§ 40.24.030 .......... 3

West Virginia Code
§ 48-28A-103 .......... 3
§ 61-3C-14c .......... 4

Wisconsin Statutes
§ 165.68 .......... 3
§ 757.07 .......... 4

**RULES**

Federal Rules of Evidence
Rule 201 .......... 11

**OTHER AUTHORITIES**

53 Opinions of the California Attorney General 309 (1970) .......... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Katie King, *A push to shield immigrant aid workers is raising 1st Amendment concerns*, L.A. Times (May 4, 2026) .......... 11

LaFave & Scott, Substantive Criminal Law (1986) § 6.2(c)(1) .......... 9

U.S. Treasury Financial Crimes Enforcement Network, Ruling FIN-2009-R003 (Nov. 3, 2009) .......... 3

## INTRODUCTION

California, like at least 45 other states, protects its residents from people threatening or inciting violence against them. For more than 20 years, California has had a Safe at Home program. Victims of certain crimes and people doing certain work, upon a sworn statement and supporting evidence of fear for their safety, may obtain a substitute address for mailing, service of process, and use in public records. No one may post information about covered individuals with specific intent to threaten or to incite imminent great bodily harm against them. Covered individuals may sue those who post their information with such intent. The Safe at Home laws cover victims of domestic violence, sexual assault, stalking, human trafficking, child abduction, or elder or dependent abuse, as well as public employees or contractors and reproductive or gender affirming health care providers.

Like the other Safe at Home laws, Assembly Bill 2624, Privacy for immigration support services providers ("AB 2624") protects a group likely to face threats or violence.[1] Effective October 1, 2027, an immigration support services provider, upon a sworn statement and supporting evidence of fear for their safety, may obtain a substitute address. People may not post providers' personal information with specific intent to threaten or incite imminent great bodily harm against them. A provider may sue someone who posts their information with intent to threaten or incite violence against them.

Plaintiff Nick Shirley brings a mess of claims against Attorney General Rob Bonta ("Attorney General") and Secretary of State Shirley Weber ("Secretary") in a pre-enforcement challenge to AB 2624. He asserts that AB 2624 violates the First Amendment on its face and, in some part, as applied to him; that it is overbroad; that, because of certain terms, it is void for vagueness; and that it is an ex post facto law. He seeks a preliminary injunction against criminal enforcement by the Attorney General and implementation of AB 2624 by the Secretary, even though AB 2624 does not go into effect until October 1, 2027.

[1] 2026 Cal. Stat. c. 117 (adding Gov't Code §§ 6218.10 - 6218.21). AB 2624 is Exhibit A to Defendants' Request for Judicial Notice ("RJN"). All references to statutes or codes are to California statutes or codes, unless otherwise specified.

Plaintiff lacks standing because he cannot allege any injury from the substitute address provisions, and he does not intend to violate AB 2624's provisions prohibiting threats or incitement. Furthermore, neither the Attorney General nor the Secretary has the enforcement authority against Plaintiff that he seeks to enjoin. Any injury is thus not traceable or redressable, and his requested relief is barred by the Eleventh Amendment.

Plaintiff is also not likely to succeed on the merits. Neither AB 2624's substitute address provisions nor its restrictions on threats or incitement regulate conduct protected by the First Amendment. AB 2624 gives reasonable notice of its prohibition of unprotected conduct. And AB 2624 is not punitive or retroactive.

Accordingly, the motion should be denied.

## BACKGROUND

### I. California's Safe at Home Laws, Like Other States' Laws, Provide for Substitute Addresses and Prohibit Posting Threats or Incitement.

**A. Substitute Addresses.** In 1999, the California Legislature created the Safe at Home program. Domestic violence victims could apply for a substitute address for receipt of mail, service of process, and inclusion in public records, thereby keeping their home addresses confidential. 1998 Cal. Stat. c. 1005 (adding Gov't Code §§ 6205 *et seq.*). The program has expanded to stalking victims (2000 Cal. Stat. c. 562); reproductive healthcare services providers, employees, volunteers, or patients (2002 Cal. Stat. c. 380 (adding Gov't Code §§ 6215 *et seq.*)); victims of sexual assault (2006 Cal. Stat. c. 639), human trafficking (2017 Cal. Stat. c. 570), and elder or dependent abuse (2018 Cal. Stat. c. 517); public employees or contractors (2022 Cal. Stat. c. 554); and gender affirming healthcare services providers, employees, volunteers, or patients (2025 Cal. Stat. c. 679).

An application must include a sworn statement that the person fears for their safety. Gov't Code §§ 6206(a)(1); 6215.2(a)(1)(C), (b)(1)(C). An application must also include specified evidence that the applicant or the applicant's workplace has, within the last year, been subject to threats, harassment, or violence. *Id.* §§ 6206(a)(1)-(2); 6215.2(a)(1)(A)-(B), (b)(1)(A)-(B). An applicant falsely attesting to fear of safety or knowingly providing

false information is guilty of a misdemeanor. *Id.* §§ 6206(f); 6215.2(g). A successful applicant is certified a program participant but may be removed upon request or by the Secretary in specified circumstances. *Id.* §§ 6206(d), 6206.7; 6215.2(f), 6215.3, 6215.4.[2]

Forty-five other states similarly allow certain individuals who fear for their safety to obtain a substitute address, typically upon application.[3] *See, e.g.*, Idaho Code §§ 19-5703, -5803, -6203 (law enforcement and judicial officers; victims of domestic violence, stalking, rape, malicious harassment, human trafficking); N.J. Stat. Ann. § 47:4-3, -4 (reproductive health service patients or providers; victims of domestic violence, sexual assault, stalking); S.C. Code Ann. § 16-25-130 (victims of domestic violence, human trafficking, stalking, harassment, sexual offenses).[4]

**B. Threats or Incitement.** The Safe at Home laws also prohibit posting or soliciting on the internet information about program participants or covered individuals with specific intent to threaten them or incite imminent great bodily harm against them. *See* Gov't Code §§ 6208.1, 6208.2; 6215.10; 6218, 6218.01. A covered individual can enforce the prohibitions through an action for declaratory or injunctive relief or, in some cases, damages. *Id.* §§ 6208.1, 6208.2; 6218.

Twenty-eight other states also prohibit posting or soliciting personal information, either in general or of an individual in certain groups, with the intent, for instance, to

---

[2] As of the most recent reporting, approximately 8,000 individuals have a substitute address under the program. *See* RJN Ex. C at 1.

[3] The U.S. Treasury Department also allows banks to use a customer's substitute address and still be in compliance with bank secrecy laws. *See* Treas. Fin. Crimes Enf't Network, Rul. FIN-2009-R003 (Nov. 3, 2009).

[4] *See also* Alaska Stat. § 44.21.022; Ariz. Rev. Stat. Ann. § 41-162; Ark. Code Ann. § 27-16-811; Colo. Rev. Stat. § 24-30-2103; Conn. Gen. Stat. § 54-240a; Del. Code Ann. tit. 11, § 9612; Fla. Stat. § 741.403; Ga. Code Ann. § 50-18-151; Haw. Rev. Stat. § 801G-2; 750 Ill. Comp. Stat. 61/15; Ind. Code § 5-26.5-2-2; Iowa Code § 9E.3; Kan. Stat. Ann. § 75-453; Ky. Rev. Stat. Ann. § 14.302; Me. Stat. tit. 5, § 90-B; Md. Code Ann., State Gov't § 7-303; Mass. Gen. Laws ch. 9A, § 2; Mich. Comp. Laws § 780.855; Minn. Stat. § 5B.03; Miss. Code Ann. § 99-47-1; Mo. Rev. Stat. § 589.663; Mont. Code Ann. § 40-15-117; Neb. Rev. Stat. § 42-1204; Nev. Rev. Stat. § 217.462; N.H. Rev. Stat. Ann. § 7:43; N.M. Stat. Ann. § 40-13B-3; N.Y. Exec. Law § 108; N.C. Gen. Stat. § 15C-4; Ohio Rev. Code Ann. § 111.42; Okla. Stat. tit. 22, § 60.14; Or. Rev. Stat. § 192.822; 23 Pa. Cons. Stat. § 6705; 42 R.I. Gen. Laws § 42-164-3; Tenn. Code Ann. § 40-38-602; Tex. Code Crim. Proc. Ann. art. 58.052; Utah Code Ann. § 75E-11-102; Vt. Stat. Ann. tit. 15, § 1152; Va. Code Ann. § 2.2-515.2; Wash. Rev. Code § 40.24.030; W. Va. Code § 48-28A-103; Wis. Stat. § 165.68.

threaten or that the information be used to harm the individual. *See*, *e.g.*, Ala. Code § 13A-11-38 (intent that others will use information to harass or harm; law enforcement officers, firefighters, public servants); Mo. Rev. Stat. § 565.240 (intent "to cause great bodily harm or death, or threatening to cause" same; felony for personal information of law enforcement officers, parole officers, judges, commissioners, prosecuting attorneys, or family members); Okla. Stat. tit. 21, § 1176 ("intent to threaten, intimidate or harass, or facilitate another to" do so; peace officer, public official, election official, medical care provider, crime victim).[5]

## II. AB 2624 Provides Safe at Home Protections to Immigration Support Services Providers.

In 2026, the California Legislature found that "[p]ersons providing support services to the immigrant community have been subject to harassment, threats, and intimidation for their work." Gov't Code § 6218.10(a). In response, the Legislature passed AB 2624, which allows immigration support services providers to apply for substitute addresses, *id.* §§ 6218.12–6218.17, and prohibits certain threats and incitement against them, *id.* §§ 6218.18–6218.20. AB 2624 goes into effect on October 1, 2027. *Id.* § 6218.21.

**A. Substitute Addresses**. An immigration support services provider will be able to apply to the Secretary of State for a substitute address for receipt of mail, service of process, and inclusion in public records, while the applicant's home address is kept confidential. Gov't Code § 6218.12(a). As in other Safe at Home laws, an application must include a sworn statement, e.g., "that the applicant fears for their safety" and evidence, e.g., that the facility where the person works has, within the last year, been subject to

[5] *See also* Ariz. Rev. Stat. Ann. § 13-2916; Ark. Code Ann. § 5-27-610; Colo. Rev. Stat. §§ 18-9-313, -313.5, -313.7; Del. Code Ann. tit. 10, § 1923; 740 Ill. Comp. Stat. 195/10; Ind. Code § 35-45-2-1; Iowa Code § 708.18 (legislators and judicial officers); Ky. Rev. Stat. Ann. § 525.085; Me. Stat. tit. 14, § 9102 (minors); Md. Code Ann. Cts. & Jud. Proc. § 3-2304 (judicial officer or family); Minn. Stat. §§ 609.5151; 211B.076 (law enforcement officers; election officials); Nev. Rev. Stat. § 205.4659; N.M. Stat. Ann. § 30-3-20 (judges or family member); N.D. Cent. Code Ann. § 12.1-17-07; Or. Rev. Stat. § 30.835; 18 Pa. Cons. Stat. § 2719 (public safety officials); 42 R.I. Gen. Laws § 42-164-10; S.D. Codified Laws § 22-11-40 (law enforcement and judicial officers); Tenn. Code Ann. § 39-17-320; Tex. Penal Code Ann. § 42.074; Utah Code Ann. § 76-12-205; Va. Code Ann. § 18.2-186.4; Wash. Rev. Code § 4.24.792; W. Va. Code § 61-3C-14c; Wis. Stat. § 757.07 (judicial officers).

threats, harassment, or violence. *Id.* § 6218.12(a)(1). An applicant who knowingly provides false or incorrect information is guilty of a misdemeanor. *Id.* § 6218.12(f). A successful applicant will be certified as a program participant. *Id.* § 6218.12(e).

As with other Safe at Home participants, the Secretary must not disclose participants' addresses, except in listed circumstances; must provide participants with information about their rights and resources; and must submit reports to the Legislature. *Id.* § 6218.17. The Secretary must also cancel or decline to renew certifications for listed reasons. *Id.* §§ 6218.13, 6218.14(b).

**B. Threats or Incitement.** AB 2624 also includes five provisions addressing posting or soliciting information with the intent to threaten or incite violence:

**(1) The Home Address Provision (Gov't Code § 6218.18(a)):** A person "shall not knowingly post the home address of a program participant" or specified coresident on the internet knowing the individual is a program participant or relation and "specifically intending to incite . . . imminent great bodily harm . . . that is likely to occur imminently" or "threatening to cause imminent great bodily harm to such an individual." *Id.*

**(2) The General Posting Provision (Gov't Code § 6218.19(a)(1)):** A person "shall not knowingly publicly post" on the internet personal information of a provider or coresident with "specific intent to" (A) "incite a third person to cause imminent great bodily harm . . . where the third person is likely to commit this imminent harm" or (B) "threaten . . . in a manner that places the person identified . . . in objectively reasonable fear for their safety." *Id.* A provider may sue someone who posts their information with such intent, including for damages. *Id.* § 6218.19(a)(2).

**(3) The Written Demand Provision (Gov't Code § 6218.19(b)):** A person, upon receipt of a written demand not to post a program participant's personal information on the internet, "shall not publicly post" the personal information on the internet with "specific intent to" (A) "incite a third person to cause imminent great bodily harm" to the program participant or coresident "where the third person is likely to commit this imminent harm" or (B) "threaten the program participant or coresident in a manner that places" them "in

objectively reasonable fear for their personal safety." *Id.* § 6218.19(b)(2). A demand must include a description of the participant's reasonable fear for their safety. *Id.* § 6218.19(b)(3). A program participant may sue someone who, after receiving a demand, posts their information with such intent. *Id.* § 6218.19(b)(4).

**(4) The Solicitation Provision (Gov't Code § 6218.19(c)(1)):** A person "shall not solicit, sell, or trade" a provider's personal information on the internet with "specific intent to" (A) "incite a third person to cause imminent great bodily harm" to the provider or coresident "where the third person is likely to commit this imminent harm" or (B) "threaten such an individual . . . in a manner that places the individual in objectively reasonable fear for their personal safety." *Id.* A provider may sue someone who solicits, sells, or trades their information with such intent, including for damages. *Id.* § 6218.19(c)(2).

**(5) The Facilitating Criminal Conduct Provision (Gov't Code § 6218.20(a)):** "It is unlawful for a person to post" a provider or co-resident's personal information on the internet with "specific intent that another person imminently use that information to commit a crime involving violence or a threat of violence that is likely to occur" against them. *Id.*

## III. Plaintiff Brings This Lawsuit and Moves for a Preliminary Injunction.

Plaintiff "post[s]" or "publish[es]" his reporting on the internet. ECF 35-2 at 2-3, 13 (¶¶ 3, 10, 11; Ex. C).[6] His "reporting has not and will not involve . . . true threats, incitement, . . . or any other category of speech that is constitutionally unprotected." ECF 35-2 at 3-4 (¶ 19). He has "never intended, and do[es] not intend, for [his] reporting to incite anyone to cause imminent great bodily harm or to threaten anyone in a manner that would place them in objectively reasonable fear for their personal safety." ECF 35-2 at 4 (¶ 23).

Plaintiff has brought suit against the Secretary and Attorney General, seeking injunctive relief against either of them "enforcing" Government Code sections 6218.18 - .21 (the five threat or incitement provisions listed above and the chapter's effective date). ECF 1 at 21 (¶B).

[6] Throughout, pin cites to pleadings on file are to ECF pagination in the upper right.

He now moves for a preliminary injunction to prevent (1) the Attorney General from initiating "any criminal prosecution under AB 2624" and (2) the Secretary from "designating any addresses, certifying any program participants, or otherwise implementing or administering any provision [of] AB 2624." ECF 35 at 2-3. He seeks this relief based on (A) a Facial First Amendment claim, only discussing the General Posting and Written Demand Provisions, ECF 35-1 at 17-22; (B) an As-Applied First Amendment claim, only gesturing to the same two provisions, ECF 35-1 at 22-23; (C) an Overbreadth claim, only mentioning the Written Demand Provision, ECF 35-1 at 23-25; (D) a Vagueness claim, addressing four or five definitions, a statutory damages provision, and the phrase "specific intent," "[t]aken together," ECF 35-1 at 25-29; and (E) an Ex Post Facto claim, only mentioning the Facilitating Criminal Conduct Provision, ECF 35-1 at 22-23. He seeks a universal injunction. ECF 35-1 at 31-32.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm" absent "preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The moving party also "must make a clear showing of each element of standing" for each "form of relief that is sought." *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020).

## ARGUMENT

### I. The Court Lacks Jurisdiction over Plaintiff's Claims and Requested Relief.

#### A. Plaintiff Lacks Standing Because He Does Not Intend to Violate AB 2624.

To satisfy Article III's requirement that a federal court may only hear a "case or controversy," Plaintiff must show an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 574 (1992). To show an injury in fact in a pre-enforcement challenge like this one, Plaintiff must show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat

of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). "Standing is not dispensed in gross. . . . A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).

**1.** As to the Secretary, Plaintiff cannot establish standing to seek injunctive relief against "designating any addresses, certifying any program participants, or otherwise implementing or administering any provision [of] AB 2624," ECF 35 at 3, because he makes no argument the substitute address provisions themselves proscribe any conduct of his or work any injury on him. *See* Gov't Code §§ 6218.12-6218.17. Nor does he make any claims against those provisions. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("remedy . . . limited to the inadequacy that produced the injury in fact").

**2.** As to both defendants, Plaintiff cannot establish standing to challenge the threat or incitement provisions because he disclaims any "intention to engage" in *any* "conduct . . . proscribed by" those provisions. *See Susan B. Anthony List*, 573 U.S. at 159. All five of AB 2624's threat or incitement provisions prohibit posting "*specifically intending to incite* a third person to cause imminent great bodily harm . . . that is likely to occur imminently or *threatening* to cause imminent great bodily harm." Gov't Code § 6218.18(a) (emphasis added); *see id.* §§ 6218.19(a)(1)(A)-(B), 6218.19(b)(2)(A)-(B), 6218.19(c)(1)(A)-(B), 6218.20(a) (similar). "Mr. Shirley does not intend to threaten anyone or to incite violence." ECF 35-1 at 14. He therefore cannot say that he intends to engage in conduct "proscribed by a statute," that he "would have the intention to engage in the proscribed conduct, were it not proscribed," or that "there exists a credible threat of prosecution." *See, e.g.*, *Am. Encore v. Fontes*, 152 F.4th 1097, 1114, 1115 (9th Cir. 2025); *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210-11 (9th Cir. 2022) (no standing to challenge regulation of soundboard technology where Plaintiff did not allege intention to use soundboard technology).

Plaintiff "nakedly assert[s]" that his speech is somehow "chilled" by AB 2624, but that is not enough for standing. *Cal. Pro-Life Council v. Getman*, 328 F.3d 1088, 1095 (9th Cir.

2003); *see Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) (student whose intended conduct not within policy lacked standing despite claim of chill). Absent an intent to engage in prohibited conduct, any "chill" is not objectively reasonable. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416, 418 (2013); *Greenberg v. Lehocky*, 81 F.4th 376, 389 (3d Cir. 2023) (planned conduct outside of regulation means "any subjective chill . . . not objectively reasonable"). Plaintiff offers no authority that someone disclaiming any intent to violate a statute has standing; no case he cites is on point.[7]

**3.** Plaintiff argues he has a cognizable injury, even though he disclaims any intention to violate AB 2624, by pointing to an interpretation of a federal statute, by misreading AB 2624, and by noting scattered statements related to AB 2624. Each argument is meritless.

First, Plaintiff claims that the Ninth Circuit's interpretation of the federal Freedom of Access to Clinic Entrances ("FACE") Act somehow lowers the standard for "intent" to threaten in AB 2624 or somehow means Plaintiff could be liable under AB 2624 if it were interpreted like the Ninth Circuit interpreted the FACE Act. ECF 35-1 at 14 (citing *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1079 (9th Cir. 2002) (en banc)). Neither is correct. The meaning of "specific intent" in AB 2624 is a matter of California law: it means "intent to engage in the conduct and/or bring about the consequences proscribed." *E.g.*, *People v. Toledo*, 26 Cal.4th 221, 230 (2001) (citing 2 LaFave & Scott, Substantive Criminal Law (1986) § 6.2(c)(1)). Furthermore, Plaintiff disclaims any intent to engage in the kind of conduct the Ninth Circuit held established liability under the FACE Act. Plaintiff declares that his "reporting has not and

---

[7] *First Choice Women's Res. Ctrs. v. Davenport*, 608 U.S. 174, 181 (2026) (plaintiff challenged subpoena served on it); *Virginia v. Am. Booksellers' Ass'n*, 484 U.S. 383, 388-89, 392 (1988) (plaintiffs intended to display books; display prohibited by law); *L.A. Press Club v. Noem*, 171 F.4th 1179, 1188 (9th Cir. 2026) (plaintiffs previously physically injured by defendants and modified reporting to avoid further injury); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) (plaintiffs would impose surcharge but for challenged law prohibiting surcharge); *Libertarian Party of L.A. County v. Bowen*, 709 F.3d 867, 871 (9th Cir. 2013) (non-resident plaintiffs intended to collect signatures but for law prohibiting non-residents collecting signature); *McCormack v. Hiedeman*, 694 F.3d 1004, 1008 (9th Cir. 2012) (plaintiff prosecuted); *Canatella v. California*, 304 F.3d 843, 852-53 (9th Cir. 2002) (plaintiff previously disciplined under challenged provisions intended to continue similar expression); *Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996) (plaintiff used prohibited technology; would use again if not prohibited).

will not involve . . . true threats." ECF 35-2 at 3 (¶ 19). In other words, he will not be "aware" that "others could regard his statements as threatening violence" and "deliver[] them anyway." *See Counterman v. Colorado*, 600 U.S. 66, 79 (2023) (defining true threats). But that is what the Ninth Circuit held violated the FACE Act: including individuals on a poster "knowing" those individuals would understand inclusion as "a serious expression of intent to inflict bodily harm" and intending "to intimidate them." 290 F.3d at 1077, 1079. Plaintiff accordingly cannot say that he intends to engage in conduct that would violate AB 2624, even if liability under AB 2624 paralleled liability under the FACE Act. The *Planned Parenthood* case does not change anything; Plaintiff lacks standing.

Second, Plaintiff claims that the enforcement provision for the Written Demand Provision, Gov't Code § 6218.19(b)(4), does not require any *mens rea* and so he may be sued under that provision even if he does not intend to threaten or incite harm. ECF 35-1 at 14-15. As an initial matter, that enforcement provision only allows for suit by a "program participant." Gov't Code § 6218.19(b)(4). Such exclusively private enforcement cannot confer standing for the injunctions Plaintiff seeks against the Attorney General or Secretary. *See infra* at 11-14.[8] Furthermore, Plaintiff is wrong about the required *mens rea*, as both the text and legislative history show. First text: subsection 6218.19(b)(4) provides for relief upon "a failure to honor a demand," when "a violation has occurred." Subsection (b)(2) specifies what "a failure to honor a demand" and "a violation" mean—posting after receipt of a demand, with "specific intent" to incite imminent great bodily harm or to threaten. Gov't Code § 6218.19(b)(2). That's confirmed by AB 2624's history. As introduced, AB 2624 allowed for an action simply upon a demand and continued posting. *See* RJN Ex. B at 14 (February 20, 2026 version). The Legislature subsequently amended the bill to add subsection (b)(2), thereby making clear that enforcement could only occur upon demand, continued posting, *and* specific intent to threaten or incite imminent great bodily harm. *Compare* RJN Ex. A at 10 (Gov't Code § 6218.19(b)(1)-(4) as chaptered),

[8] There cannot be a "program participant" before October 1, 2027, so any challenge is also not ripe. *E.g.*, *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849-50 (9th Cir. 2007).

*with* RJN Ex. B at 14 (Gov't Code § 6218.19(b)(1)-(2) as introduced). Plaintiff has disclaimed such intent and so does not have standing to challenge subsection (b)(4).[9]

Finally, unable to identify any injury based on AB 2624, Plaintiff points to scattered statements about AB 2624 to claim he "is a likely target for enforcement." ECF 35-1 at 15-16. None of these unsworn, conclusory, hearsay statements are properly before the Court, and none should be accorded any weight. *See, e.g.*, *Am. Passage Media Corp. v. Cass Comm'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (rejecting *affidavits* in support of preliminary injunction because "conclusory and without sufficient support in facts"); Fed. R. Evid. 201(b) (limiting judicial notice to matters "not subject to reasonable dispute").[10] None of the statements is relevant to the meaning of AB 2624. "*[A]uthor's* statements" that are "part of the debate on the legislation *and* were communicated to other legislators" can be "evidence of legislative intent," but none of the quoted statements are author's statements that were part of the debate on the legislation or communicated to other legislators. *See Carter v. Cal. Dep't of Veteran Affairs*, 38 Cal.4th 914, 928 (2006) (emphasis added). And none of the statements changes the clear meaning of AB 2624 (or that Mr. Shirley has disclaimed any intent to engage in conduct proscribed by AB 2624).

### B. Plaintiff Lacks Standing to and Cannot Pursue His Requested Relief Against the Secretary or Attorney General.

To establish standing, Plaintiff must also show that any injury is "fairly traceable to the challenged action of the defendant" and "likely . . . will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (cleaned up). Furthermore, under the Eleventh Amendment, federal courts only have jurisdiction to "prevent[] state executive officials from

---

[9] Plaintiff also claims that merely posting information on the internet exposes him to enforcement of the General Posting Provision, section 6218.19(a)(1). ECF 35-1 at 16. But again, such posting only exposes him to enforcement if done with "specific intent" to incite imminent great bodily harm or to threaten—an intent he has disclaimed. *See* Gov't Code § 6218.19(a)(1); ECF 35-2 at 3, 4 (¶¶ 19, 23).

[10] Plaintiff's characterizations are also misleading. For example, the Legislature nowhere calls AB 2624 the "Stop Nick Shirley Act"; AB 2624's title is "Privacy for immigration support service providers." And statements assertedly appearing in the Los Angeles Times are not there. *Compare* ECF 35-1 at 15 (claiming "reporting" like Plaintiff's impetus for AB 2624), *with* Katie King, *A push to shield immigrant aid workers is raising 1st Amendment concerns*, L.A. Times (May 4, 2026) (no mention of reporting as impetus).

enforcing state laws," when the executive officials "possess[]" the "enforcement authority" the plaintiff seeks to "enjoin [them] from exercising." *Whole Women's Health v. Jackson*, 595 U.S. 30, 39, 43-44 (2021) (citing *Ex Parte Young*, 209 U.S. 159-60 (1908)). When executive officials do not have such enforcement authority, claims to enjoin them should be "dismissed." *Geo Group, Inc. v. Inslee*, 151 F.4th 1107, 1124 (9th Cir. 2025).

Plaintiff cannot show any injury is traceable to or redressable by the injunctions he seeks against Defendants, since Defendants do not have the challenged enforcement authority. Plaintiff thus lacks standing, and the Eleventh Amendment bars his requested relief.

**1. Secretary of State.** Plaintiff cannot show that any injury is fairly traceable to any action by the Secretary or could be redressed by a decision against the Secretary because Plaintiff has not identified any "enforcement authority" of the Secretary's as to Plaintiff. The Secretary has duties to process applications for substitute addresses and administer the Safe at Home program, *see generally* Gov't Code §§ 6218.12 – 6218.17, none of which has anything to do with Plaintiff. He therefore lacks standing, and, for the same reason, the Eleventh Amendment bars his claims against the Secretary.

At most, Plaintiff gestures at traceability if the Secretary grants a substitute address application, if Plaintiff threatens or incites imminent violence against that program participant, and if the program participant then sues him. ECF 35-1 at 17. But neither such a hypothetical injury from a hypothetical lawsuit nor any "chill Mr. Shirley suffers" thinking of such hypotheticals is "fairly traceable" to the Secretary as opposed to "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up); *see also Clapper*, 568 U.S. at 410 ("highly attenuated chain of possibilities" does not satisfy Article III). What's more, Plaintiff does not identify anything "unlawful" about the substitute address provisions themselves. *See supra* at 8. Thus, even if he had some injury somehow tracing back to someone with a substitute address, that injury would not "result[] from the application or threatened application of an *unlawful* enactment" and

so would not be "fairly traceable to such application." *See* ECF 35-1 at 17 (quoting *FEC v. Cruz*, 596 U.S. 289, 297 (2022)) (emphasis added here).[11]

**2. Attorney General.** Any injury cannot be traced to or redressed by the injunction Plaintiff seeks against the Attorney General, and the Eleventh Amendment bars that injunction, because the Attorney General does not have the only enforcement authority Plaintiff seeks to enjoin. Plaintiff only seeks to enjoin criminal enforcement by the Attorney General and only argues the Facilitating Criminal Conduct Provision provides for criminal enforcement. ECF 35 at 2; ECF 35-1 at 11, 29. But that provision does not provide for criminal enforcement, as its text, context, and history show.

First, the plain language of the Facilitating Criminal Conduct Provision does not provide for criminal enforcement. The Provision declares certain conduct to be "unlawful." Gov't Code § 6218.20(a). But under California law, "unlawful" does not, without more, mean criminal. *In re Rolando S.*, 197 Cal. App. 4th 936, 946 (2011). There is no more in the Facilitating Criminal Conduct Provision; it does not provide for criminal enforcement.

Second, as to context, the Legislature provided in other sections of AB 2624 that other conduct would be a misdemeanor. *See* Gov't Code §§ 6218.12(a)(1)(B)(i)-(ii); 6218.12(f). It also provided, in other Safe at Home laws, that certain violations of other threat or incitement provisions are punishable by fines and imprisonment. *Id.* §§ 6208.2(a); 6218.01(a). "The Legislature knows how to draft a provision" to impose criminal penalties "when it wants to" do so. *People v. Trevino*, 26 Cal.4th 237, 241 (2001). "When the Legislature uses materially different language in statutory provisions" then "the normal inference is that the Legislature intended a difference in meaning," i.e., the Facilitating Criminal Conduct Provision does not impose criminal penalties. *Id.* at 242.

Third, the Legislature considered adding criminal penalties to section 6218.20 in early versions of AB 2624 but removed them. *Compare* RJN Ex. A at 11 (chaptered bill)

[11] Plaintiff also asks for an injunction that the Secretary "take all steps within her authority to prevent or halt . . . designation, certification, implementation, or administration by the California Department of Justice." ECF 35 at 3. The California Department of Justice does not act under the Secretary's authority or direction, except insofar as the Secretary is a client, as in this case. This portion of the requested injunction is therefore also a nullity.

*with* RJN Ex. B at 15-16 (February 20, 2026 version). When the Legislature narrows the coverage of a bill, it indicates its intent not to include the earlier, broader coverage—in this case, criminal liability. *See Brennon B. v. Superior Court*, 13 Cal.5th 662, 676-77 (2022).

Plaintiff's arguments to the contrary fail.

Plaintiff argues in a footnote that Penal Code section 19.4 makes Government Code section 6218.20 a misdemeanor. ECF 35-1 at 29 n.4. That is wrong. Penal Code section 19.4 only makes an act or omission a misdemeanor when the "act or omission is declared by a statute to be a public offense." *See* 53 Ops. Cal. Atty. Gen. 309, 310-11 (1970) (what is now Penal Code § 19.4 only makes conduct criminal if statute explicitly "declare[s] the violation to be a public offense"). Section 6218.20 does not declare anything to be a public offense. *See* Pen. Code § 15 (defining public offense only to include act punishable by death, imprisonment, fine, removal from office, or disqualification to hold office).

Plaintiff argues that the Legislative Counsel's Digest and a provision of AB 2624 related to state reimbursement to local governments say that AB 2624 "creates a new crime or infraction," which must be a reference to section 6218.20. ECF 35-1 at 29. Not so. The reference is to AB 2624 making knowing false statements in an application for a substitute address "a misdemeanor." Gov't Code §§ 6218.12(a)(1)(B)(i)-(ii); 6218.12(f).

Finally, Plaintiff notes that section 6218.20 does not "preclude prosecution under any other provision of law." ECF 35-1 at 29 (citing Gov't Code § 6218.20(b)). But that statement merely clarifies that civil liability under section 6218.20 does not foreclose criminal prosecution if the same conduct violates "any other provision of law" that allows for criminal "prosecution." It does not provide for prosecution under section 6218.20.

In sum, the Attorney General does not have criminal enforcement authority under the Facilitating Criminal Conduct Provision. No injury could be traceable to that non-existent authority. No injury could be redressed by enjoining that non-existent authority.[12] And the Eleventh Amendment does not allow an injunction against non-existent authority.

[12] Plaintiff cites, without explanation, *Porter v. Martinez*, to argue his claims are redressable. 68 F.4th 429, 438 (9th Cir. 2023). There, the Ninth Circuit held plaintiff's

(continued…)

* * *

Plaintiff cannot identify any injury from or pursue the relief he seeks against either Defendant. Instead, he ultimately claims injury from the existence of AB 2624 and seeks to enjoin AB 2624 itself. *See* ECF 35-1 at 17 (complaining of "the statutory scheme and its impending implementation"). But a law's "mere existence" does not "satisf[y] the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). And "no court may lawfully enjoin" AB 2624 itself. *Jackson*, 595 U.S. at 44 (internal quotation omitted).

For all these reasons, the motion must be denied.

**II. Plaintiff Is Not Likely to Succeed on the Merits of Any of His Claims.**

**A. Plaintiff's Facial First Amendment Claim Is Not Likely to Succeed.**

To succeed on his facial First Amendment challenge, Plaintiff must show that AB 2624 "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024).

**1.** AB 2624 does not prohibit any protected speech, so Plaintiff cannot meet his burden.

First, the substitute address provisions (Gov't Code §§ 6218.12-6218.17) do not prohibit any protected speech, and Plaintiff does not even argue otherwise.

Second, AB 2624's threat or incitement provisions also do not prohibit any "protected speech." *Moody*, 603 U.S. at 744. Each threat or incitement provision only applies to posting or transacting information online with specific intent (A) to incite imminent great bodily harm or (B) to threaten. Gov't Code §§ 6218.18(a), 6218.19(a)(1), 6218.19(b)(2), 6218.19(c)(1), 6218.20(a). This pair of prohibitions maps precisely onto two categories that do not enjoy any First Amendment protection: (A) Incitement: speech "directed to inciting or producing imminent lawless action," *United States v. Rundo*, 990 F.3d 709, 713 (9th Cir. 2021) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)); and (B) Threats:

---

injury could be redressed by enjoining enforcement of a statute defendants had authority to enforce and had enforced against Plaintiff. *Id.* The case has no relevance here.

speech that a speaker "is aware that others could regard . . . as threatening violence and delivers [it] anyway," *Counterman*, 600 U.S. at 79 (internal quotation omitted).

Plaintiff makes three arguments to avoid this conclusion. All fail.

First, Plaintiff argues the General Posting Provision's specific intent requirement "modifies only the purpose for which personal information is shared" but "does not require that the speech itself constitute . . . historically unprotected speech." ECF 35-1 at 19.

This purported distinction doesn't make sense. Take a post with "specific intent to incite": posting information with the intent to incite imminent great bodily harm *is* incitement—i.e., speech "*directed to* inciting or producing imminent lawless action." *See Rundo*, 990 F.3d at 713 (emphasis added). Likewise for a post with "specific intent to threaten": posting information with the specific intent to threaten *is* a threat—i.e., speech made when "*aware that* others could regard [the post] as threatening and [posting it] anyway." *Counterman*, 600 U.S. at 79 (emphasis added, cleaned up). In other words, the General Posting Provision and AB 2624's other threat or incitement provisions *only* prohibit "historically unprotected speech." Plaintiff cites *United States v. Alvarez*, which lists speech outside First Amendment protection, including incitement and threats; it does not support Plaintiff's non-distinction. *See* 567 U.S. 709, 717-18 (2012).

Second, Plaintiff claims that the enforcement provision for the Written Demand Provision, Gov't Code § 6218.19(b)(4), does not require any showing of specific intent. ECF 35-1 at 20. As explained above, this is just wrong (and the claim is not ripe). *See supra* at 10 & n.8.[13] Furthermore, to the extent that the Court finds that Plaintiff can challenge this enforcement provision in this action; that the text and legislative history of section 6218.19(b) still leave some doubt whether the provision requires specific intent; and that without a required showing of specific intent, allowing an action under subsection

[13] Plaintiff also does not dispute that the only someone who has sworn to the Secretary that they fear for their safety, provided the Secretary supporting evidence (with criminal consequences for a false statement), and provided the person posting a description of their "reasonable fear . . . for their safety" can bring such an enforcement action. Gov't Code §§ 6218.12(a), (f); 6218.19(b)(3). Even if there was not an intent requirement—there is—that enforcement provision would narrowly only protect those who repeatedly proved fear for their safety.

(b)(4) might be unconstitutional—in that case, this Court should interpret subsection (b)(4) to require a showing of specific intent, as specified in subsection (b)(2), as a matter of constitutional avoidance. *See, e.g.*, *People v. Garcia*, 2 Cal.5th 792, 804 (2017) ("[A] statute should not be construed to violate the Constitution if any other possible construction remains available.") (internal quotations omitted).

Third, Plaintiff argues that certain unspecified prohibitions in AB 2624 violate the First Amendment because they only apply to threats and incitement against immigration support service providers and not, e.g., immigration enforcement agents. ECF 35-1 at 18-19, 20-21. This, of course, ignores that threats and incitement are not protected by the First Amendment at all. *See supra* at 15-16. And AB 2624's threat or incitement provisions neither make any reference to viewpoint nor regulate any ideas at all—they *only* prohibit threats or incitement. It is therefore irrelevant whether the prohibition applies to speech directed at some professional categories but not others. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992) ("prohibition" of unprotected speech "directed at certain persons or groups . . . facially valid if it met the requirements of the Equal Protection Clause," emphasis omitted).[14]

Since Plaintiff has not identified any provision of AB 2624 that regulates any protected speech, his discussion of tailoring (ECF 35-1 at 20-22) is misguided. AB 2624's threat or incitement provisions are narrowly tailored to prohibit *only* unprotected speech. *E.g.*, *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1106 (9th Cir. 2000).

**2.** If the Court somehow believes AB 2624 prohibits some protected speech, for Plaintiff's facial challenge, the Court first "must evaluate the full scope of the law's coverage." *Moody*, 603 U.S. at 744; *see also id.* at 724 ("What activities, by what actors, do[es] the law[] prohibit or otherwise regulate?"). "It must then decide which of the law's

[14] Likewise, since AB 2624, like any other threat or incitement prohibition, only affects *unprotected* speech, Plaintiff's cases about laws affecting *protected* speech are irrelevant. *E.g., Chiles v. Salazar*, 607 U.S. 627, 647 (2026) (speech not within any "recognized exception" to "First Amendment"); *Matal v. Tam*, 582 U.S. 218, 233-34 (2017) (speech not within exceptions that would "eliminate any First Amendment protection"); *see also Cal. Chamber of Commerce v. Bonta*, --- F.4th ---, 2026 WL 3255527, at *7 (9th Cir. Oct. 29, 2026) ("expressive activity").

applications are constitutionally permissible." *Id.* at 744. A "law's unchallenged applications . . . are properly considered lawful." *Az. Attorneys for Criminal Justice v. Mayes*, 127 F.4th 105, 112 (9th Cir. 2025). Then the Court must identify which applications are not constitutionally permissible, "and finally weigh the one against the other." *Moody*, 603 U.S. at 744.

Even if some applications of the only two provisions Plaintiff discusses, the General Posting Provision and the enforcement provision for the Written Demand Provision, unlawfully prohibited some protected speech—and they do not—such applications would not outweigh AB 2624's lawful applications. The substitute address provisions do not regulate any protected speech, and Plaintiff does not challenge them; their applications "are properly considered lawful" for purposes of this facial challenge. *Mayes*, 127 F.4th at 112. Just so all applications of the other threat or incitement provisions, which Plaintiff likewise does not address, and the applications of the General Posting or Written Demand Provisions to true threats or incitement. *See supra* at 15-16. For some sense of the balance, under the other Safe at Home laws, the "application" of the substitute address provisions means nearly 8,000 people have substitute addresses as of the last reporting. *See* RJN Ex. C at 1. By contrast, in practice, Plaintiff has not identified any instance in which the analogous threat of incitement provisions were applied, so even if some hypothetical application were not constitutionally permissible, it weighs little in the balance.

Accordingly, Plaintiff's facial First Amendment claim is not likely to succeed.

**B. Plaintiff's As-Applied First Amendment Claim Is Not Likely to Succeed.**

To prove his as-applied claim, Plaintiff must identify how AB 2624 applies to his protected speech and establish that application violates the First Amendment. *See Project Veritas v. Schmidt*, 125 F.4th 929, 939-40 (9th Cir. 2025) (en banc). He has not done so.

Plaintiff argues that applying AB 2624's threat or incitement provisions to his "reporting" would violate the First Amendment. ECF 35-1 at 23.[15] He also argues it is

[15] Though Plaintiff does not say which provisions he is addressing, he appears to be referring to the General Posting Provision, Gov't Code § 6218.19(a), and the Written Demand Provision, Gov't Code § 6218.19(b). ECF 35-1 at 23.

unconstitutional for individuals protected by AB 2624, whose information he posted, to sue him and subject him to substantial damages. ECF 35-1 at 23. These arguments again misunderstand what AB 2624 prohibits and what the First Amendment protects.

First, AB 2624 only prohibits posting with the specific intent to threaten or incite imminent great bodily harm. *See supra* at 5-6, 15. Assuming Plaintiff's "reporting" is not posted with intent to threaten or incite, AB 2624 does not apply to it.

On the other hand, if Plaintiff's "reporting" *is* posted with intent to threaten or incite, then it is not protected, whether Plaintiff is reporting or not. *See supra* at 15-16; *see generally Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (press subject to generally applicable laws). The cases Plaintiff cites, which involved publication of information *without the intent to threaten or incite imminent great bodily harm*, do not hold otherwise. *See The Florida Star v. B.J.F.*, 491 U.S. 524, 526 ("publish . . . name of the victim of a sexual offense"); *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (prior restraint on mere publication); *IMDB.com, Inc. v. Becerra*, 962 F.3d 1111, 1116 (9th Cir. 2020) ("publishing the ages and dates of birth of entertainment industry professionals").

Finally, possible damages at judgment could not change what the Supreme Court has held is unprotected speech. And in fact, the Supreme Court has been explicit that it defined the bounds of unprotected speech, including threats and incitement, mindful of the costs of litigation and large damages awards. *See Counterman*, 600 U.S. at 75-78.

Plaintiff's as-applied First Amendment claim is therefore not likely to succeed.

### C. Plaintiff's Overbreadth Claim Is Not Likely to Succeed.

Plaintiff acknowledges that his burden for a First Amendment overbreadth claim is the same as for a facial challenge announced in *Moody*: to show the statute "prohibits a substantial amount of protected speech . . . relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008); *see* ECF 35-1 at 23.

Plaintiff cannot meet his burden here either. His claim rests on the incorrect assertion that the Written Demand Provision, Gov't Code § 6218.19(b), prohibits protected speech because it does not require any *mens rea*. ECF 35-1 at 24. As discussed above, continuing

to post information after receiving a written demand is only a violation if done with the specific intent to threaten or incite imminent great bodily harm. *See supra* at 10.[16]

Plaintiff's hypothetical examples are therefore inapposite. *See* ECF 35-1 at 24-25. Each would only be a violation if done "with the specific intent" to threaten or incite imminent great bodily harm against a program participant. Gov't Code § 6218.19(b)(2).

Because Plaintiff has not identified *any* protected speech prohibited by AB 2624, his overbreadth claim is not likely to succeed.

**D. Plaintiff's Vagueness Claim Is Not Likely to Succeed.**

A statute is only vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. In particular, a civil statute regulating unprotected conduct "is vague not when it prohibits conduct according to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (internal quotation omitted); *accord Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

As an initial matter, Plaintiff brings a facial vagueness challenge, claiming that all of AB 2624 is "vague on its face." ECF 35-1 at 28. But as Plaintiff recognizes, a facial vagueness challenge is only appropriate "if the statute clearly implicates free speech rights," ECF 35-1 at 29 (quoting *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001)), and then only to the extent a statute "is directed narrowly and specifically" at protected expression, *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996). AB 2624 does not prohibit any protected speech and so does not implicate free speech rights at all. *See supra* at 5-6, 15. It is certainly not directed "narrowly and specifically" at protected speech. The facial vagueness challenge Plaintiff brings therefore fails.

---

[16] Plaintiff also claims any injunctive relief against posting with intent to threaten or incite is a prior restraint on speech. ECF 35-1 at 24. But plaintiff does identify any barrier to an injunction against unprotected speech; there is none.

Plaintiff is also wrong as to the details he challenges. Plaintiff claims that four defined terms or sets of terms, a statutory damages provision, and section 6218.19(a)'s specific intent requirement are, "[t]aken together," unconstitutionally vague. ECF 35-1 at 26-28. He is wrong about the defined terms, the damages provision, and the intent requirement, and "it is clear what" AB 2624 "as a whole prohibits," *Hill v. Colorado*, 530 U.S. 703, 733 (2000).

First, the defined terms. (1) Plaintiff claims the terms "designated immigration support services" and "designated immigration support services facility" may be so broad as to include the work or office of a "tort or divorce lawyer with immigrant clients." ECF 35-1 at 26. But the bounds of these terms are perfectly "comprehensible." *See Botosan*, 216 F.3d at 837; *Melugin v. Holmes*, 38 F.3d 1478, 1486 (9th Cir. 1994) (rejecting vagueness challenge to applying statute to protect judicial officer within general definition but not in specifically listed categories). Plaintiff does not suggest that protections for a tort or divorce lawyer would somehow "interfere[] with [anyone's] right of free speech," so no more could be required. *See Hoffman Estates*, 455 U.S. at 499.

(2) Plaintiff complains about the definition of "harassment," ECF 35-1 at 26-27, but that term is only used for what an applicant for a substitute address must have experienced. *See* Gov't Code § 6218.12(a)(1)(B), (a)(5). It is not used to define any conduct prohibited by AB 2624. And it is not vague. *See United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) (rejecting vagueness challenge to use of term "harass").[17]

(3) Plaintiff complains that the term "personal information" is vague because it includes information "capable of being associated with" a covered individual, which he contends is broader than what he calls "conventional identifying information." ECF 35-1 at 27. It is not clear what Plaintiff intends by the distinction between "identifying" and "capable of being associated with," and neither is vague. *See, e.g.*, *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 945-46 (7th Cir. 2015) (rejecting vagueness challenge to *criminal*

[17] Plaintiff cites *Ashcroft v. Am. Civil Liberties Union* here for the proposition that "Where a prosecution is a likely possibility . . . speakers may self-censor rather than risk the perils of trial." 542 U.S. 656, 670-71 (2004). That proposition is irrelevant to the definition of harassment, which does not define any conduct subject to "prosecution."

statute using term "personal information" not limited to listed examples); *accord United States v. Hastie*, 854 F.3d 1298, 1305 (11th Cir. 2017) (Pryor, J.) (same). Again, there is no argument that posting *any* information with the specific intent to incite imminent great bodily harm or threaten someone involves any "constitutionally protected rights" as might require more exacting language. *Hoffman Estates*, 455 U.S. at 499.

(4) Plaintiff wonders whether the phrase "publicly post or publicly display" includes "a journalist disclos[ing] information to a source" and "the source . . . later share[s] it on social media." ECF 35-1 at 27. Setting aside the oddity of a journalist giving information to a source rather than the other way around, "disclos[ing] information to a source" would not appear to be an instance of "publicly post[ing] or publicly display[ing]" information "*on the internet*," which is how the phrase always appears in the threat or incitement provisions. *See* Gov't Code §§ 6218.19(a)(1), 6218.19(b)(2) (emphasis added). In any case, such "speculation about possible vagueness in hypothetical situations not before the Court" cannot support Plaintiff's challenge. *Hill*, 530 U.S. at 733.[18]

Next, the statutory damages provision. (5) Plaintiff argues the statutory damages provision in section 6218.19(a) is "unclear." ECF 35-1 at 27. He does not offer any authority that any "unclarity" supports his constitutional claim. *Cf. Williams*, 553 U.S. at 304 ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."). In fact, section 6218.19(a) "clearly defines what conduct is prohibited and the potential range of [damages] that accompanies noncompliance," so the statutory damages provision is not vague. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1311-12 (11th Cir. 2009). There is also nothing "unclear" about per violation statutory damages. Plaintiff's hypotheticals about when one violation ends and another begins raise familiar questions in interpreting statutory damages, not a constitutional problem. *See, e.g.*, *Deanda v. Savings Inv., Inc.*, 267 F. App'x 675, 677 (9th Cir. 2008) (discussing number of violations, each incurring "$4,000 in statutory damages").

[18] The same goes for Plaintiff's musings about when a new violation begins. ECF 35-1 at 27; *see also infra* at 24.

Finally, the statute's intent requirement. (6) "Specific intent" is a well-worn legal term at common law and as a matter of California law. *Supra* at 9; *see Osinger*, 753 F.3d at 945 (rejecting vagueness challenge to "not esoteric or complicated terms"). It is precisely the sort of "scienter requirement," especially with legal terms of art like "incite" or "threaten," that makes "the likelihood that anyone would not understand . . . quite remote." *Hill*, 530 U.S. at 732; *see also United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006) (similar). Plaintiff again here points to the Ninth Circuit's interpretation of the federal FACE Act for what "liability may depend on," ECF 35-1 at 28, but again here, this is pure confusion: the Ninth Circuit's interpretation of a federal law has no bearing on the meaning of "specific intent" in, AB 2624, a state law; it could not make it vague. *See supra* at 9-10.

In sum, it is perfectly clear what the threat or incitement provisions "as a whole" prohibit, *Hill*, 530 U.S. at 733: posting information on the internet with the intent to incite imminent great bodily harm or to threaten. Plaintiff knows what it means to post information on the internet: he avers that he does it all the time. *E.g.*, ECF 35-2 at 2-3 (¶¶ 3, 9-11). He also knows what it means for posts to incite or threaten—he disclaims any intent that his posts do so. ECF 35-2 at 3-4 (¶¶ 19, 23). Plaintiff's vagueness claim fails.

**E. Plaintiff's Ex Post Facto Claim Is Not Likely to Succeed.**

Plaintiff finally seeks an injunction, only against the Attorney General, on his claim that the Facilitating Criminal Conduct Provision is an ex post facto law.

To prove an Ex Post Facto claim, Plaintiff must show that the law is "punitive" and applies "retroactive[ly]." *Smith v. Doe*, 538 U.S. 84, 92 (2003). To show the law is "punitive," Plaintiff must show the Legislature intended "to impose punishment." *Id.* If not, Plaintiff must show the law is "so punitive either in purpose or effect as to negate [the Legislature's] intention to deem it civil." *Id.* To show the law applies "retroactively," Plaintiff must show it imposes punishment for conduct *completed* before enactment of the law. *See United States v. Reynard*, 473 F.3d 1008, 1016 (2007).

The Facilitating Criminal Conduct Provision, Gov't Code § 6218.20, is not punitive. Plaintiff's only argument is that that provision creates a crime. As explained above, it does

not create a crime; the Legislature did not intend "to impose punishment" with it; and Plaintiff's arguments to the contrary fail. *See supra* at 13-14. Furthermore, section 6218.20 is not punitive in purpose or effect—it merely imposes civil liability for wrongdoing.

Section 6218.20 also does not apply retroactively. California "statutes are presumed to apply only prospectively." *People v. Burgos*, 16 Cal.5th 1, 7 (2024). Plaintiff has not identified anything to overcome that presumption. He notes that the phrase "intentionally communicate or otherwise make available to the general public" does not exclude information someone posted before and continues to post after AB 2624's effective date. *See* ECF 35-1 at 29-30.[19] Perhaps true, but beside the point. If Plaintiff, *after October 1, 2027*, makes information available with the requisite intent, he could be liable. Whether he also posted that information before October 1, 2027 would appear to be irrelevant.

**III. The Remaining Factors Also Weigh Against Plaintiff.**

To obtain a preliminary injunction, Plaintiff must also show imminent irreparable harm and that the balance of equities and public interest support an injunction. *Winter*, 555 U.S. at 20.

Plaintiff's whole argument here is that he has "a colorable First Amendment claim," or has "raised serious First Amendment questions." ECF 35-1 at 30-31. But that is not true. The only provisions that Plaintiff discusses prohibit threats or incitement. They only apply if someone threatens or incites imminent great bodily harm. Liability for unprotected speech does not raise any constitutional claim or question at all. *See supra* at 15-17.

Furthermore, there is no irreparable harm to Plaintiff absent his requested injunctions because they would not enjoin any enforcement authority Defendants have under AB 2624 as to Plaintiff. *See supra* at 12-14. There also is no imminent irreparable harm when AB 2624 does not go into effect for nearly a year. Assuming there were any legitimate question about the constitutionality of any part of AB 2624 (there is not), there is ample time to flesh out arguments and no need to decide immediately on limited briefing.

---

[19] Plaintiff refers to a definition of "publicly post," Gov't Code § 6218.11(i), though section 6218.20 does not use that phrase. The point is the same in any case.

As to the equities and the public interest, the Court must "consider the effect . . . of withholding the requested relief" while "pay[ing] particular regard for the public consequences." *Winter*, 555 U.S. at 24. As noted, withholding the requested relief would not change anything for Plaintiff, but it would ensure AB 2624's important protections—for victims of "harassment, threats, and intimidation," Gov't Code § 6218.10(a), against further threats or incitement—could eventually go into effect. The interests of such victims and the public interest in preventing threats or incitement weigh against any relief.

## IV. Any Injunction Cannot Extend Beyond Plaintiff or the Challenged Provisions.

The Supreme Court in *Trump v. CASA, Inc.* was very clear that, as a matter of the Judiciary Act, an injunction "grant[ing] relief to nonparties" "falls outside the bounds of a federal court's equitable authority." 606 U.S. 831, 844, 847 (2025). Plaintiff suggests the result should be different when a state law rather than a federal law is challenged, ECF 35-1 at 32, but that simply ignores that *CASA* is about "the bounds of a federal *court's* equitable authority" to issue relief beyond the parties, not about challenges to federal laws.

Any relief must also be "tailored to remedy the specific harm" for which Plaintiff seeks an injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009); *see id.* ("An overbroad injunction is an abuse of discretion.") (cleaned up). Plaintiff does not make any argument that the substitute address provisions, Home Address Provision, or the Solicitation Provision, Gov't Code §§ 6218.12-6218.18, 6218.19(c), have any legal infirmities or by themselves work any harm on him. He also does not seek an injunction against any civil enforcement by the Attorney General. No injunction should extend to either those unchallenged provisions or civil enforcement by the Attorney General. And as described above, Plaintiff's As-Applied, Vagueness, and Ex Post Facto claims only address certain provisions or Plaintiff, so they could not support a broader injunction.

## CONCLUSION

For the foregoing reasons, Plaintiff's Preliminary Injunction Motion should be denied.

Dated: November 4, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN A. LISKA
Deputy Attorney General

*/s/ Derin McLeod*

DERIN MCLEOD
Deputy Attorney General
*Attorneys for Defendants Rob Bonta, in his official capacity as California Attorney General; and Shirley N. Weber, in her official capacity as California Secretary of State*

SA2026304750/45456658

# CERTIFICATE OF SERVICE

Case Name: ***Shirley, Nicholas v. Robert Bonta, et al.***
Case No. **2:26-cv-03000-DJC-AC**

I hereby certify that on November 4, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
- **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION with Exhibits A to C**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 4, 2026, at San Francisco, California.

| G. Pang | |
|---|---|
| Declarant | Signature |

SA2026304750/45454305.docx