ROB BONTA
Attorney General of California
ANYA M. BINSACCA, State Bar No. 189613
Supervising Deputy Attorney General
KRISTIN A. LISKA, State Bar No. 315994
DERIN MCLEOD, State Bar No. 345256
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 229-0123
Fax: (415) 703-5480
E-mail: Derin.McLeod@doj.ca.gov
*Attorneys for Defendants Rob Bonta, in his official capacity as California Attorney General; and Shirley N. Weber, in her official capacity as California Secretary of State*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **NICHOLAS SHIRLEY,**<br><br>Plaintiff,<br><br>**v.**<br><br>**ROBERT BONTA, in his official capacity as California Attorney General; and SHIRLEY N. WEBER, in her official capacity as California Secretary of State,**<br><br>Defendants. | Case No. 2:26-cv-03000-DJC-AC<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: December 17, 2026<br>Time: 1:30 p.m.<br>Dept: 7, 14th floor<br>Judge: Hon. Daniel J. Calabretta<br>Action Filed: September 4, 2026 |

Under Federal Rule of Evidence 201, Defendants Rob Bonta, in his official capacity as Attorney General for the State of California, and Shirley N. Weber, in her official capacity as Secretary of State for the State of California (together, "Defendants"), respectfully request that the Court take judicial notice as follows of the documents attached hereto. This Request is made in support of Defendants' Opposition to Plaintiff Nick Shirley's Motion for Preliminary Injunction.

The Court may take judicial notice of any fact that is "not subject to reasonable dispute" in that it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court must take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(c)(2).

**Exhibit A** is a true and correct copy of California Assembly Bill 2624, 2026 Cal. Stat. c. 117 ("AB 2624"), available on the California Legislature's website at https://leginfo.legislature.ca.gov/faces/ billNavClient.xhtml?bill_id=202520260AB2624. Though the chaptered law is properly considered even without taking judicial notice, the bill is attached here in full for ease of reference.

**Exhibit B** is a true and correct copy of the version of AB 2624 introduced on February 20, 2026, available on the California Legislature's website at https://leginfo.legislature.ca.gov/faces/ billNavClient.xhtml?bill_id=202520260AB2624. The Court may take judicial notice of this draft legislation. *E.g.*, *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012) (granting request for judicial notice of legislative history materials); *Oddei v. Optum*, No. 2:21-cv-03974-SB-MRW, 2026 WL 4734642, at *1 n.2 (C.D. Cal. Aug. 6, 2021) (granting request for judicial notice of bill drafts).

**Exhibit C** is a true and correct copy of the 2025 Annual Legislative Report for the Secretary of State's Safe at Home program produced in compliance with California Government Code sections 6210 and 6216, available on the Secretary of State's

website at https://www.sos.ca.gov/administration/agency-reports/safe-home-agency-reports. Defendants request judicial notice of the number of individuals who have substitute addresses as of the date of the Report. Ex. C at 1. The Court may take judicial notice of this fact in a "public record[]" which "contain[s] facts that are not subject to reasonable dispute" and that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Daimler Truck N. Am. LLC v. Cal. Air Resources Bd.*, No. 2:25-cv-02255-DC-AC, 2025 WL 3049944, at *12 n.18 (E.D. Cal. Oct. 31, 2025).

Dated: November 4, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
KRISTIN A. LISKA
Deputy Attorney General

*/s/ Derin McLeod*

DERIN MCLEOD
Deputy Attorney General
*Attorneys for Defendants Rob Bonta, in his official capacity as California Attorney General; and Shirley N. Weber, in her official capacity as California Secretary of State*

# EXHIBIT A

# Assembly Bill No. 2624

## CHAPTER 117

An act to add Chapter 3.26 (commencing with Section 6218.10) to Division 7 of Title 1 of the Government Code, relating to privacy.

[Approved by Governor August 22, 2026. Filed with Secretary of State August 22, 2026.]

LEGISLATIVE COUNSEL'S DIGEST

AB 2624, Bonta. Privacy for immigration support services providers.

Existing law authorizes designated health care services providers, employees, volunteers, and patients, and individuals who face threats of violence or violence or harassment from the public because of their affiliation with a designated health care services facility, to complete an application to be approved by the Secretary of State for the purposes of enabling state and local agencies to respond to requests for public records without disclosing a program participant's residence address contained in any public record and otherwise provide for confidentiality of identity for that person, subject to specified conditions. Existing law defines "designated health care services" to mean gender-affirming health care services or reproductive health care services. Under existing law, any person who makes a false statement in an application is guilty of a misdemeanor.

Existing law prohibits a person, business, or association from knowingly publicly posting or publicly displaying, disclosing, or distributing on internet websites or on social media, the personal information or image of any designated health care services patient, provider, or assistant, or other individuals residing at the same home address, with the intent to incite a third person to cause imminent great bodily harm to the person identified in the posting or display, or to a coresident of that person, as specified, or to threaten the person identified in the posting or display, or a coresident of that person, as specified. Existing law additionally prohibits a person, business, or association from soliciting, selling, or trading on the internet or social media the personal information or image of a designated health care services patient, provider, or assistant with the intent described above. Existing law establishes a cause of action for injunctive or declarative relief for a violation of these prohibitions.

Existing law prohibits a person from posting on the internet or social media, with the intent that another person imminently use that information to commit a crime involving violence or a threat of violence against a designated health care services patient, provider, or assistant, or other individuals residing at the same home address, the personal information or image of a reproductive health care services patient, provider, or assistant, or other individuals residing at the same home address.

This bill would, commencing October 1, 2027, similarly establish an address confidentiality program for a designated immigration support services provider, employee, or volunteer, as defined, who faces threats of violence or harassment from the public because of their affiliation with a designated immigration support services facility. This bill would additionally prohibit a person, business, or association from soliciting, selling, or trading on the internet the personal information or image of a designated immigration support services provider, employee, or volunteer with the intent described above. The bill would also, among other things, prohibit a person from posting on the internet the personal information or image of a designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address, with the specific intent that another person imminently use that information to commit a crime involving violence or a threat of violence that is likely to occur against such an individual. The bill would define various terms for these purposes. By imposing new duties on local agencies and creating new crimes, this bill would create a state-mandated local program.

Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that with regard to certain mandates no reimbursement is required by this act for a specified reason.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

*The people of the State of California do enact as follows:*

SECTION 1. Chapter 3.26 (commencing with Section 6218.10) is added to Division 7 of Title 1 of the Government Code, to read:

## Chapter 3.26. Privacy for Immigration Service Providers

6218.10. The Legislature finds and declares the following:

(a) Persons providing support services to the immigrant community have been subject to harassment, threats, and intimidation for their work.

(b) Persons working in the organizations that provide immigration support services have faced doxxing, courthouse targeting, online harassment, anti-immigrant vigilante threats, and coordinated campaigns and death threats. These acts have risen to alarming levels in 2025 and will continue

due to the current federal administration's anti-immigration attitude and policies.

6218.11. For purposes of this chapter, all of the following definitions apply:

(a) "Address" means a residential street address, school address, or work address of an individual, as specified on the individual's application to be a program participant under this chapter.

(b) "Designated immigration support services" means services provided to the immigrant population, including, but not limited to, legal representation, legal assistance, advocacy, case management, humanitarian relief, immigration resources, referrals, translation services, counseling services, and health care.

(c) "Designated immigration support services provider, employee, or volunteer" means a person who provides, assists in providing, or receives immigration support services at a designated immigration support services facility.

(d) "Designated immigration support services facility" means a facility where immigration support services are provided, including, but not limited to, nonprofit organizations offices, Department Of Justice-recognized entities, community legal clinics, law offices, accredited representative sites that provide immigration legal services, and health care facilities.

(e) "Domicile" means a place of habitation, as defined in Section 349 of the Elections Code.

(f) "Harassment" is repeated, unreasonable, and unwelcome conduct directed at a targeted individual that would cause a reasonable person to fear for their own safety or the safety of a household member. Harassing conduct may include, but is not limited to, following, stalking, telephone calls, or written correspondence.

(g) "Image" includes, but is not limited to, a photograph, video footage, sketch, or computer-generated image that provides a means to visually identify the person depicted.

(h) "Personal information" means information that identifies, relates to, describes, or is capable of being associated with a designated immigration support services provider, employee, or volunteer, including, but not limited to, their name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, license plate number, employment, employment history, and financial information.

(i) "Publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public.

6218.12. (a) An adult person, a parent or guardian acting on behalf of a minor, or a guardian acting on behalf of an incapacitated person, who is domiciled in California, may apply to the Secretary of State to have an address designated by the Secretary of State to serve as the person's address or the address of the minor or incapacitated person. An application shall be completed in person at a community-based assistance program designated by the Secretary of State. The application process shall include a requirement

that the applicant shall meet with a counselor and receive orientation information about the program. The Secretary of State shall approve an application if it is filed in the manner and on the form prescribed by the Secretary of State and if it contains all of the following:

(1) If the applicant alleges that the basis for the application is that the applicant, or the minor or incapacitated person on whose behalf the application is made, is a designated immigration support services provider, employee, or volunteer who is fearful for their safety or the safety of their family because of their affiliation with a designated immigration support services facility, the application shall be accompanied by all of the following:

(A) Documentation showing that the individual is to commence employment or is currently employed as a provider or employee at a designated immigration support services facility or is volunteering at a designated immigration support services facility.

(B) One of the following:

(i) A certified statement signed by a person authorized by the designated immigration support services facility stating that the facility or any of its providers, employees, or volunteers is or was the target of threats, harassment, or acts of violence or harassment within one year of the date of the application. A person who willfully certifies as true any material matter pursuant to this section that the person knows to be false is guilty of a misdemeanor.

(ii) A certified statement signed by the provider or employee of, or volunteer for, the designated immigration support services facility stating that they have been the target of threats, harassment, or acts of violence within one year of the date of the application because of their association with the designated immigration support services facility. A person who willfully certifies as true any material matter pursuant to this section that the person knows to be false is guilty of a misdemeanor.

(iii) A workplace violence restraining order described in Section 527.8 of the Code of Civil Procedure, issued after a noticed hearing, or a civil restraining order described in Section 527.6 of the Code of Civil Procedure, issued after a noticed hearing, protecting the applicant or the minor or incapacitated person on whose behalf the application is made. The order must be based upon threats or acts of violence to the applicant or the minor or incapacitated person on whose behalf the application is made and connected with the designated immigration support services facility.

(C) A sworn statement that the applicant fears for their safety or the safety of their family, or the safety of the minor or incapacitated person on whose behalf the application is made due to their affiliation with the designated immigration support services facility authorized to provide the declaration described in subparagraph (B).

(2) If the applicant alleges that the basis for the application is that the applicant is a designated immigration support services facility volunteer, the application shall, in addition to the documents specified in paragraph (1), be accompanied by documentation by the designated immigration

support services facility showing the length of time the volunteer has committed to working at the facility.

(3) A designation of the Secretary of State as agent for purposes of service of process and for the purpose of receipt of mail.

(A) Service on the Secretary of State of any summons, writ, notice, demand, or process shall be made by delivering to the address confidentiality program personnel of the office of the Secretary of State two copies of the summons, writ, notice, demand, or process.

(B) If a summons, writ, notice, demand, or process is served on the Secretary of State, the Secretary of State shall immediately cause a copy to be forwarded to the program participant at the address shown on the records of the address confidentiality program so that the summons, writ, notice, demand, or process is received by the program participant within three days of the Secretary of State having received it.

(C) The Secretary of State shall keep a record of all summonses, writs, notices, demands, and processes served upon the Secretary of State under this section and shall record the time of that service and the Secretary of State's action.

(D) The office of the Secretary of State and any agent or person employed by the Secretary of State shall be held harmless from any liability in any action brought by any person injured or harmed as a result of the handling of first-class mail on behalf of program participants.

(4) The mailing address where the applicant can be contacted by the Secretary of State, and the telephone number or numbers where the applicant can be called by the Secretary of State.

(5) The address or addresses that the applicant requests not be disclosed for the reason that disclosure will increase the risk of threats or acts of violence or harassment toward the applicant.

(6) The signature of the applicant and of any individual or representative of any office designated in writing who assisted in the preparation of the application, and the date on which the applicant signed the application.

(b) Applications shall be filed with the office of the Secretary of State.

(c) Submitted applications shall be accompanied by payment of a fee to be determined by the Secretary of State. This fee shall not exceed the reasonable costs of enrolling in the program. In addition, annual fees may also be assessed by the Secretary of State to defray the reasonable costs of maintaining this program. Annual fees assessed by the Secretary of State shall also be used to reimburse the General Fund for any amounts expended from that fund for the purposes of this chapter.

(d) The Address Confidentiality for Immigration Support Services Fund is hereby created in the General Fund. Upon appropriation by the Legislature, moneys in the fund are available for the administration of the program established pursuant to this chapter.

(e) Upon filing a properly completed application, the Secretary of State shall certify the applicant as a program participant. Applicants, with the exception of designated immigration support services facilities volunteers, shall be certified for four years following the date of filing unless the

certification is withdrawn, or invalidated before that date. Designated immigration support services facility volunteers shall be certified until six months from the last date of volunteering with the facility. The Secretary of State shall by rule establish a renewal procedure. A minor program participant, who reaches 18 years of age, may renew as an adult following the renewal procedures established by the Secretary of State.

(f) A person who knowingly and falsely attests in an application that disclosure of the applicant's address would endanger the applicant's safety or the safety of the applicant's family or the minor or incapacitated person on whose behalf the application is made, or who knowingly provides false or incorrect information upon making an application, is guilty of a misdemeanor. A notice shall be printed in bold type and in a conspicuous location on the face of the application informing the applicant of the penalties under this subdivision.

6218.13. (a) The Secretary of State shall cancel certification of a program participant who fails to disclose a change in employment status, or termination as a provider or volunteer.

(b) Upon termination of a program participant's certification, the Secretary of State shall retain records as follows:

(1) Except as provided in subdivision (g) of Section 6218.14 or subdivision (a) of Section 6218.17, any records or documents pertaining to a program participant shall be held confidential.

(2) All records or documents pertaining to a program participant shall be retained for a period of three years after termination of certification and then destroyed without further notice.

6218.14. (a) A program participant may withdraw from program participation by submitting to the Secretary of State written notification of withdrawal and their current identification card. Certification shall be terminated on the date of receipt of this notification.

(b) The Secretary of State may terminate a program participant's certification and invalidate the participant's authorization card for any of the following reasons:

(1) The program participant's certification term has expired and certification renewal has not been completed.

(2) The Secretary of State has determined that false information was used in the application process to qualify as a program participant or that participation in the program is being used as a subterfuge to avoid detection of illegal or criminal activity or apprehension by law enforcement.

(3) The program participant no longer resides at the residential address provided to the Secretary of State, and has not provided at least seven days' prior notice in writing of a change in address.

(4) A service of process document or mail forwarded to the program participant by the Secretary of State is returned as nondeliverable.

(5) The program participant who is a provider, employee, or volunteer fails to disclose a change in employment, or termination as volunteer or provider.

(6) The program participant, who reaches 18 years of age during their certification term, has not renewed their certification within 60 days of them reaching 18 years of age.

(c) The Secretary of State may refuse to renew a program participant's certification if the adult program participant or the parent or guardian acting on behalf of a minor or incapacitated person has abandoned their domicile in this state.

(d) If termination is based on any of the reasons under subdivision (b) or (c), the Secretary of State shall send written notification of the intended termination to the program participant. The program participant shall have 30 business days in which to appeal the termination under procedures developed by the Secretary of State.

(e) The Secretary of State shall notify in writing the county elections official and authorized personnel of the appropriate county clerk's office and the county recording office of the program participant's certification withdrawal, invalidation, expiration, or termination.

(f) Upon receipt of this termination notification, authorized personnel shall transmit to the Secretary of State all appropriate administrative records pertaining to the program participant and the record transmitting agency is no longer responsible for maintaining the confidentiality of a terminated program participant's record.

(g) Following termination of program participant certification as a result of paragraph (2) of subdivision (b), the Secretary of State may disclose information contained in the participant's application.

6218.15. (a) A program participant may request that state and local agencies use the address designated by the Secretary of State as the participant's address. When creating a public record, state and local agencies shall accept the address designated by the Secretary of State as a program participant's substitute address, unless the Secretary of State has determined both of the following:

(1) The agency has a bona fide statutory or administrative requirement for the use of the address that would otherwise be confidential under this chapter.

(2) This address will be used only for those statutory and administrative purposes and shall not be publicly disseminated.

(b) A program participant may request that state and local agencies use the address designated by the Secretary of State as the participant's address. When modifying or maintaining a public record, excluding the record of any birth, fetal death, death, or marriage registered under Division 102 (commencing with Section 102100) of the Health and Safety Code, state and local agencies shall accept the address designated by the Secretary of State as a program participant's substitute address, unless the Secretary of State has determined both of the following:

(1) The agency has a bona fide statutory or administrative requirement for the use of the address that would otherwise be confidential under this chapter.

(2) This address will be used only for those statutory and administrative purposes and shall not be publicly disseminated.

(c) A program participant may use the address designated by the Secretary of State as the participant's work address.

(d) The office of the Secretary of State shall forward all first-class mail and all mail sent by a governmental agency to the appropriate program participants. The office of the Secretary of State may, in its discretion, refuse to handle or forward packages regardless of size or type of mailing.

(e) Notwithstanding subdivision (a), program participants shall comply with the provisions specified in subdivision (d) of Section 1808.21 of the Vehicle Code if requesting suppression of the records maintained by the Department of Motor Vehicles. Program participants shall also comply with all other provisions of the Vehicle Code relating to providing current address information to the department.

6218.16. A program participant who is otherwise qualified to vote may seek to register and vote in a confidential manner pursuant to Section 2166.5 of the Elections Code.

6218.17. (a) The Secretary of State may not make a program participant's address, other than the address designated by the Secretary of State, available for inspection or copying, except under any of the following circumstances:

(1) If requested by a law enforcement agency, to the law enforcement agency.

(2) If directed by a court order, to a person identified in the order.

(3) If certification has been terminated pursuant to paragraph (2) of subdivision (b) of Section 6218.14.

(b) The Secretary of State shall designate state and local agencies and nonprofit agencies that may assist persons applying to be program participants. Any assistance and counseling rendered by the office of the Secretary of State or its designees to applicants shall in no way be construed as legal advice.

(c) The Secretary of State may adopt rules to facilitate the administration of this chapter by state and local agencies. The Secretary of State shall administer this chapter together with and in the same manner as the address confidentiality programs in Chapter 3.1 (commencing with Section 6205) and Chapter 3.2 (commencing with Section 6215).

(d) The Secretary of State shall provide each program participant a notice in a clear and conspicuous font that contains all of the following information:

(1) The program participant is authorized by law to request to use the participant's address designated by the Secretary of State on real property deeds, change of ownership forms, and deeds of trust when purchasing or selling a home.

(2) The program participant may create a revocable living trust and place their real property into the trust to protect their residential street address from disclosure in real property transactions.

(3) The program participant may obtain a change of their legal name to protect their anonymity.

(4) A list of contact information for entities that the program participant may contact to receive information on, or receive legal services for, the creation of a trust to hold real property or obtaining a name change, including county bar associations, legal aid societies, state and local agencies, or other nonprofit organizations that may be able to assist program participants.

(e) (1) The Secretary of State shall submit to the Legislature, no later than January 10 of each year, a report that includes the total number of applications received for the program established by this chapter. The report shall disclose the number of program participants within each county and shall also describe any allegations of misuse relating to election purposes.

(2) The Secretary of State shall commence accepting applications under this program on October 1, 2027.

(3) The Secretary of State shall submit to the Legislature by January 1, 2030, a report that includes the total number of pieces of mail forwarded to program participants, the number of program participants during the program's duration, the average length of time a participant remains in the program, and the targeted code changes needed to improve the program's efficiency and cost-effectiveness.

6218.18. (a) A person, business, or association shall not knowingly post the home address of a program participant, or of the program participant's residing spouse or child, on the internet knowing that person is a program participant or a program participant's residing spouse or child and specifically intending to incite a third person to cause imminent great bodily harm to such an individual that is likely to occur imminently or threatening to cause imminent great bodily harm to such an individual.

(b) This section shall not apply to an interactive computer service or access software provider, as defined in Section 230(f) of Title 47 of the United States Code, unless the service or provider specifically intends to incite a third person to cause imminent great bodily harm that is likely to occur imminently to a program participant or a program participant's residing spouse or child or threatens to cause imminent great bodily harm to such an individual.

6218.19. (a) (1) A person, business, or association shall not knowingly publicly post or publicly display, disclose, or distribute on the internet the personal information or image of any designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address, with the specific intent to do either of the following:

(A) Incite a third person to cause imminent great bodily harm to the designated immigration support services provider, employee, or volunteer identified in the posting or display, or to a coresident of that person, where the third person is likely to commit this imminent harm.

(B) Threaten the designated immigration support services provider, employee, or volunteer identified in the posting or display, or a coresident of that person, in a manner that places the person identified or the coresident in objectively reasonable fear for their personal safety.

(2) A designated immigration support services provider, employee, or volunteer whose personal information or image is made public as a result

of a violation of paragraph (1), or any individual entity or organization authorized to act on their behalf, may do either or both of the following:

(A) Bring an action seeking injunctive or declarative relief in any court of competent jurisdiction. If a jury or court finds that a violation has occurred, it may grant injunctive or declarative relief and shall award the successful plaintiff court costs and reasonable attorney's fees.

(B) Bring an action for money damages in any court of competent jurisdiction. In addition to any other legal rights or remedies, if a jury or court finds that a violation has occurred, it shall award damages to that individual in an amount up to a maximum of three times the actual damages, but in no case less than four thousand dollars ($4,000).

(b) (1) A program participant, or an individual, entity, or organization authorized to act on their behalf, may make a written demand to a person, business, or association to not publicly post or publicly display, disclose, or distribute on the internet the personal information or image of the program participant.

(2) A person, business, or association in receipt of a written demand pursuant to paragraph (1) shall not publicly post or publicly display, disclose, or distribute on the internet the personal information or image of the program participant with the specific intent to do either of the following:

(A) Incite a third person to cause imminent great bodily harm to the program participant or their coresident where the third person is likely to commit this imminent harm.

(B) Threaten the program participant or their coresident in a manner that places the program participant or their coresident in objectively reasonable fear for their personal safety.

(3) A written demand made pursuant to paragraph (1) shall include a statement declaring that the program participant is subject to the protection of this chapter and describing the reasonable fear that the program participant or their coresident has for their safety. A demand made under paragraph (1) shall be effective for four years, regardless of whether the program participant's affiliation with a designated immigration support services facility expires prior to the end of the four-year period.

(4) A program participant whose personal information or image is made public as a result of a failure to honor a demand made pursuant to paragraph (1), or any individual, entity, or organization authorized to act on their behalf, may bring an action seeking injunctive or declarative relief in any court of competent jurisdiction. If a jury or court finds that a violation has occurred, it may grant injunctive or declarative relief and shall award the successful plaintiff court costs and reasonable attorney's fees.

(c) (1) A person, business, or association shall not solicit, sell, or trade on the internet the personal information or image of a designated immigration support services provider, employee, or volunteer with the specific intent to do either of the following:

(A) Incite a third person to cause imminent great bodily harm to such an individual, or to a coresident of such an individual, where the third person is likely to commit this imminent harm.

(B) Threaten such an individual or a coresident of such an individual, in a manner that places the individual in objectively reasonable fear for their personal safety.

(2) A designated immigration support services provider, employee, or volunteer whose personal information or image is solicited, sold, or traded in violation of paragraph (1), or any individual, entity, or organization authorized to act on their behalf, may bring an action in any court of competent jurisdiction. In addition to any other legal rights and remedies, if a jury or court finds that a violation has occurred, it shall award damages to that individual in an amount up to a maximum of three times the actual damages, but in no case less than four thousand dollars ($4,000).

(d) An interactive computer service or access software provider, as defined in Section 230(f) of Title 47 of the United States Code, shall not be liable under this section unless the service or provider specifically intends to incite a third person to cause imminent bodily harm or threatens to cause bodily harm to a designated immigration support services provider, employee, or volunteer, or any person residing at the same home address.

(e) This section does not preclude punishment under any other provision of law.

6218.20. (a) It is unlawful for a person to post on the internet, with the specific intent that another person imminently use that information to commit a crime involving violence or a threat of violence that is likely to occur against a designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address, the personal information or image of a designated immigration support services provider, employee, or volunteer, or other individuals residing at the same home address.

(b) Nothing in this section shall preclude prosecution under any other provision of law.

6218.21. This chapter shall become operative on October 1, 2027.

SEC. 2. The Legislature finds and declares that this act imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

Individuals providing support services to the immigrant community have become increasingly subjected to violent threats, harassment, and intimidation. In order to prevent acts of violence from being committed against those individuals, it is necessary for the Legislature to ensure that the home addresses of these individuals are kept confidential.

SEC. 3. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution for certain costs that may be incurred by a local agency or school district because, in that regard, this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section

17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

However, if the Commission on State Mandates determines that this act contains other costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

O

# EXHIBIT B

CALIFORNIA LEGISLATURE—2025–26 REGULAR SESSION

# ASSEMBLY BILL No. 2624

**Introduced by Assembly Member Bonta**
**(Coauthor: Assembly Member Elhawary)**
(Coauthors: Senators Durazo and Pérez)

February 20, 2026

An act to add Chapter 3.26 (commencing with Section 6218.10) to Division 7 of Title 1 of the Government Code, relating to privacy.

LEGISLATIVE COUNSEL'S DIGEST

AB 2624, as introduced, Bonta. Privacy for immigration support services providers.

Existing law authorizes designated health care services providers, employees, volunteers, and patients, and individuals who face threats of violence or violence or harassment from the public because of their affiliation with a designated health care services facility, to complete an application to be approved by the Secretary of State for the purposes of enabling state and local agencies to respond to requests for public records without disclosing a program participant's residence address contained in any public record and otherwise provide for confidentiality of identity for that person, subject to specified conditions. Existing law defines "designated health care services" to mean gender-affirming health care services or reproductive health care services. Under existing law, any person who makes a false statement in an application is guilty of a misdemeanor.

Existing law prohibits a person, business, or association from knowingly publicly posting or publicly displaying, disclosing, or distributing on internet websites or on social media, the personal information or image of any designated health care services patient,

provider, or assistant, or other individuals residing at the same home address, with the intent to incite a third person to cause imminent great bodily harm to the person identified in the posting or display, or to a coresident of that person, as specified, or to threaten the person identified in the posting or display, or a coresident of that person, as specified. Existing law additionally prohibits a person, business, or association from soliciting, selling, or trading on the internet or social media the personal information or image of a designated health care services patient, provider, or assistant with the intent described above. Existing law establishes a cause of action for injunctive or declarative relief for a violation of these prohibitions.

Existing law prohibits a person from posting on the internet or social media, with the intent that another person imminently use that information to commit a crime involving violence or a threat of violence against a designated health care services patient, provider, or assistant, or other individuals residing at the same home address, the personal information or image of a reproductive health care services patient, provider, or assistant, or other individuals residing at the same home address. Existing law makes a violation of this prohibition punishable by a fine of up to $10,000 per violation, imprisonment, as specified, or by both that fine and imprisonment.

This bill would similarly establish an address confidentiality program for a designated immigration support services provider, employee, or volunteer, as defined, who faces threats of violence or harassment from the public because of their affiliation with a designated immigration support services facility. This bill would additionally prohibit a person, business, or association from soliciting, selling, or trading on the internet or social media the personal information or image of a designated immigration support services provider, employee, volunteer, or patient with the intent described above. The bill would also prohibit a person from posting on the internet or social media, as described above, the personal information or image of a designated immigration support services provider, employee, volunteer, or patient, or other individuals residing at the same home address. The bill would define various terms for these purposes. By imposing new duties on local agencies and creating new crimes, this bill would create a state-mandated local program.

Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the

interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that with regard to certain mandates no reimbursement is required by this act for a specified reason.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

SECTION 1. Chapter 3.26 (commencing with Section 6218.10) is added to Division 7 of Title 1 of the Government Code, to read:

### Chapter 3.26. Privacy for Immigration Service Providers

6218.10. The Legislature finds and declares the following:

(a) Persons providing support services to the immigrant community have been subject to harassment, threats, and intimidation for their work.

(b) Persons working in the organizations that provide immigration support services have faced doxxing, courthouse targeting, online harassment, anti-immigrant vigilante threats, and coordinated campaigns and death threats. These acts have risen to alarming levels in 2025 and will continue due to the current federal administration's anti-immigration attitude and policies.

6218.11. For purposes of this chapter, all of the following definitions apply:

(a) "Address" means a residential street address, school address, or work address of an individual, as specified on the individual's application to be a program participant under this chapter.

(b) "Designated immigration support services" means services provided to the immigrant population, including, but not limited to, legal representation, legal assistance, advocacy, case

management, humanitarian relief, immigration resources, referrals, translation services, counseling services, and health care.

(c) "Designated immigration support services provider, employee, volunteer, or client" means a person who provides, assists in providing, or receives immigration support services at a designated immigration support services facility.

(d) "Designated immigration support services facility" means a facility where immigration support services are provided, including, but not limited to, nonprofit organizations offices, Department Of Justice-recognized entities, community legal clinics, law offices, accredited representative sites that provide immigration legal services, and health care facilities.

(e) "Domicile" means a place of habitation, as defined in Section 349 of the Elections Code.

(f) "Harassment" is repeated, unreasonable, and unwelcome conduct directed at a targeted individual that would cause a reasonable person to fear for their own safety or the safety of a household member. Harassing conduct may include, but is not limited to, following, stalking, telephone calls, or written correspondence.

(g) "Image" includes, but is not limited to, a photograph, video footage, sketch, or computer-generated image that provides a means to visually identify the person depicted.

(h) "Personal information" means information that identifies, relates to, describes, or is capable of being associated with a reproductive health care services patient, provider, or assistant, including, but not limited to, their name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, license plate number, employment, employment history, and financial information.

(i) "Public entity" means a federal, state, or local governmental agency.

(j) "Publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public.

(k) "Social media" means an electronic service or account, or electronic content, including, but not limited to, videos or still photographs, blogs, video blogs, podcasts, instant and text messages, email, online services or accounts, or internet website profiles or locations.

(*l*) "Work for a public entity" means work performed by an employee of a public entity, or work performed for a public entity by a person pursuant to a contract with the public entity.

6218.12. (a) An adult person, a parent or guardian acting on behalf of a minor, or a guardian acting on behalf of an incapacitated person, who is domiciled in California, may apply to the Secretary of State to have an address designated by the Secretary of State to serve as the person's address or the address of the minor or incapacitated person. An application shall be completed in person at a community-based assistance program designated by the Secretary of State. The application process shall include a requirement that the applicant shall meet with a counselor and receive orientation information about the program. The Secretary of State shall approve an application if it is filed in the manner and on the form prescribed by the Secretary of State and if it contains all of the following:

(1) If the applicant alleges that the basis for the application is that the applicant, or the minor or incapacitated person on whose behalf the application is made, is a designated immigration support services provider, employee, volunteer, or client, who is fearful for their safety or the safety of their family because of their affiliation with a designated immigration support services facility, the application shall be accompanied by all of the following:

(A) Documentation showing that the individual is to commence employment or is currently employed as a provider or employee at a designated immigration support services facility, is volunteering at a designated immigration support services facility, or is receiving assistance as a client at a designated immigration support services facility.

(B) One of the following:

(i) A certified statement signed by a person authorized by the designated immigration support services facility stating that the facility or any of its providers, employees, volunteers, or patients is or was the target of threats, harassment, or acts of violence or harassment within one year of the date of the application. A person who willfully certifies as true any material matter pursuant to this section that the person knows to be false is guilty of a misdemeanor.

(ii) A certified statement signed by the provider, employee, or client of, or volunteer for, the designated immigration support

services facility stating that they have been the target of threats, harassment, or acts of violence within one year of the date of the application because of their association with the designated immigration support services facility. A person who willfully certifies as true any material matter pursuant to this section that the person knows to be false is guilty of a misdemeanor.

(iii) A workplace violence restraining order described in Section 527.8 of the Code of Civil Procedure, issued after a noticed hearing, or a civil restraining order described in Section 527.6 of the Code of Civil Procedure, issued after a noticed hearing, protecting the applicant or the minor or incapacitated person on whose behalf the application is made. The order must be based upon threats or acts of violence to the applicant or the minor or incapacitated person on whose behalf the application is made and connected with the designated immigration support services facility.

(C) A sworn statement that the applicant fears for their safety or the safety of their family, or the safety of the minor or incapacitated person on whose behalf the application is made due to their affiliation with the designated immigration support services facility authorized to provide the declaration described in subparagraph (B).

(2) If the applicant alleges that the basis for the application is that the applicant is a designated immigration support services facility volunteer, the application shall, in addition to the documents specified in paragraph (1), be accompanied by documentation by the designated immigration support services facility showing the length of time the volunteer has committed to working at the facility.

(3) If the applicant alleges that the basis of the application is that the applicant, or the minor or incapacitated person on whose behalf the application is made, is a person who is or has been the target of threats or acts of violence because the applicant is obtaining or seeking to obtain services at a designated immigration support services facility within one year of the date of the application, the application shall be accompanied by both of the following:

(A) A sworn statement that the applicant has good reason to fear for their safety or the safety of their family.

(B) Any police, court, or other governmental agency records or files that show any complaints of the alleged threats or acts of violence.

(4) A designation of the Secretary of State as agent for purposes of service of process and for the purpose of receipt of mail.

(A) Service on the Secretary of State of any summons, writ, notice, demand, or process shall be made by delivering to the address confidentiality program personnel of the office of the Secretary of State two copies of the summons, writ, notice, demand, or process.

(B) If a summons, writ, notice, demand, or process is served on the Secretary of State, the Secretary of State shall immediately cause a copy to be forwarded to the program participant at the address shown on the records of the address confidentiality program so that the summons, writ, notice, demand, or process is received by the program participant within three days of the Secretary of State having received it.

(C) The Secretary of State shall keep a record of all summonses, writs, notices, demands, and processes served upon the Secretary of State under this section and shall record the time of that service and the Secretary of State's action.

(D) The office of the Secretary of State and any agent or person employed by the Secretary of State shall be held harmless from any liability in any action brought by any person injured or harmed as a result of the handling of first-class mail on behalf of program participants.

(5) The mailing address where the applicant can be contacted by the Secretary of State, and the telephone number or numbers where the applicant can be called by the Secretary of State.

(6) The address or addresses that the applicant requests not be disclosed for the reason that disclosure will increase the risk of threats or acts of violence or harassment toward the applicant.

(7) The signature of the applicant and of any individual or representative of any office designated in writing who assisted in the preparation of the application, and the date on which the applicant signed the application.

(b) Applications shall be filed with the office of the Secretary of State.

(c) Submitted applications shall be accompanied by payment of a fee to be determined by the Secretary of State. This fee shall

not exceed the reasonable costs of enrolling in the program. In addition, annual fees may also be assessed by the Secretary of State to defray the reasonable costs of maintaining this program. Annual fees assessed by the Secretary of State shall also be used to reimburse the General Fund for any amounts expended from that fund for the purposes of this chapter. No applicant who is a patient of a designated immigration support services facility shall be required to pay an application fee or the annual fee under this program.

(d) The Address Confidentiality for Immigration Support Services Fund is hereby created in the General Fund. Upon appropriation by the Legislature, moneys in the fund are available for the administration of the program established pursuant to this chapter.

(e) Upon filing a properly completed application, the Secretary of State shall certify the applicant as a program participant. Applicants, with the exception of designated immigration support services facilities volunteers, shall be certified for four years following the date of filing unless the certification is withdrawn, or invalidated before that date. Designated immigration support services facility volunteers shall be certified until six months from the last date of volunteering with the facility. The Secretary of State shall by rule establish a renewal procedure. A minor program participant, who reaches 18 years of age, may renew as an adult following the renewal procedures established by the Secretary of State.

(f) A person who falsely attests in an application that disclosure of the applicant's address would endanger the applicant's safety or the safety of the applicant's family or the minor or incapacitated person on whose behalf the application is made, or who knowingly provides false or incorrect information upon making an application, is guilty of a misdemeanor. A notice shall be printed in bold type and in a conspicuous location on the face of the application informing the applicant of the penalties under this subdivision.

6218.13. (a) The Secretary of State shall cancel certification of a program participant who fails to disclose a change in employment status, or termination as a provider or volunteer.

(b) Upon termination of a program participant's certification, the Secretary of State shall retain records as follows:

(1) Except as provided in subdivision (g) of Section 6218.14 or subdivision (a) of Section 6218.17, any records or documents pertaining to a program participant shall be held confidential.

(2) All records or documents pertaining to a program participant shall be retained for a period of three years after termination of certification and then destroyed without further notice.

6218.14. (a) A program participant may withdraw from program participation by submitting to the Secretary of State written notification of withdrawal and their current identification card. Certification shall be terminated on the date of receipt of this notification.

(b) The Secretary of State may terminate a program participant's certification and invalidate the participant's authorization card for any of the following reasons:

(1) The program participant's certification term has expired and certification renewal has not been completed.

(2) The Secretary of State has determined that false information was used in the application process to qualify as a program participant or that participation in the program is being used as a subterfuge to avoid detection of illegal or criminal activity or apprehension by law enforcement.

(3) The program participant no longer resides at the residential address provided to the Secretary of State, and has not provided at least seven days' prior notice in writing of a change in address.

(4) A service of process document or mail forwarded to the program participant by the Secretary of State is returned as nondeliverable.

(5) The program participant who is a provider, employee, or volunteer fails to disclose a change in employment, or termination as volunteer or provider.

(6) The program participant, who reaches 18 years of age during their certification term, has not renewed their certification within 60 days of them reaching 18 years of age.

(c) The Secretary of State may refuse to renew a program participant's certification if the adult program participant or the parent or guardian acting on behalf of a minor or incapacitated person has abandoned their domicile in this state.

(d) If termination is based on any of the reasons under subdivision (b) or (c), the Secretary of State shall send written notification of the intended termination to the program participant.

The program participant shall have 30 business days in which to appeal the termination under procedures developed by the Secretary of State.

(e) The Secretary of State shall notify in writing the county elections official and authorized personnel of the appropriate county clerk's office and the county recording office of the program participant's certification withdrawal, invalidation, expiration, or termination.

(f) Upon receipt of this termination notification, authorized personnel shall transmit to the Secretary of State all appropriate administrative records pertaining to the program participant and the record transmitting agency is no longer responsible for maintaining the confidentiality of a terminated program participant's record.

(g) Following termination of program participant certification as a result of paragraph (2) of subdivision (b), the Secretary of State may disclose information contained in the participant's application.

6218.15. (a) A program participant may request that state and local agencies use the address designated by the Secretary of State as the participant's address. When creating a public record, state and local agencies shall accept the address designated by the Secretary of State as a program participant's substitute address, unless the Secretary of State has determined both of the following:

(1) The agency has a bona fide statutory or administrative requirement for the use of the address that would otherwise be confidential under this chapter.

(2) This address will be used only for those statutory and administrative purposes and shall not be publicly disseminated.

(b) A program participant may request that state and local agencies use the address designated by the Secretary of State as the participant's address. When modifying or maintaining a public record, excluding the record of any birth, fetal death, death, or marriage registered under Division 102 (commencing with Section 102100) of the Health and Safety Code, state and local agencies shall accept the address designated by the Secretary of State as a program participant's substitute address, unless the Secretary of State has determined both of the following:

(1) The agency has a bona fide statutory or administrative requirement for the use of the address that would otherwise be confidential under this chapter.

(2) This address will be used only for those statutory and administrative purposes and shall not be publicly disseminated.

(c) A program participant may use the address designated by the Secretary of State as the participant's work address.

(d) The office of the Secretary of State shall forward all first-class mail and all mail sent by a governmental agency to the appropriate program participants. The office of the Secretary of State may, in its discretion, refuse to handle or forward packages regardless of size or type of mailing.

(e) Notwithstanding subdivision (a), program participants shall comply with the provisions specified in subdivision (d) of Section 1808.21 of the Vehicle Code if requesting suppression of the records maintained by the Department of Motor Vehicles. Program participants shall also comply with all other provisions of the Vehicle Code relating to providing current address information to the department.

6218.16. A program participant who is otherwise qualified to vote may seek to register and vote in a confidential manner pursuant to Section 2166.5 of the Elections Code.

6218.17. (a) The Secretary of State may not make a program participant's address, other than the address designated by the Secretary of State, available for inspection or copying, except under any of the following circumstances:

(1) If requested by a law enforcement agency, to the law enforcement agency.

(2) If directed by a court order, to a person identified in the order.

(3) If certification has been terminated pursuant to paragraph (2) of subdivision (b) of Section 6218.14.

(b) The Secretary of State shall designate state and local agencies and nonprofit agencies that may assist persons applying to be program participants. Any assistance and counseling rendered by the office of the Secretary of State or its designees to applicants shall in no way be construed as legal advice.

(c) The Secretary of State may adopt rules to facilitate the administration of this chapter by state and local agencies. The Secretary of State shall administer this chapter together with and

in the same manner as the address confidentiality programs in Chapter 3.1 (commencing with Section 6205) and Chapter 3.2 (commencing with Section 6215).

(d) The Secretary of State shall provide each program participant a notice in a clear and conspicuous font that contains all of the following information:

(1) The program participant is authorized by law to request to use the participant's address designated by the Secretary of State on real property deeds, change of ownership forms, and deeds of trust when purchasing or selling a home.

(2) The program participant may create a revocable living trust and place their real property into the trust to protect their residential street address from disclosure in real property transactions.

(3) The program participant may obtain a change of their legal name to protect their anonymity.

(4) A list of contact information for entities that the program participant may contact to receive information on, or receive legal services for, the creation of a trust to hold real property or obtaining a name change, including county bar associations, legal aid societies, state and local agencies, or other nonprofit organizations that may be able to assist program participants.

(e) (1) The Secretary of State shall submit to the Legislature, no later than January 10 of each year, a report that includes the total number of applications received for the program established by this chapter. The report shall disclose the number of program participants within each county and shall also describe any allegations of misuse relating to election purposes.

(2) The Secretary of State shall commence accepting applications under this program on April 1, 2027.

(3) The Secretary of State shall submit to the Legislature by July 1, 2030, a report that includes the total number of pieces of mail forwarded to program participants, the number of program participants during the program's duration, the average length of time a participant remains in the program, and the targeted code changes needed to improve the program's efficiency and cost-effectiveness.

6218.18. (a) A person, business, or association shall not publicly post or publicly display on the internet the home address of a program participant who has made a written demand of that

person, business, or association to not disclose the home address of the program participant.

(b) A person, business, or association shall not knowingly post the home address of a program participant, or of the program participant's residing spouse or child, on the internet knowing that person is a program participant and intending to cause imminent great bodily harm that is likely to occur or threatening to cause imminent great bodily harm to that individual.

(c) This section shall not apply to an interactive computer service or access software provider, as defined in Section 230(f) of Title 47 of the United States Code, unless the service or provider intends to abet or cause imminent great bodily harm that is likely to occur or threatens to cause imminent great bodily harm to a program participant.

6218.19. (a) (1) A person, business, or association shall not knowingly publicly post or publicly display, disclose, or distribute on internet websites or social media, the personal information or image of any designated immigration support services provider, employee, volunteer, or client, or other individuals residing at the same home address, with the intent to do either of the following:

(A) Incite a third person to cause imminent great bodily harm to the designated immigration support services provider, employee, volunteer, or client identified in the posting or display, or to a coresident of that person, where the third person is likely to commit this harm.

(B) Threaten the designated immigration support services provider, employee, volunteer, or client, identified in the posting or display, or a coresident of that person, in a manner that places the person identified or the coresident in objectively reasonable fear for their personal safety.

(2) A designated immigration support services provider, employee, volunteer, or client whose personal information or image is made public as a result of a violation of paragraph (1), or any individual entity or organization authorized to act on their behalf, may do either or both of the following:

(A) Bring an action seeking injunctive or declarative relief in any court of competent jurisdiction. If a jury or court finds that a violation has occurred, it may grant injunctive or declarative relief and shall award the successful plaintiff court costs and reasonable attorney's fees.

(B) Bring an action for money damages in any court of competent jurisdiction. In addition to any other legal rights or remedies, if a jury or court finds that a violation has occurred, it shall award damages to that individual in an amount up to a maximum of three times the actual damages, but in no case less than four thousand dollars ($4,000).

(b) (1) A person, business, or association shall not publicly post or publicly display, disclose, or distribute, on internet websites or social media, the personal information or image of a designated immigration support services provider, employee, volunteer, or client if that individual, or any individual, entity, or organization authorized to act on their behalf, has made a written demand of that person, business, or association to not disclose the personal information or image. A written demand made under this paragraph shall include a statement declaring that the individual is subject to the protection of this section and describing a reasonable fear for the safety of that individual or of any person residing at the individual's home address, based on a violation of subdivision (a). A demand made under this paragraph shall be effective for four years, regardless of whether or not the individual's affiliation with a designated immigration support services facility has expired prior to the end of the four-year period.

(2) A designated immigration support services provider, employee, volunteer, or client whose personal information or image is made public as a result of a failure to honor a demand made pursuant to paragraph (1), or any individual, entity, or organization authorized to act on their behalf, may bring an action seeking injunctive or declarative relief in any court of competent jurisdiction. If a jury or court finds that a violation has occurred, it may grant injunctive or declarative relief and shall award the successful plaintiff court costs and reasonable attorney's fees.

(3) This subdivision does not apply to a person or entity defined in Section 1070 of the Evidence Code.

(c) (1) A person, business, or association shall not solicit, sell, or trade on the internet or social media the personal information or image of a designated immigration support services provider, employee, volunteer, or client with the intent to do either of the following:

(A) Incite a third person to cause imminent great bodily harm to the person identified in the posting or display, or to a coresident of that person, where the third person is likely to commit this harm.

(B) Threaten the person identified in the posting or display, or a coresident of that person, in a manner that places the person identified or the coresident in objectively reasonable fear for their personal safety.

(2) A designated immigration support services provider, employee, volunteer, or client whose personal information or image is solicited, sold, or traded in violation of paragraph (1), or any individual, entity, or organization authorized to act on their behalf, may bring an action in any court of competent jurisdiction. In addition to any other legal rights and remedies, if a jury or court finds that a violation has occurred, it shall award damages to that individual in an amount up to a maximum of three times the actual damages, but in no case less than four thousand dollars ($4,000).

(d) An interactive computer service or access software provider, as defined in Section 230(f) of Title 47 of the United States Code, shall not be liable under this section unless the service or provider intends to abet or cause bodily harm that is likely to occur or threatens to cause bodily harm to a designated immigration support services patient, provider, or assistant, or any person residing at the same home address.

(e) This section does not preclude punishment under any other provision of law.

6218.20. (a) (1) A person shall not post on the internet or social media, with the intent that another person imminently use that information to commit a crime involving violence or a threat of violence against a designated immigration support services provider, employee, volunteer, or client, or other individuals residing at the same home address, the personal information or image of a designated health care services patient, provider, or assistant, or other individuals residing at the same home address.

(2) A violation of this subdivision is punishable by a fine of up to ten thousand dollars ($10,000) per violation, imprisonment of either up to one year in a county jail or pursuant to subdivision (h) of Section 1170 of the Penal Code, or by both that fine and imprisonment.

(3) A violation of this subdivision that leads to the bodily injury of a designated immigration support services provider, employee,

volunteer, or client, or other individuals residing at the same home address, is a felony punishable by a fine of up to fifty thousand dollars ($50,000), imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or by both that fine and imprisonment.

(b) Nothing in this section shall preclude prosecution under any other provision of law.

SEC. 2. The Legislature finds and declares that this act imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

Individuals providing support services to the immigrant community have become increasingly subjected to violent threats, harassment, and intimidation. In order to prevent acts of violence from being committed against those individuals, it is necessary for the Legislature to ensure that the home addresses of these individuals are kept confidential.

SEC. 3. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution for certain costs that may be incurred by a local agency or school district because, in that regard, this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

However, if the Commission on State Mandates determines that this act contains other costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

O

# EXHIBIT C

**Shirley N. Weber, Ph.D.** | California Secretary of State

**Management Services Division** | Safe at Home

P.O. Box 846 | Sacramento, CA 95812 | Tel: 877.322.5227 | Fax: 916.653.7625 | www.sos.ca.gov/safeathome | safeathome@sos.ca.gov

January 9, 2026

Ms. Erika Contreras
Secretary of the Senate
State Capitol, Room 305
Sacramento, CA 95814

Ms. Sue Parker
Chief Clerk of the Assembly
State Capitol, Room 319
Sacramento, CA 95814

VIA EMAIL DELIVERY

Dear Ms. Contreras and Ms. Parker:

I am pleased to present the 2025 Annual Legislative Report for the Secretary of State's Safe at Home program in compliance with Government Code Sections 6210 and 6216. This report highlights program participation within California's 58 counties and data collected throughout the year.

In addition to the enclosed summary and related county statistics, listed below are Safe at Home accomplishments for the year. The Safe at Home program continues to effectively meet the needs of its applicants, participants, and enrolling agencies. The program has maintained strong statewide partnerships and sustained service delivery throughout the year.

- Compared to 2024, program data for 2025 reflects continuous growth and program effectiveness. This year the total number of:
  - Participants is 7,987, an increase of 11 percent.
  - Child abduction victim/survivors enrolled is 12, an increase of 500 percent.
  - Mail pieces forwarded are 124,279, an increase of 14 percent.
  - Participants who completed a confidential name change are 125, an increase of 34 percent.

- Safe at Home staff responded to 10,098 phone calls and voicemails to assist applicants, participants, enrolling agencies, government agencies, businesses, and the public.

- Safe at Home increased its network of designated enrolling agencies by 19 percent, increasing the total of enrolling agencies to 319. In addition, Safe at Home trained 1,204 enrolling agency staff, an increase of 85 percent. This growth can be attributed to the establishment of a dedicated unit responsible for building and maintaining the enrolling agency network and for training enrolling agency staff.

Enrolling agencies are the first point of contact for Safe at Home applicants and essential to the program's success.

In addition, Assembly Bill 82 (Chapter 679, 2025) was signed into law on October 13, 2025, which expands Safe at Home program eligibility to include gender-affirming health care providers, employees, volunteers, or patients who are in fear for their safety. This will allow the program to help more people who would benefit from it.

In 2026, the Safe at Home program will continue to focus on the goals of the Secretary of State's Strategic Plan, including:

- Providing superior customer service by standardizing external communication, increasing visibility and clarity about Safe at Home, and improving delivery of services.
- Promoting innovation and fostering a sustainable organization by improving technology, enhancing cyber security, improving business processes, and encouraging succession planning.
- Promoting an employee-focused work culture by improving communication, fostering collaboration, embracing innovations, and implementing workplans.
- Stimulating civic engagement by increasing awareness of confidential voting and of election cycles among participants.

California's Safe at Home program offers some of the most comprehensive services of any confidential address program in the United States. I welcome you to visit Safe at Home's website at www.sos.ca.gov/safeathome or contact Liz Hall, Safe at Home Program Director, by telephone for additional information at (916) 653-1769.

Sincerely,

Shirley N. Weber, Ph.D.
California Secretary of State

cc: Ms. Cara L. Jenkins, Legislative Counsel

| California Secretary of State's Address Confidentiality Program<br>Safe at Home 2025 Summary of Statistics | | | | |
|---|---|---|---|---|
| | **2024** | **2025** | **Change** | **Comments** |
| **Mail Pieces Forwarded** | 109,024 | 124,279 | +15,255 / 14% Increase | |
| **Postage Costs** | $126,285 | $180,223 | +$53,938 / 43% Increase | The increase can in part be attributed to the 2025 special election, in addition to an increase in postage rates and the number of pieces forwarded. |
| **Confidential Voter Registration Cards (CVRCs) Forwarded to County Elections Offices** | 466 | 211 | -255 / 55% Decrease | This is the number of CVRCs forwarded for the year. Although this is a decrease, it is higher than normal which can be attributed to the Special Election that occurred and program efforts to encourage confidential voter registration. It should be noted that the 2024 Presidential Election had a significant impact on confidential voter registration for that year. |
| **Total Participants Who Had CVRCs Forwarded to County Elections Offices** | 1,115 | 1,238 | +123 / 11% Increase | Out of the total number of active participants, this is how many have had their CVRC forwarded. |
| **Cases of Election Misuse** | 0 | 0 | 0 | Examples of misuse could include someone registering once as a regular voter and again as a confidential voter or using a false name to register as a confidential voter. To date, there have not been any cases. |
| **Number of Confidential Name Changes** | 93 | 125 | +32 / 34% Increase | There was a higher demand for confidential name changes. |
| **Applications Received** | 1,993 | 2,228 | +235 / 12% Increase | Represents the number of primary, children, and household members per application. |
| **Number of Active Participants** | 7,167 | 7,987 | +820 / 11% Increase | |
| **Participants by Type** | | | | |
| Reproductive Health Care Providers, Employees, Volunteers, and Patients | 3 | 4 | +1 / 33% Increase | |

| | | | | |
|---|---|---|---|---|
| Public Entity Employees and Contractors | 43 | 45 | +2 / 5% Increase | |
| Victims | | | | |
| Domestic Violence | 3,850 | 3,710 | -140 / 4% Decrease | The data represents victim types for only primary participants and not household members or minor children. Primary participants can identify with more than one victim type. |
| Stalking | 1,798 | 1,980 | +182 / 11% Increase | |
| Sexual Assault | 739 | 829 | +90 / 12% Increase | |
| Human Trafficking | 159 | 190 | +31 / 20% Increase | |
| Elder/Dependent Adult Abuse | 52 | 56 | +4 / 8% Increase | |
| Child Abduction | 2 | 12 | +10 / 500% Increase | |
| Household Members | 400 | 439 | +39 / 10% Increase | |

**Participation by County**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Alameda | 376 | Kings | 9 | Placer | 174 | Sierra | 0 |
| Alpine | 0 | Lake | 21 | Plumas | 0 | Siskiyou | 20 |
| Amador | 11 | Lassen | 3 | Riverside | 426 | Solano | 103 |
| Butte | 85 | Los Angeles† | 1,730 | Sacramento | 599 | Sonoma | 114 |
| Calaveras | 9 | Madera | 17 | San Benito | 9 | Stanislaus | 70 |
| Colusa | 3 | Marin | 94 | San Bernardino | 318 | Sutter | 8 |
| Contra Costa | 262 | Mariposa | 10 | San Diego | 870 | Tehama | 17 |
| Del Norte | 7 | Mendocino | 9 | San Francisco | 228 | Trinity | 6 |
| El Dorado | 61 | Merced | 38 | San Joaquin | 203 | Tulare | 36 |
| Fresno | 96 | Modoc | 4 | San Luis Obispo | 42 | Tuolumne | 3 |
| Glenn | 5 | Mono | 0 | San Mateo | 155 | Ventura | 99 |
| Humboldt | 45 | Monterey | 39 | Santa Barbara | 53 | Yolo | 74 |
| Imperial | 1 | Napa | 29 | Santa Clara | 343 | Yuba | 18 |
| Inyo | 2 | Nevada | 34 | Santa Cruz | 66 | Not in CA | 20 |
| Kern | 89 | Orange | 755 | Shasta | 69 | | |

†The significantly high number can be attributed to Los Angeles being the largest California county per capita with the highest number of Safe at Home designated Enrolling Agencies.