Gene P. Hamilton, *pro hac vice*
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice*
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice*
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice*
ian.prior@aflegal.org
James K. Rogers, *pro hac vice*
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice*
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice*
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

Jonathan F. Mitchell, *pro hac vice*
jonathan@mitchell.law

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, TX 78701
Phone: (512) 686-3940

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842

Alex Kozinski, SBN 66473
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Phone: (310) 541-5885
alex@kozinski.com

*Attorneys for Plaintiff, Nicholas Shirley*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

NICHOLAS SHIRLEY,

*Plaintiff,*

v.

ROBERT BONTA, in his official capacity as California Attorney General; and SHIRLEY N. WEBER, in her official capacity as California Secretary of State,

*Defendants.*

Case No. 2:26-cv-3000-DJC-AC
Judge: Hon. Daniel J. Calabretta

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Date: December 17, 2026
Time: 1:30 PM
Courtroom: 7 (14th Floor)

## INTRODUCTION

Defendants recast AB 2624 as an ordinary "Safe at Home" law aimed only at true threats and incitement, and then declare that Mr. Shirley—who disclaims any intent to threaten or incite—has nothing to fear. But the statute Defendants describe is not the statute California enacted. AB 2624's operative definitions sweep in any information "capable of being associated with" a broadly defined class of immigration-services participants. Cal. Gov't Code § 6218.11(h). Its demand-and-cease mechanism authorizes injunctive relief and one-way mandatory fees against a speaker who refuses to remove reporting about those participants, even if the speaker did not intend to cause harm. *Id.* § 6218.19(b)(4). And its prohibitions apply only to one side of a contentious political debate.

Defendants' own brief exposes the statute's constitutional infirmities. They ask the Court to rewrite subsection (b)(4) through "constitutional avoidance," admitting its text leaves "some doubt." Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. 16–17, Dkt. No. 39. They insist that Section 6218.20—which the Legislative Counsel's Digest says "creat[es] new crimes"—creates no crime at all. Opp'n 13–14. And they concede that the definition of publication "does not exclude information someone posted before" the effective date. Opp'n 24 ("Perhaps true"). A speaker who must rely on litigating positions, avoidance canons, and concessions in a brief to know whether his journalism is lawful is a speaker whose speech is chilled. Mr. Shirley's motion should be granted.

## ARGUMENT

### I. Mr. Shirley has standing.

Defendants argue that Mr. Shirley lacks standing because he has disclaimed any intent to threaten or incite violence and therefore does not plan to engage in conduct the statute proscribes. Opp'n 7–11. That argument misreads the statute and misapplies the test for pre-enforcement standing.

#### A. Disclaiming intent to threaten or harm does not defeat standing.

Defendants argue that, because Mr. Shirley does not intend to threaten anyone or incite violence, he does not face a credible threat of enforcement. Opp'n 8. But that argu-

ment misunderstands the injury. Mr. Shirley's concern is that the statute permits a covered individual—and later a factfinder—to attribute that intent to him based on third parties' reactions to his truthful reporting. In *Planned Parenthood of Columbia/Willamette v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc), a publisher's knowledge of third-party reactions to earlier, similar speech supported an inference of intent. *Id.* at 1078–79. Advocates for AB 2624 have already blamed Mr. Shirley for harassment others allegedly committed. *See* Pl.'s Mem. of P. & A. in Supp. of Mot. for Prelim. Inj. 7, Dkt. No. 35-1. That is the kind of evidence future plaintiffs would use to plead and prove specific intent.

Defendants respond that "specific intent" is a matter of California law. Opp'n 9. But California law does not tell a speaker how a jury will infer intent from circumstantial evidence, and Defendants identify no California authority foreclosing reliance on the kind of third-party-reaction evidence credited in *Planned Parenthood*. California courts may well find *Planned Parenthood* persuasive and interpret state law consistently with federal law. Standing turns on whether Mr. Shirley's fear of that enforcement theory is objectively reasonable, and "[the court] may make 'commonsense inferences' when assessing Article III standing, including inferences about 'third party behavior.'" *First Choice Women's Res. Ctrs. v. Davenport*, 608 U.S. 174, 190 (2026) (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 116 (2025)). Here, the inference is straightforward: When persons protected by the statute have publicly attributed their alleged harms to a speaker's reporting, the speaker has an objectively reasonable basis to fear that those same allegations could be used to establish the requisite intent.

The cases Defendants cite support Mr. Shirley or are inapposite. *See* Opp'n 8–9. *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003), held that the plaintiff corporation had an actual and well-founded fear that a California law would be enforced against it when its speech was only "arguably subject" to the law. *Id.* at 1095. The court stressed that, in the First Amendment context, "the Supreme Court has dispensed with rigid standing requirements" and does not require litigants "to speak first

and take their chances with the consequences." *Id.* at 1094 (internal quotation marks omitted). Self-censorship is itself a cognizable injury. *Id.* at 1095. Mr. Shirley's decision to curtail reporting that falls within AB 2624's broad textual definitions and demand mechanism is precisely the injury *Getman* recognizes.

The other cases Defendants cite are materially different because the plaintiffs' intended conduct fell well outside any reasonable interpretation of the challenged rule. In *Lopez v. Candaele*, 630 F.3d 775, 790–92 (9th Cir. 2010), the plaintiff failed to show that the challenged policy "even arguably applies to his past or intended future speech." In *Unified Data Services, LLC v. FTC*, 39 F.4th 1200 (9th Cir. 2022), "the complaint utterly lack[ed], let alone state[d] 'with some degree of concrete detail,'" that plaintiffs planned to use the technology covered by the challenged rule. *Id.* at 1210–11 (quoting *Lopez*, 630 F.3d at 786). Here, by contrast, Mr. Shirley has clearly alleged that he has engaged and will continue to engage in conduct covered by AB 2624. And when Mr. Shirley complained that he is the intended target of the new legislation, the law's author chortled in agreement.

Mr. Shirley intends to publish exactly what the statute regulates—personal information or images of covered persons. *See* Shirley Decl. ¶¶ 16–18, Dkt. No. 35-2. The only question is whether an element that turns on contested inferences and is incapable of objective proof will be found satisfied. That is a classic pre-enforcement injury. The First Amendment does not require him to publish first, invite a lawsuit, and only then challenge the statute. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

### B. Defendants' request for a saving construction conclusively establishes Mr. Shirley's standing.

Defendants acknowledge that the text and history of subsection (b)(4) may "leave some doubt" as to whether it has a specific intent requirement. Opp'n 16–17. Such uncertainty is, of course, fatal in the First Amendment context. Defendants therefore ask the Court, in the alternative, to hold that subsection (b)(4) tacitly incorporates the specific-intent requirement of subsection (b)(2). Opp'n 10–11. Such a construction is wholly impermissible and would not bind private state-court litigants in any event.

But Defendants' request confirms Mr. Shirley's standing. If subsection (b)(4) already contained the limitation Defendants propose, a saving construction would be unnecessary. And if the provision does require a judicially imposed limitation to avoid unconstitutionality, Mr. Shirley cannot reasonably be expected to proceed as though that limitation were unquestionably part of the statute. Defendants' concession that a limiting construction may be needed effectively concedes that the statute, as written, exposes Mr. Shirley to the risk of enforcement. *See Stenberg v. Carhart*, 530 U.S. 914, 938–46 (2000). A statute that requires judicial surgery to avoid unconstitutionality is not one a reasonable speaker can safely ignore. At the very least, Mr. Shirley has standing to challenge subsection (b)(4).

**C. Mr. Shirley's evidence of targeting is properly before the Court.**

Defendants dismiss the public statements surrounding AB 2624 as "unsworn, conclusory, hearsay." Opp'n 11. But Mr. Shirley offers those statements, not for their truth, but to show that the bill's sponsor, other legislators, and advocates designed and intended the statute to curtail Mr. Shirley's speech. Fed. R. Evid. 803(3). In any event, "the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters. v. Fla. Ent. Mgmt.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (affirming district court's discretion to consider hearsay in deciding whether to issue a preliminary injunction); *accord Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (preliminary injunctions are ordinarily decided on "procedures that are less formal and evidence that is less complete" than at trial).

The evidence cannot be dismissed as speculative. The statute is widely known as the "Stop Nick Shirley Act," *see, e.g.,* Daniel Farr, *Gavin Newsom Signs Controversial 'Stop Nick Shirley Act' into Law*, N.Y. Post (Aug. 22, 2026), https://perma.cc/3KL4-FXBS, and its sponsor responded "Womp womp" when Mr. Shirley warned her that the bill threatened his reporting. *See* Pl.'s Mem. 9. Those facts speak for themselves.

**D. Mr. Shirley's injuries are traceable to Defendants and redressable.**

Defendants argue that neither the Attorney General nor the Secretary of State has

any role in enforcing AB 2624. Opp'n 12–15. Both are wrong.

As to the Attorney General, Defendants claim that Section 6218.20 "does not provide for criminal enforcement." Opp'n 13. But Section 6218.20(a) declares the covered conduct "unlawful." And subsection (b) provides that the section does not "preclude prosecution under any other provision of law"—language that presupposes prosecution under Section 6218.20 itself. The Legislative Counsel's Digest and the chaptered act likewise state that AB 2624 "creat[es] new crimes." AB 2624, 2026 Cal. Legis. Serv. ch. 117, Legis. Counsel's Dig. (West). Defendants' claim that "new crimes" refers to making false statements in a program application is contradicted by the Legislative Counsel's Digest: "*Under existing law*, any person who makes a false statement in an application is guilty of a misdemeanor." *Id.* (emphasis added). The only *new* crime defined by AB 2624 is found in Section 6218.20(a).

*In re Rolando S.*, 129 Cal. Rptr. 3d 49 (2011) is not on point. It holds only that "unlawful purpose" can also include certain civil wrongs; it did not hold that "unlawful" does not refer to criminal conduct. *Id.* at 57. To the contrary, the court specifically considered whether the conduct in question violated a criminal statute but concluded that the prosecution had not satisfied all the elements of that crime. *Id.* at 54.

Nor does the Attorney General's representation that he does not intend to prosecute anyone under Section 6218.20 because he does not consider it a criminal statute defeat Mr. Shirley's standing. The Supreme Court rejected essentially the same argument in *Stenberg v. Carhart*, 530 U.S. 914 (2000). There, the Attorney General of Nebraska represented that the state's partial-birth-abortion statute did not prohibit the common dilation and evacuation ("D&E") procedure. *Id.* at 931–33. The Court held that this concession did not eliminate the risk because "using this law some present prosecutors and future Attorneys General may choose to pursue physicians who use D&E procedures," meaning that "[a]ll those who perform abortion procedures using that method must fear prosecution, conviction, and imprisonment." *Id.* at 945. So too here. The Attorney General's current enforcement position cannot erase the statute's objectively reasonable

threat—particularly when future prosecutors and Attorneys General remain free to construe and enforce Section 6218.20 differently.

*Geo Group, Inc. v. Inslee*, 151 F.4th 1107 (9th Cir. 2025), does not say otherwise. There, the Ninth Circuit held only that the Governor and Attorney General were improper defendants as to a single statutory section, which created a private cause of action that detained persons could invoke but provided "no cause of action to the Attorney General or Governor." *Id.* at 1124. *Geo Group* does not hold that state officials categorically lack enforcement authority because private parties may also enforce the statute. Many statutes, state and federal, provide for both private and public enforcement.

The Secretary of State, likewise, plays an explicit and indispensable role in the statute's private-enforcement scheme. She certifies the "program participants" who alone may invoke the demand-and-cease mechanism and bring suit under subsection (b)(4). Cal. Gov't Code §§ 6218.12(a), 6218.19(b). The right to invoke those enforcement provisions does not arise until the Secretary confers program-participant status. Enjoining her from making those certifications would therefore redress Mr. Shirley's injury. *See FEC v. Cruz*, 596 U.S. 289, 297 (2022).

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), is inapposite because the statute in that case barred state officials from playing *any* role in the challenged private-enforcement scheme. *See also Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 577 (Tex. 2022). Here, the Secretary of State serves as gatekeeper: Only individuals whom she certifies as program participants may invoke the statutory demand mechanism and sue Mr. Shirley. She therefore supplies an essential link in the enforcement chain, and enjoining her certification authority would eliminate the threatened enforcement.

## II. Mr. Shirley is likely to succeed on the merits.

### A. Mr. Shirley is likely to succeed on his First Amendment claims.

Defendants' primary merits argument rests on a false premise: that every application of the challenged provisions involves non-protected true threats or incitement. Opp'n 15–17. It does not. AB 2624 does not require the *publication itself* to communicate a threat

or be likely to incite imminent lawless action. Instead, it permits liability based on the publication of "personal information"—including truthful, lawfully obtained, already-public information—combined with an alleged purpose to cause harm. Cal. Gov't Code §§ 6218.11(h), 6218.19(a)(1). But speech does not lose First Amendment protection merely because it causes harm. *See, e.g., Snyder v. Phelps,* 562 U.S. 443 (2011) (intentional infliction of emotional distress); *Fla. Star v. B.J.F.*, 491 U.S. 524 (1989) (publication of rape victim's identity).

*Counterman v. Colorado*, 600 U.S. 66 (2023), does not help Defendants. *Counterman* addressed statements that themselves communicated a serious intent to commit violence. *Id.* at 74, 79. Publishing an organization's funding sources, an employee's professional affiliations, or other truthful information about individuals involved in immigration services (much of which is already freely available on the internet) is not such a statement, regardless of the motive later attributed to the publisher. Nor is such reporting necessarily incitement, which requires speech "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action." *United States v. Rundo*, 990 F.3d 709, 713 (9th Cir. 2021) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam)). AB 2624 contains no requirement that the publication itself threaten violence or be likely to produce imminent lawless action.

Defendants' argument that viewpoint discrimination is "irrelevant" because the statute reaches only unprotected speech, Opp'n 17, is foreclosed by *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992). There, the Court disapproved an ordinance that regulated only unprotected "fighting words" because it singled out particular fighting words based on the subjects or views they expressed. *Id.* at 391–92. The government may not impose "special prohibitions on those speakers who express views on disfavored subjects," even when the speech falls within a category that may otherwise be proscribed. *Id.* at 391. Thus, even assuming Defendants could characterize Mr. Shirley's reporting as unprotected threats or incitement, that would not permit California to selectively prohibit speech based on the viewpoint it conveys.

AB 2624 protects individuals and organizations that provide immigration-support services, while leaving untouched materially identical speech concerning individuals who participate in immigration enforcement or otherwise oppose those services. *See* Pl.'s Mem. 11–14. The distinction tracks the content—and, in practice, the viewpoint—of the speech. *See Thakur v. Trump*, 176 F.4th 1187, 1201–03 (9th Cir. 2026), *cert. denied*, No. 26-210, 2026 WL 3486507 (U.S. Nov. 16, 2026). The Legislature's codified statement of purpose confirms as much: It expressly identifies the "current federal administration's anti-immigration attitude and policies" as part of the rationale for the statute. Cal. Gov't Code § 6218.10(b). Seldom has viewpoint discrimination been stated so brazenly.

Such discrimination is presumptively unconstitutional, and Defendants identify no compelling interest that could justify it, much less show that AB 2624 is narrowly tailored to serve it. Mr. Shirley is therefore likely to succeed on his First Amendment claims.

**B. Defendants' proposed narrowing of subsection (b)(4) is impermissible and ineffectual.**

Defendants' proposed "narrowing" construction is untenable. Subsection (b)(4) authorizes relief upon "a failure to honor a demand," and has no intent requirement. Cal. Gov't Code § 6218.19(b)(4). It is black-letter law that, when the legislature adopts a statute with two provisions containing different standards, the difference must be deemed intentional and meaningful. *Russello v. United States*, 464 U.S. 16, 23 (1983). The Court is "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." *Boos v. Barry*, 485 U.S. 312, 330 (1988). "To read § [(b)(4)] as the Government desires requires rewriting, not just reinterpretation." *United States v. Stevens,* 559 U.S. 460, 481 (2010). The California legislature adopted a statute with two neighboring sections, one containing a scienter requirement and the other omitting it. "[I]t is a general principle of statutory construction that when '"[a legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion."'" *Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 452

(2002) (quoting *Russello*, 464 U.S. at 23 (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))). To "narrow" the statute as Defendants suggest "would constitute a 'serious invasion of the legislative domain.'" *Stevens,* 559 U.S. at 481 (quoting *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 n.26 (1995)).

Nor would the requested construction reduce Mr. Shirley's risk. Any narrowing construction this Court were to adopt would not bind the private program participants who may invoke subsection (b)(4) during state-court enforcement lawsuits, much less the California courts that would adjudicate any such action. *See, e.g.*, *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024) (holding that a federal court's interpretation of state law is not binding on state courts). Defendants' proposed narrowing construction would thus do nothing to redress Mr. Shirley's First Amendment injury.

**C. Mr. Shirley is likely to succeed on his overbreadth claim.**

Defendants' overbreadth response rests entirely on the premise that every violation of AB 2624 requires specific intent. Opp'n 19–20. But as explained above, the statute's text does not support that reading, and Defendants' fallback request for a narrowing construction confirms that the text is, in fact, susceptible to a broader reading. *Supra* 1–4, 8–9. Under the statute as written, a program participant may compel removal of truthful reporting—including already-public photographs and workplace information—by serving a demand asserting a fear that the statute does not require a court to independently review. Cal. Gov't Code § 6218.19(b)(1)–(4); *see* Pl.'s Mem. 17–18. If the journalist refuses, the participant may obtain an injunction and what could easily be hundreds of thousands of dollars in mandatory fees. Cal. Gov't Code § 6218.19(b)(1)–(4). Those fees do not merely create liability after the fact; they create a powerful incentive to silence speech in the first place. A journalist faced with the choice between taking down lawful reporting and risking an enormous fee award has an obvious reason to err on the side of silence. "The Supreme Court long ago recognized that the fear of financial ruin can have a seriously chilling effect on all manner of speech, and will surely cause other speakers to hesitate, lest they find

themselves at the mercy of a local jury." *Planned Parenthood*, 290 F.3d at 1100 (Kozinski, J., dissenting) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277–79 (1964)); *see also Ex parte Young*, 209 U.S. 123, 145–48, 163–65 (1908). Indeed, California itself has recognized the chilling effect that litigation, and its associated costs, can have on "the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010) (discussing California's anti-SLAPP statute).

Defendants' assertion that there is no "barrier" to enjoining unprotected speech, Opp'n 20 n.16, assumes that the speech covered by the statute is unprotected. But "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Such restraints are tolerable "only where . . . operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint." *Id.* The statute here provides no such safeguards. Instead, it permits a private party to trigger demands backed by civil and criminal consequences, with judicial review coming only after the speaker has risked liability based on the private party's unproven allegations. As in *Bantam Books*, the predictable result is self-censorship; speakers will refrain from publishing "rather than face the possibility of some sort of a court action." *Id.* at 63.

**D. Mr. Shirley is likely to succeed on his vagueness claim.**

Defendants argue that a facial vagueness challenge is unavailable because AB 2624 does not implicate protected speech. Opp'n 20. That argument fails for the reasons explained above. *Supra* 6–8.

As for defined terms, Defendants contend that the term "harassment" appears only in the application provisions. Opp'n 21. But that does not cure the vagueness problem because the term vastly expands the universe of persons who may qualify as program participants and thus effectively veto what journalists publish about them. In addition, the statute is chock-full of impermissibly vague terms. "Personal information" encompasses anything "capable of being associated with" a covered person, Cal. Gov't Code

§ 6218.11(h), while the covered class is defined through open-ended lists that are expressly "not limited to" what is enumerated, *id.* § 6218.11(b), (d). And Defendants offer no answer to whether leaving previously published reporting online constitutes a new "publication," dismissing the issue as "musings." Opp'n 22 n.18. Those uncertainties matter because the statute regulates speech, and in that context a more stringent vagueness standard applies. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014), does not support and actually refutes Defendants. *Osinger* was not a First Amendment speech case. The Ninth Circuit expressly treated the statute as regulating "conduct" and relied on cases addressing conduct rather than speech. *Id.* at 944–45. The court further recognized that a more stringent analysis applies when a statute regulates speech. *Id.* Here, AB 2624 reaches publication and leaves speakers to guess, based on open-ended statutory language as to who is covered and what information is prohibited.

Defendants' cases involving generally applicable statutes regulating "personal information," Opp'n 21–22, do not address the combination of open-ended coverage and speech restrictions. Nor do they resolve the statute's uncertainty about whether existing online reporting must be removed to avoid liability. Whether an archived article, photograph, or other truthful report may remain online without becoming a new "publication" is not a peripheral question; it goes directly to the scope of the prohibition. AB 2624 leaves speakers to guess at the boundaries of lawful reporting.

**E. Defendants' ex post facto response fails.**

Defendants' only response to the ex post facto claim is to assert that Section 6218.20 is not criminal. Opp'n 23–24. But the statute's text and the Legislative Counsel's Digest say otherwise. *Supra* 5–6. Defendants concede that the statute's definition of publication may reach information posted before the effective date that remains available afterward. *See* Opp'n 24 ("Perhaps true"). If Section 6218.20 is criminal, that concession establishes the retroactive application the Ex Post Facto Clause forbids. *Weaver v. Gra-*

*ham*, 450 U.S. 24, 29 (1981). This Court should enjoin the Attorney General and his agents from prosecuting Mr. Shirley for violating AB 2624. Congress has authorized injunctions as a remedy in cases brought under 42 U.S.C. § 1983, *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972), and they are particularly appropriate where the threatened prosecution chills constitutionally protected speech, *Wooley v. Maynard*, 430 U.S. 705, 712 (1977).

**III. The remaining factors favor injunctive relief.**

Defendants contend there is no imminent harm because AB 2624 does not take effect until October 1, 2027. Opp'n 24. But the constitutional injury is already occurring. Mr. Shirley is shifting his reporting away from California because of the law, and the content he publishes today will remain online when AB 2624 takes effect. Shirley Decl. ¶¶ 38–41, 44–45. Absent an injunction, Mr. Shirley will have to decide, without any guidance, whether to leave his content online and risk prosecution, or play it safe and delete it. Such uncertainty is anathema to the First Amendment and itself causes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

There is no reason to delay relief because the statute's effective date is somewhat remote. Mr. Shirley brought this challenge promptly after AB 2624's enactment so that the Court—and, if necessary, the appellate courts—can resolve the constitutional questions through the ordinary course of federal litigation before the statute takes effect. Waiting would not produce additional facts or legal clarity; it would merely force the parties and courts to resort to expedited proceedings and emergency appellate relief.

The balance of hardships tips sharply in Mr. Shirley's favor. Suppression of speech is inherently irreparable. *Elrod*, 427 U.S. at 373. "The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech . . . ." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). On the other side, the Attorney General has disavowed any interest in criminal enforcement, so he suffers no prejudice from an injunction. Nor will delay for what, at most, will be a few months (if any) beyond the effective date of the statute, prejudice the Secretary of State. Defendants have pointed to

no hardship they would suffer from such a brief delay.

The public interest likewise favors an injunction. Defendants' public-interest argument rests on their assumption that AB 2624 reaches only threats and incitement. Opp'n 25. But California already has content-neutral laws addressing such conduct, so enjoining *this* statute will have little effect on the public at large. Pl.'s Mem. 14. And the public has no legitimate interest in enforcing an unconstitutional restriction on protected speech. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

**IV. The relief Mr. Shirley seeks is appropriate.**

The requested injunction is limited to the speech-restricting provisions Mr. Shirley challenges—Sections 6218.18 through 6218.20—and to the Secretary of State's certification of participants for purposes of the Section 6218.19(b) demand mechanism.

The Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), does not foreclose that relief. *CASA* leaves intact the longstanding rule that a plaintiff is entitled to an injunction sufficient to fully remedy his own injury. *Id.* at 852. It also does not prohibit relief that extends to third parties. *Id.* That is precisely the point of the relaxed standing rules in the First Amendment overbreadth context, which permit a plaintiff to challenge a statute based on its effect on the speech of others. *See Welty v. Dunaway*, 192 F.4th 607, 642 (6th Cir. 2026) (petition for reh'g en banc filed Oct. 22, 2026).

**V. Defendants do not address the bond request.**

Defendants do not address, and therefore concede, the no-bond request. *See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020). The Court should therefore waive bond.

///

///

///

///

///

///

## CONCLUSION

The Court should grant the motion for a preliminary injunction without bond.

DATED: November 20, 2026

Respectfully submitted,

/s/ John W. Howard

John W. Howard, SBN 80200
johnh@jwhowardattorneys.com
Scott J. Street, SBN 258962
sstreet@jwhowardattorneys.com
Peter C. Shelling, SBN 351159
pshelling@jwhowardattorneys.com

JW HOWARD / ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Phone: (619) 234-2842

Alex Kozinski, SBN 66473
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Phone: (310) 541-5885
alex@kozinski.com

Gene P. Hamilton, *pro hac vice*
gene.hamilton@aflegal.org
Reed D. Rubinstein, *pro hac vice*
reed.rubinstein@aflegal.org
Nicholas R. Barry, *pro hac vice*
nick.barry@aflegal.org
Ian D. Prior, *pro hac vice*
ian.prior@aflegal.org
James K. Rogers, *pro hac vice*
james.rogers@aflegal.org
Emily C. Percival, *pro hac vice*
emily.percival@aflegal.org
Crystal C. Clanton, *pro hac vice*
crystal.clanton@aflegal.org

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
Phone: (202) 964-3721

Jonathan F. Mitchell, *pro hac vice*
jonathan@mitchell.law

MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, TX 78701
Phone: (512) 686-3940

**CERTIFICATE OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On November 20, 2026, I electronically filed **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 20, 2026 at San Diego, California.

*/s/ Dayna Dang*
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com